IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TENNESSEE

WESTERN DIVISION

_____

ACLU of Tennessee, Inc.,

        Plaintiff,

vs.                                          NO. 2:17-cv-02120

City of Memphis, Tennessee,

        Defendant.

_____


EXCERPT OF PROCEEDINGS

CROSS-EXAMINATION OF WITNESS, HEDY WEINBERG


BEFORE THE HONORABLE JON P. McCALLA, JUDGE


MONDAY

20TH OF AUGUST, 2018




LISA J. MAYO, CRR, RMR
OFFICIAL REPORTER
FOURTH FLOOR FEDERAL BUILDING
MEMPHIS, TENNESSEE 38103

A P P E A R A N C E S

Appearing on behalf of the Plaintiff:

> THOMAS HAUSER CASTELLI
> AMANDA STRICKLAND FLOYD
> American Civil Liberties Union Foundation of Tennessee
> 210 25th Avenue N. Suite 1000
> Nashville, TN 37212
> (615) 320-7142

Appearing on behalf of the Defendant:

> BUCKNER WELLFORD
> JENNIE VEE SILK
> LAWRENCE LAURENZI
> R. MARK GLOVER
> Baker Donelson Bearman Caldwell & Berkowitz
> 165 Madison Avenue, Suite 2000
> Memphis, TN 38103
> (901) 526-6000

# WITNESS INDEX

| WITNESS | PAGE | LINE |
|---|---|---|
| HEDY WEINBERG | | |
| Cross-Examination By Ms. Silk: | 5 | 13 |

**E X H I B I T   I N D E X**

| EXHIBIT NUMBER | | PAGE | LINE |
|---|---|---|---|
| 17 | September 20, 1994, letter to Ms. Weinberg from Andrew Branham | 5 | 19 |
| 18 | Letter to the Honorable Judge Lipman from November 17, 1994 | 6 | 11 |
| 19 | October 24, 1994, letter to Judge Lipman from Ms. Weinberg | 7 | 3 |

1       **Monday**

2       **August 20, 2018**

3           This case began on this date, Monday, 20th day of

4   August, 2018, at 9:00 a.m., when and where evidence was

5   introduced and proceedings were had as follows:

6                       * * *

7

8                   **HEDY WEINBERG,**

9   **was called as a witness and having first been duly sworn**

10  **testified as follows:**

11

12                      * * *

13                  **CROSS-EXAMINATION**

14  **BY MS. SILK:**

15  Q.   The next document I'd like to mark is a September 20,

16   1994 letter to you, Ms. Weinberg, from Andrew Branham.

17           **THE COURT:** Marked without objection as 17.

18           (WHEREUPON, the above-mentioned document was

19   marked as Exhibit Number 17.)

20  BY MS. SILK:

21  Q.   This letter is from September 20, 1994, and it's a

22   letter to you and it says that you are excited to be a part

23   of the coming together of what will hopefully be a new --

24   what hopefully will be a new chapter of the ACLU for

25   Memphis and Greater West Tennessee.

1       So in September 20, 1994, it is evident from this that
2    there was no West Tennessee Chapter?
3    A.   I think the chapters had -- again across the state,
4    there had just been absence of energy and we were
5    centralizing more.
6            **MS. SILK:**  The next exhibit I would like to mark
7    is a letter to the Honorable Judge Lipman from November 17,
8    1994.
9            **THE COURT:**  Marked as 18.
10           (WHEREUPON, the above-mentioned document was
11   marked as Exhibit Number 18.)
12   BY MS. SILK:
13   Q.   This letter is from November 17, 1994, and it's a
14   letter from you, it looks like, to the now Honorable Judge
15   Sheri Lipman.  And if you look at the bottom here, you
16   state "our work is clearly cut out for us and I appreciate
17   your willingness to coordinate the effort to get things
18   going in Memphis."
19       So in November of 1994 there was still no West
20   Tennessee Chapter; is that correct?
21   A.   There was not -- appears there was not a formal
22   chapter.
23           **MS. SILK:**  I'd like to mark the next exhibit
24   which is an October 24, 1994, letter to Judge Lipman from
25   you?

| | |
|---|---|
| 1 | **THE COURT:** Marked as 19 and received. |
| 2 | (WHEREUPON, the above-mentioned document was |
| 3 | marked as Exhibit Number 19.) |
| 4 | BY MS. SILK: |
| 5 | Q.   This is a letter predates the one -- I got out of |
| 6 | order a little bit -- but it says from -- to Sheri from |
| 7 | Hedy, "Subject: Revitalizing the Memphis chapter."  It |
| 8 | says, "As promised, here is the information on those people |
| 9 | attending the September 12th event at Bruce's home who |
| 10 | expressed an interest in helping to revitalize the Memphis |
| 11 | chapter." |
| 12 | And the Bruce you're referring to there, I presume, is |
| 13 | Bruce Kramer; is that correct? |
| 14 | A.   Correct. |
| 15 | Q.   So Bruce Kramer was affiliated with the Kendrick |
| 16 | litigation, was he not? |
| 17 | A.   He was, yes. |
| 18 | Q.   But here he is trying to organize a West Tennessee |
| 19 | Chapter in 1994, is it not? |
| 20 | A.   Well, Bruce stayed involved with the organization |
| 21 | from -- you know, from Kendrick on.  He was involved prior |
| 22 | to Kendrick.  So he was always engaged and always served on |
| 23 | our board and always represented the ACLU of Tennessee and |
| 24 | was also very active in the West Tennessee Chapter, which |
| 25 | was part of the ACLU of Tennessee. |

1  Q.   But at this time there was no chapter of the ACLU of
2  Tennessee in West Tennessee?
3  A.   There was not a formal chapter but there was activity
4  and interested parties.
5
6
7                         * * * *
8  BY MS. SILK:
9  Q.   That was not my question.
10      My question is, was the entity that was the West
11 Tennessee Chapter in May 1, '96 the same entity as the
12 American Civil Liberties Union in West Tennessee, Inc., and
13 the answer was it was not, correct?
14          **MR. CASTELLI:**  Objection, Your Honor.
15          **THE COURT:**  Is that a question?  It sounded like
16 testimony.
17          **MS. SILK:**  Let me rephrase.
18 BY MS. SILK:
19 Q.   The West Tennessee Chapter that was re-formed in 1996
20 was not the same entity as the American Civil Liberties
21 Union in West Tennessee, Inc., right?
22 A.   There were new people involved in this.
23 Q.   And it's true then that the West Tennessee Chapter in
24 1996 did not have the same set of bylaws that's the -- what
25 you're referring to as the West Tennessee Chapter in 1996;

1    is that correct?

2    A.   I just don't know about the bylaws.  I mean, I don't
3    have memory of those.

4    Q.   So if the ACLU of Tennessee had subsumed as your own
5    pleadings and filings with this Court have alleged, if it
6    had subsumed the entity that was the ACLU of West
7    Tennessee, Inc., it wouldn't need to form a new chapter in
8    1996, would it?

9    A.   I think the goal of the chapter was to engage people
10   to be present.  I mean, you can talk about a chapter but a
11   chapter without people, so you wanted to ensure that there
12   were people doing the work and, you know, being ambassadors
13   for the ACLU.

14   Q.   And so, from the time when there wasn't a West
15   Tennessee Chapter it follows, doesn't it, that there
16   weren't enough people interested in the efforts of the ACLU
17   of Tennessee, Inc. to support an entity that could bring,
18   for instance, a lawsuit or enforce a consent decree?

19   A.   No, that's not correct, because it was the
20   responsibility of the ACLU of Tennessee to do that.  So we
21   were still filing lawsuits and engaging with the
22   legislature and doing pub ed programs, and we had members
23   in Memphis and the west Tennessee area who were ACLU of
24   Tennessee members and our -- yeah.

25   Q.   So I want to just go back to one exhibit.  Sorry, I

Case 2:17-cv-02120-JPM-jay   Document 127   Filed 08/20/18   Page 10 of 14   PageID 5053

10

1       have to find it.
2              This is Exhibit 1, the charter of the ACLU of
3       Tennessee.  And this is going back to -- there we go.  This
4       is going back to the entity that was known as the West
5       Tennessee Civil Liberties Union, Inc.  So Number 2, it says
6       that the -- your attorney presented this to you, and it
7       states that the purpose of the Charter of Incorporation was
8       to consolidate the affairs and activities of the previously
9       existing East Tennessee Civil Liberties Union, Inc. and
10      Middle Tennessee Civil Liberties, Inc. and continue the
11      previous operations of said corporations and to also absorb
12      at a future time, if agreed to by the membership and/or
13      board of directors of both corporations, to assume and
14      continue the operations of the West Tennessee Civil
15      Liberties Inc., a Tennessee corporation.
16             So I just want to get the record straight that the
17      Charter of Incorporation did not consolidate the affairs of
18      the West Tennessee Civil Liberties Union, Inc. at its
19      inception, but it only stated that it would do so if agreed
20      to at a later time by both boards; is that correct?
21      A.   Right.  The anticipation was they would join with the
22      ACLU of Tennessee, merge into that organization.  I guess
23      in its absence, they would cease not to function.
24      Q.   So it's probable, isn't it, that the West Tennessee
25      Civil Liberties Union, Inc. that was never officially a

1   chapter of the American Civil Liberties Union of Tennessee,
2   Inc. was actually the party that initiated the Kendrick
3   litigation?
4   A.   I don't think it was probable.
5   Q.   But you don't have any knowledge?
6   A.   My understanding it was as part of the ACLU of
7   Tennessee.
8   Q.   But you have no evidence that the party was not the
9   WTCLU, using the acronym for West Tennessee Civil Liberties
10  Union, Inc.?
11  A.   My knowledge is that the West Tennessee Civil
12  Liberties Union or Civil Liberties, Inc. was no longer a
13  formal entity.
14  Q.   So my last question is if there was here a group known
15  as the West Tennessee Civil Liberties Union, Inc. and also
16  a West Tennessee Chapter, operating around the same time,
17  it's probable that there could have been a third or fourth
18  group of people also operating in the name of ACLU; and
19  you, yourself, testified that this was a very fluid and
20  loose structure?  Is that correct?
21  A.   Let me step back from that.  There could not be other
22  entities operating with ACLU in the state, and if there
23  were, they would not -- ACLU would not have supported them.
24  We would probably challenge their existence because the
25  ACLU sort of name and presence.  So when I said that they

1    were fluid, I meant chapters as part of the organization
2    were alive as long as the people who were engaged in those
3    chapters -- as long as people were engaged in those
4    chapters.  That's what I meant by fluid.
5    Q.   Did the ACLU of Tennessee, Inc. ever challenge the
6    West Tennessee Civil Liberties Union, Inc. as not being
7    formally affiliated?
8    A.   My understanding is the West Tennessee Civil Liberties
9    Union, Inc., like the East Tennessee Civil Liberties Union,
10   Inc. and the Middle Tennessee Civil Liberties, Inc. were
11   entities prior to the ACLU of Tennessee being incorporated.
12   And once it became clear that there was going to be a state
13   affiliate, the movement, while it took some time, was to
14   those organizations were going to blend and become part of
15   the ACLU of Tennessee.
16        That was my understanding when you -- just with my
17   knowledge of the national ACLU and watching statewide
18   affiliates incorporate.
19   Q.   But you've asserted that the -- well, if the WTCLU was
20   never absorbed at a later time by the ACLU of Tennessee,
21   Inc., would the -- it seems like the ACLU of Tennessee,
22   Inc. would have challenged them and their authority to act
23   in the name of the ACLU, wouldn't they?
24        I mean, you just stated if some group were acting in
25   the name of ACLU that wasn't officially affiliated with the

```
 1    state affiliate that would you have challenged it; but you
 2    didn't challenge the West Tennessee Civil Liberties Union,
 3    Inc. that existed from 1967 to 1983, did you?
 4    A.   I don't think they were engaged in activities
 5    independent of the ACLU of Tennessee.
 6    Q.   But you don't know?
 7    A.   I don't know?
 8    Q.   But what we do know is that it did exist?
 9    A.   They were not actively involved.
10              MS. SILK:  I have nothing further.  Thank you.
11                            * * * *
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**C E R T I F I C A T E**

1
2
3
4       I, LISA J. MAYO, do hereby certify that the
5  foregoing 14 pages are, to the best of my knowledge, skill
6  and abilities, a true and accurate transcript from my
7  stenotype notes of the excerpted portion on 20th day of
8  August, 2018, in the matter of:
9
10
11 ACLU of Tennessee
12 vs.
13 City of Memphis, Tennessee
14
15 Dated this August 20, 2018.
16
17
18
19                          S/Lisa J. Mayo
20             LISA J. MAYO, LCR, RMR, CRR
              Official Court Reporter
21            United States District Court
              Western District of Tennessee
22
23
24
25