## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| **ELAINE BLANCHARD, et al.** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **ACLU OF TENNESSEE, INC.,** ) | **Case No. 2:17-cv-02120-jpm-DKV** |
| ) | |
| **Intervening-Plaintiff** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **CITY OF MEMPHIS** ) | |
| ) | |
| **Defendant.** ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯) | |

## ACLU OF TENNESSEE, INC.'S
## POST TRIAL BRIEF ON THE ISSUE OF STANDING

Intervening Plaintiff, ACLU of Tennessee, Inc. files its Post Trial Brief on the

Issue of Standing and shows that the record at trial demonstrates that Plaintiff has

standing to enforce the Consent Decree.

## INTRODUCTION

At issue before the Court on whether ACLU-TN has standing to enforce the

Order Judgement and Decree (the "Decree") entered on September 1978 in *Kendrick*

*v. Chandler*.  Defendant filed a motion to dismiss Intervening Plaintiff, ACLU of

Tennessee, Inc.'s (ACLU-TN) complaint, first raising issues of standing.  (ECF 8.)

The Court denied this Motion, finding that ACLU-TN was, at the least, a successor-

in-interest to an entity that was a party to the Decree.  (ECF 41.)  Defendant then

filed a Motion for Summary Judgment on the same issue.  (ECF 80.)  The Court

again denied Defendant's motion finding that material issues of fact existed as to the standing issue. (ECF 117.)

Defendant insists that either a long defunct corporate entity known as the West Tennessee Civil Liberties Union, Inc, whose name appears nowhere in the original complaint, was the original plaintiff to the *Kendrick* lawsuit or, alternatively, that the West Tenness Chapter of the ACLU-TN was actually an independent organization operating sperate and apart from ACLU-TN. The record however, shows that the <u>Kendrick</u> lawsuit was brought by the ACLU-TN through its then functioning West Tennessee Chapter. Even if Defendant were correct that another entity was the plaintiff, the Court's successor-in interest analysis from its prior order remains correct and ACLU-TN has standing to maintain this effort to enforce the Decree.

STATEMENT OF FACTS

The testimony at trial from Mike Cody, Bruce Kramer and Hedy Weinberg paint a picture of the history of the ACLU in Tennessee from the early 1960s though the entry of the Decree in 1978 and beyond. This history is important to understanding that ACLU-TN was a party to the Consent Decree.

## A.    The First ACLU Affiliates in Tennessee and the Formation of the Statewide Affiliate

According to Mr. Cody, in the early and mid-1960s, the ACLU national organization operated in west Tennessee though individual cooperating attorneys who represented clients on a pro bono basis. (Page ID 5435). In the late 1960s,

three corporate entities were created as affiliates of the ACLU for each grand division of the State. (Ex. 1.)  The West Tennessee Civil Liberties Union, Inc. was formed on April 18, 1967. (Ex. 95.)

The term "affiliate" has a specific meaning for ACLU.  Bruce Kramer explained that an "[a]ffiliate is the entity that's basically chartered by the ACLU."  (Page ID 5482, Ln 21-22.)  Importantly, affiliates have representation on the national ACLU's Board of Directors.  Id.

The idea of having three separate Tennessee affiliates for the ACLU was reconsidered.  (Page ID. 5482-83.)  According to Mr. Kramer, the three affiliates in Tennessee gave the state, as a whole, three representatives on the national Board of Directors.  Id. at 5483.  "And so the national basically said no, you're going to have one."  Id.

The ACLU-TN was formed on September 18, 1968 as that one affiliate.  (Ex. 1.)  According to its charter, ACLU-TN was formed specifically to consolidate the operations of the three regional affiliates into one statewide organization that would serve as the Tennessee affiliate for the national ACLU.  Id.  The charter states that ACLU-TN would "consolidate the affairs and activities of the previously existing" Middle and East Tennessee entities.  Id.  The ACLU-TN would "absorb at a future time" the West Tennessee Civil Liberties Union, Inc.  Id.

Mike Cody was a charter member of the West Tennessee Civil Liberties Union, Inc. in 1967.  (Ex., Page ID .)  His testimony reveals that the West Tennessee Civil Liberties Union, Inc. was indeed absorbed by the new statewide affiliate:

by August of 1968 I has learned that there was – whether it's because the national office wanted to do it or whatever, they were going to have one group and no longer the three affiliates in east, middle and west Tennessee.

(Page ID. 5437, Ln 14-18.)  Mr. Cody recalls expressing his opposition to the move, believing that those living in Memphis would lose interest in an organization located in Nashville.  (Page ID. 5447.)[1]

After the ACLU-TN was formed, Mr. Cody has no recollection of any further activity of the West Tennessee Civil Liberties Union, Inc.  (Page ID. 5439.)  Mr. Cody remained in Memphis and served as a member of the Memphis City Council in 1976, when the *Kendrick* case was filed.  He testified that the entity he helped create would not have had any involvement in the case.  (Page ID. 5440.)

Mr. Cody's recollection is supported by Mr. Kramer's testimony.  Mr. Kramer became involved with ACLU-TN in the early 1970s.  (Page ID.  5496.)  He testified that when we became involved, the West Tennessee Civil Liberties Union, Inc. was not an affiliate of the ACLU and it had no representation on the national board.  (Page ID. 5484.)  Mr. Kramer also testified that the West Tennessee Civil Liberties Union, Inc. was no longer functioning:

> No. When you say functional, I mean, it may have existed on the registry of the Secretary of State, but during the time that I was involved, from early 1970s to 1983, I guess, I don't think we actively acted in the name of the West Tennessee Civil Liberties Union, Inc. I wasn't even aware of it.

---

[1] In fact, the earliest ACLU-TN state office was located in Knoxville, Tennessee. (Ex. 7).

(Page ID. 5485, Ln. 18-25 − 5486, Ln. 1-2.)  Mr. Kramer testified that the ACLU-TN and its West Tennessee Chapter were acting in west Tennessee during this time frame.  (Page ID. 5476.)

## B.     The ACLU of Tennessee, Inc. and Chapters.

During its early years in operation, ACLU-TN was structured as a confederation of local chapters.  According to ACLU-TN's 1972 By-laws, in effect at the time the *Kendrick* case was filed, "[c]hapters of the ACLU of Tennessee, Inc., may be chartered by the Board of Directors in areas where membership size and interest justify such organization." (Ex. 2.)  Chapters essentially consisted of a group of people in a locality that were interested in supporting the work of the ACLU-TN.  Hedy Weinberg described purpose of chapters as:

> The goal was to have chapters, if they were so engaged, to organize public education programs as a way of staying visible outside of just pursuing litigation in our legislative work. So it -- and a way to increase awareness. So that was the goal of chapters

(Page ID 5169, Ln 2-6.)

Chapters were part of the ACLU-TN and not separate legal entities.  They were not corporations, formed under the laws of Tennessee or any other state, such as subsidiaries or affiliated corporate entities.  The chapters operated entirely under the authority derived from the ACLU-TN By-laws.  (Ex. 2.)

Chapters operated as sort of local offices for ACLU-TN in particular regions of the state.[2]  By 1975, ACLU-TN was operating with six chapters: Middle Tennessee,

---

[2] The term offices should not be taken in a literal, brick and mortar sense.  Mr. Kramer testified that the West Tennessee Chapter did not maintain an office in

West Tennessee, Oak Ridge Area, Knoxville, Franklin County, and Chattanooga.  (Ex. 3.)

The Chapters were given the "authority to direct and govern activities of the ACLU in their areas, subject to the policies and regulations of the ACLU of Tennessee, Inc."  (Ex. 2.)  Each Chapter's president served as a member of the ACLU-TN's Board. Additionally, each chapter was entitled to elect a member to the Board of Directors for every fifty chapter members.  Id.  Mr. Kramer testified that at the time he was involved with the West Tennessee Chapter, members of the chapter served on the Board of Directors for the ACLU-TN.  (Page ID. 5477.)

The October 4, 1975 minutes list the several members from differing chapters in attendance.  (Ex. 3.)  Notably, members from the West Tennessee Chapter are listed as attending.  Later in the minutes, topics for a retreat are discussed, including "[c]hapter organization and day to day operation."  Id. at Agenda Item F.

The minutes demonstrate how ACLU-TN existed as a group of chapters working in their local communities but operating underneath the state-wide affiliate. By, at the latest, October 4, 1975, almost a year before the Kendrick litigation was filed, the West Tennessee Chapter was part of this organization.

In total, the Charter, By-Laws and historic minutes of ACLU-TN show that a West Tennessee Chapter of ACLU-TN was alive and well in 1976 and operating as a part of ACLU-TN.  It was not a separate corporation or other legal entity.  The West

---

Memphis at all times and would often meet in his law office or at his home.  (Page ID 5501.)

Tennessee Civil Liberties, Inc., like the other regional affiliates that were first created, was not operating. The promise of ACLU-TN's Charter had been fulfilled and its operations had been "absorb[ed] at a future time." (Ex. 1.)

**C.    ACLU of Tennessee, Inc.'s Involvement in the <u>Kendrick</u> Case.**

The record shows that ACLU-TN directed the <u>Kendrick</u> litigation. Mr. Kramer explained that at the time they filed the lawsuit in 1976, ACLU-TN's state offices were located at 81 Madison Street in Memphis. (Page ID. 5474.) Mr. Kramer's offices were next door and he would often confer with Chan Kendrick, the Executive Director of ACLU-TN at the time. <u>Id.</u> The ACLU-TN's sole office was located in Memphis through the entire life of the <u>Kendrick</u> case.

> **THE COURT:** Okay. Okay. So when the suit was brought, until -- when it was brought and when it was concluded, where was the ACLU, whatever it was, where was the entity located for the whole period of time? Did it change at any time?
>
> **THE WITNESS:** No. The office was always in that building until it moved to Nashville.

(Page ID 5500, ln. 7-13.) Mr. Kramer went on to explain that that ACLU-TN moved to Nashville sometime before Ms. Weinberg because the Executive Director. However, when asked if this was after the Decree was entered, Mr. Kramer testified "on, much – much after that." (<u>Id.</u> at Ln. 3-4.) Ms. Weinberg testified that a second office was opened in Nashville sometime in the year before she assumed the Executive Director role 1984. (Page ID. 5847.) The Memphis office remained open until 1987. (Page ID. 5848.)

7

Mr. Kramer was one of the attorneys that brought the *Kendrick* case. He testified that he represented ACLU-TN in that litigation.

> Q.      Was there an entity that you represented in that litigation?

> THE WITNESS: Well, the entity was the ACLU of Tennessee.

(Page ID 5472, Ln 22-23; 5473, Ln 3-4.)

When asked who authorized him to bring the litigation, Mr. Kramer testified:

> Q. And who authorized to you bring the lawsuit on behalf of this chapter?

> A. The executive director, Chan Kendrick.

> Q. And he was executive director of –

> A. He was executive director of the state affiliate.

> Q. And that's the ACLU of Tennessee?

> A. Yes.

Mr. Kramer explains that he and the other attorneys working on the case "hurriedly drafted the complaint and sought some injunctive relief, emergency restraining order." (Page ID. 5474, Ln 23-25 – 5475, Ln. 1.) The complaint was a typed document. (Page ID. 5502.) Under these rushed circumstances, Mr. Kramer filed the complaint with the Court. ACLU-TN is specifically identified in the <u>Kendrick</u> complaint.

> The American Civil Liberties Union of West Tennessee, Inc. ("WTCLU") is a ***Chapter of the American Civil Liberties Union of Tennessee, Inc.,*** which is an affiliate of the American Civil Liberties Union, all being non-profits, non-partisan organizations dedicated to the preservation of citizens' rights and liberties guaranteed by the constitution and laws of the United States. The West Tennessee ***Chapter*** is comprised of approximately five hundred members residing in the Western District if Tennessee, each of whom is dedicated to and involved in activities and conduct protected by the First, Fourth, Fifth,

Sixth, ninth and Fourteenth Amendments to the Constitution of the United States, and the corporate entity itself is dedicated to and involved in such constitutionally protected activities.

(Ex. 5 at ¶3(c)(emphasis added).

## ARGUMENT AND CITATION TO AUTHORITY

For a court to have jurisdiction over a "case" or "controversy", it must be established that the party bringing the case before the court has standing to do so. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). There are three elements that must be met to establish standing; (1) the plaintiff must suffer "injury in fact", (2) the injury must be "fairly traceable to the challenged conduct of the defendant", and (3) it must be "likely" that the injury will be "redressed by a favorable decision". See id. at 560-61. It is the burden of the party invoking federal jurisdiction to establish these elements. See id. at 561.

Defendant argues that ACLU-TN was not a party to the original litigation and, therefore, has suffered no injury from Defendant's violation of the Decree. The issue of standing rests on whether ACLU-TN was a party. If it was not, ACLU-TN may still satisfy its standing requirement if it were a successor-in-interest to a party to the Decree that filed.

### A.    Standard of Proof for Standing.

In civil actions, the typical standard of proof is proof by a preponderance of the evidence. Price Waterhouse v. Hopkins, 490 U.S. 228, 253 (1989)( "[c]onventional rules of civil litigation generally apply in Title VII cases, and one of these rules is that parties to civil litigation need only prove their case by a preponderance of the

evidence."); <u>White v. Burlington N. & Santa Fe R. Co.</u>, 364 F.3d 789, 805 (6th Cir. 2004).  Some claims, like claims for contempt of court, require the higher standard of proof of clear and convincing evidence.  <u>N.L.R.B. v. Cincinnati Bronze, Inc.</u>, 829 F.2d 585, 590 (6th Cir. 1987).  Defendant argues that Plaintiff must also prove standing at this higher standard, relying on a single passage in <u>Lujan</u>.  This argument is mistaken.

Defendants cite to the following provision for its argument that a higher standard of proof applies to prove Plaintiff's standing:

> Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.

504 U.S. at 561 (1992).  Based on this passage, Defendant states in its brief:

> [t]hus to support a finding of contempt, each element of the Intervening Plaintiff's case, including each element of standing, must be supported <u>in the same way as any other matter on which the pl bears the burden of proof,</u> i.e. by clear and convincing evidence.

(ECF No. 142, Page ID 6108) (emphasis in the original).  <u>Lujan</u> does not stand for the proposition that, because Plaintiff must prove some of its case by clear and convincing evidence, all elements of its case, including standing, are also elevated to that heightened standard of proof.  The conventional rules of civil litigation should apply to the standing determination.

In context, the passage in <u>Lujan</u> is part of a discussion concerning the level of proof necessary to satisfy the standing requirement at **each stage** of the litigation.  Immediately after the passage quoted by Defendant, the Court

goes on to say that, at the pleading stage, factual allegations of standing suffice to survive a motion to dismiss.  Id.  The Court's discussion then turns to the standard at summary judgment.  At this stage, a plaintiff must prove more than "mere allegations" of standing and must set forth specific facts that will be taken as true for the purposes of the motion.  Id.  Finally, at trial, the facts establishing standing for a plaintiff must be supported by the evidence in the record.  Id.  In short, the Lujan Court instructs that standing is not just a pleading requirement but is like any other part of a case. The Plaintiff cannot merely allege standing to satisfy its burden.  It must prove those facts at trial.

The case does not mention the standard of proof nor does it state that the standard of proof for standing is somehow dependent on the standard of proof that applies to other substantive issues brought in the case.  The proper standard of proof for this Court's analysis of whether ACLU-TN has standing is preponderance of the evidence.  See Burke v. Johnson, 167 F.3d 276, 284 (6th Cir. 1999)(rejecting the imposition of a clear and convincing standard in favor of preponderance standard "applicable in ordinary civil contract actions.)

Defendant also cites Fair Elections Ohio v. Husted, 770 F.3d 456, 459 (6th Cir. 2104) and Lujan, for the proposition that standing is more difficult to establish when the plaintiff is not the "object of the government action or inaction" challenged.  (ECF 142, Page ID 6108.)  Again, any argument that this case supports heightening the standard for proving standing to clear and convincing is misplaced.  The Fair Election Ohio and the Lujan cases both

involved lawsuits seeking to force government officials to comply with certain laws.  This case deals with the enforcement of a consent decree.  This is not a party bringing a lawsuit to "resolve an issue of public policy or trying to force a government official to comply with regulations or policies.  This is a proceeding to enforce an agreement entered into by the parties that has been entered as a Consent Decree by the Court.  This case is more equivalent to a suit to enforce a contact.  No heightened standing requirements should be placed on this case because the Defendant is a government body.[3]

**B.    ACLU-TN was the actual party in interest in Kendrick v. Chandler because the American Civil Liberties Union in West Tennessee was a Chapter under the ACLU-TN By-Laws.**

ACLU-TN was a party to the Kendrick litigation and, therefore, a party to the consent decree.  As Mr. Kramer said, unfortunately, ACLU-TN was referred to in those documents by both its name and the name of the Chapter.  The entity known as the West Tennessee Civil Liberties Union, Inc. was not a chapter of the ACLU-TN nor was it a party to the Kendrick litigation.

The West Tennessee Civil Liberties Union, Inc. and the West Tennessee Chapter of the ACLU-TN are two different things.  As Mr. Cody testified, after the state-wide affiliate was established, the West Tennessee Civil Liberties Union, Inc. ceased its operations.   (Page ID 5439.)   This fact is supported by Mr. Kramer's testimony that he was involved in the West Tennessee Chapter prior to bringing the

---

[3] Even if the standard of proof were heightened to clear and convincing evidence, ACLU-TN believes that it has met its burden of proof.

*Kendrick* litigation and he had no knowledge of the West Tennessee Civil Liberties Union, Inc. operating during that time.  (Page ID 5483; 5485.)

Moreover, the ACLU-TN Charter and minutes show that West Tennessee Civil Liberties Union, Inc. had been absorbed by ACLU-TN in the years prior to the <u>Kendrick</u> litigation.  (Ex. 2; Ex. 3, Ex. 4.)  The Charter of the ACLU-TN states that the corporation's purpose was to absorb the activities of the three regional entities created in 1966 and 1967.  (Ex. 1.)  The relationship shown in Board of Directors Minutes over the years before the <u>Kendrick</u> Complaint demonstrates that that goal was achieved by 1976.  (Ex. 3; Ex. 4.)

The ACLU-TN brought the <u>Kendrick</u> suit through its West Tennessee Chapter. The Chapter was a part of ACLU-TN, and not a separate and distinct legal entity. The <u>Kendrick</u> Complaint specifically refers to the American Civil Liberties Union of West Tennessee, Inc. as a chapter of the ACLU-TN.

> The American Civil Liberties Union of West Tennessee, Inc. ("WTCLU") is a ***Chapter of the American Civil Liberties Union of Tennessee, Inc.,*** which is an affiliate of the American Civil Liberties Union, all being non-profits, non-partisan organizations dedicated to the preservation of citizens' rights and liberties guaranteed by the constitution and laws of the United States. The West Tennessee ***Chapter*** is comprised of approximately five hundred members residing in the Western District if Tennessee, each of whom is dedicated to and involved in activities and conduct protected by the First, Fourth, Fifth, Sixth, ninth and Fourteenth Amendments to the Constitution of the United States, and the corporate entity itself is dedicated to and involved in such constitutionally protected activities.

<u>Kendrick</u> Complaint ¶3(c) (emphasis added).  The plain language of the <u>Kendrick</u> Complaint states that the American Civil Liberties Union of West Tennessee, Inc. was operating as part of the ACLU-TN.  Supporting this reading of the complaint is

Mr. Kramer's testimony. Mr. Kramer, who drafted the complaint, stated that while they "unfortunately" referred ACLU of Tennessee in several different ways using the chapter's name, his client and the real party in interested was the ACLU-TN. (Page ID 5473.) The ACLU-TN authorized the litigation and he took his direction from the ACLU-TN's executive director.

The names used in the complaint, American Civil Liberties Union of West Tennessee, Inc. and American Civil Liberties Union in West Tennessee, were referenced to a chapter of ACLU-TN. To understand what this means, the Court should look to the ACLU-TN's 1973 By-laws, which instruct on what the term "chapter" means. (Ex. 2.) As revealed in the By-laws, a chapter is not a separate legal entity, but a local organization of people chartered thereunder (Ex. 2, Art. VIII, § 2). A chapter, as part of the lager whole, is specifically authorized to conduct business on behalf of the ACLU-TN in its local community. Id. Its existence is entirely dependent on the ACLU-TN and it is required to report its activities to ACLU-TN. Id. at §§ 3-4. Minutes for ACLU-TN Board of Director meeting held on October 4, 1975, show that various chapters are in attendance, including the West Tennessee Chapter. Ms. Weinberg testified that chapters were used by ACLU-TN to engage the local communities and push out public education initiatives, as well as for the more traditional legislative and litigation functions. (Page ID 5169). Chapters are basically people - volunteers - doing the work of the ACLU-TN.

The West Tennessee Chapter is one and the same as the ACLU-TN. It did not exist outside of the existence of ACLU-TN. Essentially ACLU-TN and West

Tennessee Chapter are just names for the same entity, allows one refers to ACLU-TN operations in that specific part of the state.   In effect, ACLU-TN was "doing business as" the American Civil Liberates Union in West Tennessee when it filed the lawsuit.  This is akin to a company's Memphis office conducting its affairs in Memphis, while its headquarters manages the various offices around the state.

While the chapter system of corporate management has fallen by the wayside in the past decades, the ACLU-TN persists and is the proper party to the 1978 Decree. Therefore, ACLU-TN has standing to enforce the Decree.

Defendant argues that the absence of by-laws for the West Tennessee Chapter shows that it did not exist as a chapter or was a sperate entity that operated outside of ACLU-TN.  The evidence in the record contradicts this assertion.  Mr. Kramer's testified that he was a member of the Chapter in the early 1970s before filing the Kendrick Case.  The chapter operated under the auspices of the ACLU-TN and members of the Chapter served on the ACLU-TN Board of Directors.  (Page ID 5477.) There was no sperate entity operating in west Tennessee at from the early 1970s.

The minutes from 1975 support Mr. Kramer's testimony.  The minutes identify a West Tennessee Chapter and its members who attended the board meeting.  Simply because By-laws have been lost to history does not compel the conclusion that they never existed or that the West Tennessee Chapter wasn't a fully recognized part of ACLU-TN.  The recollections of witness involved with the chapter during the relevant period and the recognition of the West Tennessee Chapter in minutes provide that it

was indeed operating as part of ACLU-TN; there is no evidence that it was operating as some rouge or competing entity.

Defendant next argues that the West Tennessee Chapter initiated and litigated the case independently of ACLU-TN. This argument completely ignores the nature of a chapter. Chapters were part of ACLU-TN and cannot exist separately or decide to go their own way. (Page ID 5174). As Ms. Wienberg testified, if a chapter broke off from ACLU-TN, it would not be supported and its existence would be challenged. (Id.)

These were not separate entities completing against each other. They are one in the same. Defendant points to minutes and documents that show that chapters were involved in raising funds to support ACLU-TN. This was simply how the ACLU-TN was organized at the time. The work was done on a local level by members interested in donating their time. (Page ID 5152).

Defendant next suggests that perhaps the West Tennessee Chapter decided not to become a chapter of ACLU-TN because of these obligations. Again, the record completely contradicts this assertion. If the West Tennessee chapter has spilt from or never joined ACLU-TN before filing the lawsuit, the ACLU-TN board minutes would not reflect the attendance of West Tennessee Chapter members serving on the Board of Directors. Certainly Mr., Kramer, with his heavy involvement in both the ACLU-TN and the Kendrick case, would have noticed the split. Mr. Kramer testified that his direction to file the case came from ACLU-TN's Executive Director (Page ID. 5477.) The ACLU-TN state offices were located in Memphis throughout the litigation

16

and the executive director participated in the litigation as an individual party.  (Page ID 5477, 5500).

Defendant also attaches significance to the fact that the national ACLU Foundation funded the litigation but was not a party and that the attorneys in the case received the attorneys' fees awards.  Neither of these facts have any bearing on whether ACLU-TN was a party to the case.  ACLU Foundation funded litigation in which its lawyer is involved.  This is not evidence that it should or even could have been a party.  Allowing attorneys who litigate a case to keep court awarded fees also does not mean that ACLU-TN has no involvement in the case.  This is simply a common arrangement between clients and their attorneys.  As noted before, the record shows that ACLU-TN was directly involved in authorizing the litigation and Mr. Kramer testified that that is who he represented in the case.  (Page ID 5477). Whether funding for the suit came from national resources and whatever the arrangement was for attorney's fees, the evidence in the record shows that ACLU-TN was heavily involved in directing the litigation.

**C.**   **Even if the West Tennessee Civil Liberties Union, Inc. were the original Plaintiff in <u>Kendrick v. Chandler</u>, ACLU-TN Has Standing to Enforce the Decree as its Successor-in-Interest.**

Even if the original <u>Kendrick</u> Complaint were brought by the West Tennessee Civil Liberties Union, Inc. or a corporate entity that was operating as a chapter of ACLU-TN, the Court's analysis in its Order denying Defendant's Motion to Dismiss is correct, and ACLU-TN should be considered a successor-in-interest.

The Court found that the ACLU-TN was a successor-in-interest to the West Tennessee Civil Liberties Union, Inc, because it was operating as a chapter to the ACLU-TN and because of their close relationship and common purpose. As is evidenced the by-laws, chapters operated under the close supervision and control of the ACLU-TN, while simultaneously providing fundraising support and handling litigation and local education efforts.

As the Court noted, in the Sixth Circuit a party was bound by the effects of a consent decree if it were a successor in interest. Vulcan, Inc. v. Fordees Corp., 658 F.2d 1106, 1111 (6th Cir. 1981). Defendant attempts to distinguish the case, noting that the case concerned whether a consent decree imposed *res judicata* on a successor-in-interest. Indeed, this was the focus of the case. The Court held that "Fordees' interests were "so closely aligned" with those of M&G that they were fairly represented in the Pennsylvania proceedings." Therefore, Fordees was precluded from re-litigating the matter.

While the foci of the cases are different, the Court rightly found that the same logic applies. If the law demands that parties in privity are so closely aligned that a consent decree entered by one may be enforced against another, then such parties should be able to enforce that same decree.

Defendant also cites Sanders v. Republic Services of Kentucky, LLC, 113 Fed. Appx. 648 (6th Cir. 2004), an unpublished decision, for the proposition that those who are not a party to a decree cannot enforce it. Sanders was not a case where a successor–in-interest or party in privity sought to enforce a consent decree. In that

case, the plaintiffs were not connected at all to the original plaintiffs to the consent agreement.  While they had been parties to the original litigation, that litigation did not result in their inclusion in the settlement.  The court, therefore, prohibited plaintiffs from attempting to enforce another parties' agreement.  <u>Id.</u> at 650-51. The case does not treat the issue at all as to whether a successor–in-interest or party in privity, which necessarily would not be the actual entity signing onto a consent decree, can enforce the decree.   The case merely repeats the standard that a third-party beneficiary cannot sue to enforce a consent decree.   <u>Sanders</u>, 113 F. App'x at 650 ("It also is worth noting that the plain text of the Agreed Judgment itself reserves the right of enforcement solely to Valley View and its successors.").  Accordingly, <u>Sanders</u> is simply inapplicable to the case before the Court.

## CONCLUSION

The record shows that ACLU-TN brought the Kendrick complaint and was a party to the Consent Decree.  From before the lawsuit was filed until after the Decree was entered, ACLU-TN maintained its state offices in Memphis.  Mr. Kramer, the lawyer for the Plaintiffs in the case, named ACLU-TN as his client.  Mr. Kramer and the documentation available from that time show that the names used in the Kendrick complaint where names of a chapter of ACLU-TN – essentially alternative names for ACLU-TN.  Mr. Cody's testimony establishes that the ACLU-TN was formed to takeover for the three regional ACLU affiliates.  Mr. Cody and Mr. Kramer's testimony prove that there was no other completing entity in Memphis

during this time period that could have brought the Kenrick case or been part of the Decree.

      For the foregoing reasons, ACLU-TN has established standing to bring this action enforcing the Decree.

Respectfully Submitted,

/s/ Thomas H. Castelli
Thomas H. Castelli, BPR# 024849
Mandy Strickland Floyd, BPR#31123
ACLU Foundation of Tennessee
P.O. BOX 120160
Nashville, TN 37212
615.320.7142
tcastelli@aclu-tn.org
mfloyd@aclu-tn.org

ATTORNEYS FOR PLAINTIFF
ACLU of Tennessee, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 24, 2018, a true and correct copy of the

foregoing document and the above-described exhibits has been served via ECF to:

Attorneys for Defendant, City of Memphis

Buckner Wellford
Mark Glover
Jennie Vee Silk
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
bwellford@bakerdonelson.com
mglover@bakerdonelson.com
jsilk@bakerdonelson.com

/s/ Thomas H. Castelli
Thomas H. Castelli