**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ACLU OF TENNESSEE, Inc. | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:17-cv-02120-jpm-DKV |
| v. | ) | |
| | ) | |
| THE CITY OF MEMPHIS, | ) | |
| Defendant. | ) | |
| | ) | |

**ACLU-TN'S RESPONSE IN OPPOSITION TO
THE CITY'S MOTION FOR RELIEF FROM JUDGMENT OR ORDER**

The plaintiff, ACLU of Tennessee, Inc. ("ACLU-TN") hereby files its response in opposition to the City of Memphis' *Motion for Relief from Judgment or Order* (ECF 124) ("Motion"), which seeks relief from the September 14, 1978 Order, Judgment and Decree entered into by the consent of the parties ("Consent Decree").

The City of Memphis (the "City") has not met its burden to justify a modification or termination of the Consent Decree in this matter either as a matter of law or as a matter of fact. Essentially, the City attempts to argue that the Consent Decree must be terminated or modified because it exceeds the constitutional floor. This is not the law. *See Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 391 (1992) ("A proposed modification should not strive to rewrite a consent decree so that it conforms to the constitutional floor.") Accordingly, ACLU-TN respectfully asserts that the City's Motion should be dismissed without further proceedings.

To the extent that the Court determines that the City's Motion warrants further proceedings, ACLU-TN respectfully submits that a scheduling order be entered permitting a period of discovery

and an evidentiary hearing to determine whether a modification is appropriate and, if so, the nature of that modification.

## I.    LEGAL STANDARD

A consent decree is "essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). Consent decrees are indeed "a strange hybrid in the law." *Brown v. Neeb*, 644 F.2d 551, 557 (6th Cir. 1981). They are at once "a voluntary settlement agreement which could be fully effective without judicial intervention" and "a final judicial order . . . placing the power and prestige of the court behind the compromise struck by the parties." *Williams*, 720 F.2d at 920. Consent decrees "should be strictly construed to preserve the bargained for position of the parties." *Id.* Courts have an affirmative duty to protect the integrity of its decree and ensure that the terms are effectuated. *See Stotts v. Memphis Fire Dep't*, 679 F.2d 541, 557 (6th Cir. 1982).

While a consent decree "embodies an agreement of the parties and thus in some respects is contractual in nature," it is subject to Rule 60(b) because it is "a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378, 112 S. Ct. 748 (1992). Accordingly, a district court may grant relief under Rule 60(b)(5) if "[1] the judgment has been satisfied, released or discharged; [2] it is based on an earlier judgment that has been reversed or vacated; or [3] applying it prospectively is no longer equitable." *Horne v. Flores*, 557 U.S. 433, 447 (2009).

"The party seeking relief bears the burden of establishing that changed circumstances warrant relief." *Horne*, 557 U.S. at 447 (citation and internal quotation marks omitted); *Ne. Ohio Coal. for Homeless v. Husted*, 696 F.3d 580, 603 (6th Cir. 2012). At core, the operative question is whether "[t]he party seeking relief [met its] burden of establishing that changed circumstances

warrant relief." *Horne*, 557 U.S. at 447. This burden is heightened when the change in conditions was anticipated by the party challenging the decree:

> If it is clear that a party anticipated changing conditions . . . but nevertheless agreed to the decree, that party would have to satisfy a heavy burden to convince a court that it agreed to the decree in good faith, made a reasonable effort to comply with the decree, and should be relieved of the undertaking under Rule 60(b).

*Rufo*, 502 U.S. at 385.

## I.     THE CITY HAS NOT MET THE STANDARD FOR VACATING THE CONSENT DECREE

The City has not met its burden in showing that termination of the Consent Decree is warranted under Rule 60(b). The City has not demonstrated a change in facts or law that would support terminating the decree. The City has not met the terms of the Consent Decree and equitable considerations do not exist in this case in the same way as they did in other cases cited by the City. The City has not made even threshold showing of a change in circumstances. The City, further, has not shown that it has complied with federal law or that the Decree's objectives have been achieved. Accordingly, ACLU-TN requests that the City's Motion be denied.

### A.   *The City Is Not in Compliance with the Consent Decree*

The court may terminate its supervision or jurisdiction over a consent decree based upon change of law or change in circumstances.[1] *Doe v. Briley*, 562 F.3d 777, 782, 2009 WL 1014670 (6th Cir. 2009). Pursuant to the first clause of Rule 60(b)(5), a district court may not terminate its jurisdiction over a consent decree until it finds both that the parties are in compliance with the

---

[1] Under Rule 60(b)(5), a court may vacate a consent decree if, among other things, "a significant change . . . in law renders [its] continued enforcement detrimental." *John B. v. Emkes*, 710 F.3d 394, 402, 2013 WL 979205 (6th Cir. 2013). A change in law satisfies that test when the parties "based their agreement on a misunderstanding" of the law. *Id.* (citing *Rufo v. Inmates of Suffolk Cnty. Jail,* 502 U.S. 367, 390 (1992); *accord Doe v. Briley*, 562 F.3d 777, 782–83 (6th Cir. 2009)). The City has not argued in the motion presently before the Court that a change in law justifies vacating the Consent Decree.

decree's terms and that the decree's objectives have been achieved. *Gonzales v. Galvin*, 151 F.3d 526, 531 (6th Cir. 1998); *see John B. v. Emkes*, 710 F.3d 394, 412, 2013 WL 979205 (6th Cir. 2013).

The court must determine whether and when to terminate supervision or jurisdiction over a consent decree by considering the specific terms of the consent decree. *Heath v. DeCourcy*, 992 F.2d 630, 633 (6th Cir. 1993). Factors to be considered in whether a consent decree should be vacated include (1) any specific terms providing for continued supervision and jurisdiction over the consent decree; (2) the consent decree's underlying goals; (3) whether there has been compliance with prior court orders; (4) whether the defendants made a good faith effort to comply; (5) the length of time the consent decree has been in effect; and (6) the continuing efficacy of the consent decree's enforcement. *Gonzales*, 151 F.3d 526, 531 (6th Cir. 1998).[2]

For example, in *John B.*, 710 F.3d at 412, Tennessee officials filed a motion to vacate a consent decree arising out of a class-action suit asserting that Tennessee's managed care program, TennCare, was in violation of the requirements of the Medicaid Act. *Id.* at 398. In its motion to vacate, the State argued that termination of the decree was proper because the State was in compliance with both the decree and the technical requirements of the Medicaid statute. *Id.* Over the course an eighteen-day evidentiary hearing, the district court evaluated whether the State was in "current, substantial compliance" with the decree and determined that, due to past violations of the decree, the State "now bore 'the burden of proving . . . that [it was] in substantial compliance with the [d]ecree.'" *Id.* at 406. The district court ultimate held that "[b]ased on . . . extensive examination . . . 'compared with its performance in 1998, TennCare ha[d] dramatically improved

---

[2] The Court expressly held in *John B.* that its decision in *Gonzales v. Galvin*, 151 F.3d 526 (6th Cir. 1998) is "not contrary" to its decision in *John B.*, and that *Horne* "trumps" *Gonzales* only to the extent that the two cases conflict. *John B.*, 710 F.3d at 414.

the provision of medical services to its enrollees in every respect'" and found that "no other state's . . . program surpass[ed] that of Tennessee in any salient respect." *Id.* at 401. On appeal, the Sixth Circuit held *inter alia* that the district court applied the correct standard in its exploration of whether the State was in substantial compliance with the decree and in holding the State to a higher standard based upon its violation of the decree twelve years earlier. *Id.* at 406.

The facts before this Court stand in stark contrast to those of the *John B.* case. In *John B.*, the State undertook extensive and exhaustive efforts to ensure that it complied with the requirements of the decree prior to seeking termination. Here, in contrast, the City has flouted its obligations and undertaken no discernable efforts to honor the Consent Decree's requirements.

In the August 10, 2018 Order, the Court held that the City had violated the Consent Decree. (ECF No. 120.) Specifically, the Court held that the City violated Section C(1) by impermissibly engaging in "political intelligence" through gathering and disseminating information relating to associations protected by the First Amendment in at least the following ways: (1) Creating the Authorization of Agency ("AOA") and adding the AOA's list of names to the City Hall Escort List; (2) Creating and circulating the Joint Intelligence Briefings ("JIB"); and (3) Deploying plainclothes police officers to photograph and identify participants at protest events. *Id.* at PageID 4880-82. The Court held that the City violated the Decree by failing to review and issue written authorizations for lawful investigations of criminal conduct that "may result in the collection of information about" or "interfere in any way with" the "exercise of First Amendment rights." *Id.* at PageID 4884-86. Pending at this time is the Court's determination of whether ACLU-TN proved at trial numerous additional violations of the Consent Decree. [3]

---

[3] Also, pending before the Court is whether Plaintiff has standing to enforce the Consent Decree. ACLU-TN acknowledges that the discussion contained herein is contingent on standing relative to the Consent Decree.

Accordingly, based on the City's failure to comply with the Consent Decree's terms, ACLU-TN respectfully submits that termination under Rule 60(b)(5) is simply unavailable to the City at this time. *See Gonzales*, 151 F.3d at 531; *see John B.*, 710 F.3d at 412, 2013 WL 979205. The City must demonstrate that there has been a change in factual circumstances in that it is (1) in compliance with the decree's terms; and (2) that the decree's objectives have been achieved. *Id.*

Looking to the factors set forth in *Gonzales*, the City has not met even the initial threshold of Rule 60(b)(5). First, the City has not specified any actions it will take to effectuate the Decree's goals — namely, the protection of the First Amendment rights of citizens — in the absence of the Consent Decree. To the contrary, the City states in its Motion that it seeks to be freed from the Consent Decree's requirements specifically so it may conduct "periodic monitoring and disseminating [of] information about the activities of individuals known to have been involved in . . . protest activities . . . ." (ECF 124, PageID 5013.) The City's conduct and posture toward those exercising their constitutional rights demonstrates that the City stands ready to return to its prior conduct once the Consent Decree is lifted. The City has provided no evidence that there are structures or policies in place, other than the Consent Decree, to protect those seeking to exercise their First Amendment rights. This is not the type of good faith efforts at compliance contemplated by the cases construing Rule 60(b)(5).

Accordingly, ACLU-TN submits that the City's Motion should be denied due to its failure to demonstrate in any manner that it is in compliance with the Consent Decree and that the Consent Decree's objectives have been achieved.

### B. The City Has Not Shown an Equitable Basis for Termination

The City contends that the Consent Decree should be terminated pursuant to the equitable considerations discussed in *Horne v. Flores*, 557 U.S. 433 (2009) and *John B. v. Emkes*, 710 F.3d

394, 412, 2013 WL 979205 (6th Cir. 2013).  Respectfully, the equitable considerations discussed in those cases do not apply in the present case, and even if they did, the City cannot meet the requirements established therein.

### i.    *Horne v. Flores*

*Horne v. Flores*, 557 U.S. 433 (2009) arose out of a class action lawsuit brought by English Language-Learner (ELL) students and their parents alleging that the State was violating the Equal Education Opportunities Act of 1974, with respect to funding to correct language barriers in the classroom. *Id.* at 439. The District Court entered a declaratory judgment in the case and over the course of eight years the parties repeatedly litigated the parameters of the order and the State's efforts to comply with it and other orders entered by the court. *Id.* In direct response to the litigation, and $20 million fines accrued thereunder, the state legislature passed a bill "designed to implement a permanent funding solution to the problems identified by the District Court in 2000," which resulted in additional litigation. *Id.* at 442.

The Supreme Court held that the litigation raised important equitable concerns under Rule 60(b)(5) based on changes of circumstances over time and what the Court termed "sensitive federalism concerns." *Id.* at 447-48. The Court stated that the federalism concerns "are heightened when, as in these cases, a federal court decree has the effect of dictating state or local budget priorities." *Id.* at 448. The Court also expressed concern about the misuse of consent decrees to exploit divisions between legislative and executive branches and to improperly and intentionally bind the hands of future legislators. *Id.* at 449.

To ameliorate these equitable concerns, the Court ruled that Rule 60(b)(5) motions should be available where the appropriate change of circumstances exists, to ensure that efforts to enforce court orders do not become untethered from the violations of federal law they were intended to

remedy. *Id.* at 450.  In this way, *Horne* served to reinforce the principles that federal courts are limited in jurisdiction and that the courts may not serve to "improperly deprive future officials of their designated legislative and executive powers." *Id.* (quoting *Frew*, at 441.) Importantly, *Horne* did not deal with a consent decree.

### ii.      *John B. v. Emkes*

*John B. v. Emkes*, 710 F.3d 394, 412, 2013 WL 979205 (6th Cir. 2013), arose out of litigation related to the technical requirements of federal statutory law.

In conducting its analysis of the district court's decision, the Sixth Circuit held that the district court had made a technical error in calculating one ratio under the TennCare statutory scheme. *Id.* at 411. As discussed in detail above, the district court held, and the Sixth Circuit affirmed, that the State was in substantial compliance with the decree at issue. *Id.* at 414. Rather than remand for a determination of "a single technical mistake" made "in the course of making literally dozens of interpretive decisions with respect to a notoriously complex statute and decree," the *John B.* court instead conducted an analysis of whether the error was harmless. *Id.* at 411.  It is in that context that the court evaluated whether the equitable principles pursuant to Rule 60(b)(5), and articulated in *Horne*, operated to render the district court's error harmless. The Court did not discuss the fact that *Horne* did not deal with a consent decree. Likewise, because the State was in substantial compliance with the decree, the Court did not explore the appropriate analysis to employ where the state actor fails to comply with a consent decree entirely. The Court concluded that "the district court's findings make clear that TennCare has implemented durable remedies to comply with the provisions of federal law that the decree was intended to enforce," and that the calculation error was harmless error. *Id.* at 413.

### iii.     *Horne* **and** **Emkes** *are distinguishable from the present case*

As an initial matter, ACLU-TN respectfully submits that the standards established in *Horne* do not apply to the continued enforceability of the Consent Decree before the Court. As discussed above, the orders that were subject to the court's analysis in *Horne* were not consent decrees. Accordingly, its focus on violations of federal law, alone, arises out of the fact that the orders at issue were not negotiated between the parties. *See Evans v. Fenty*, 701 F. Supp. 2d 126, 165 (D.D.C. 2010) ("Horne cannot mean that when a defendant agrees to a series of measures designed to remedy constitutional violations, these agreements are necessarily unenforceable because the measures exceed some ill-defined constitutional floor.")

Furthermore, *Horne* dealt with federalism concerns not present in the case before the Court. The *Horne* Court held that "[p]recisely because different state actors have taken contrary positions in this litigation, federalism concerns are elevated. And precisely because federalism concerns are heightened, a flexible approach to Rule 60(b)(5) relief is critical." *Id* at 452. These concerns were also linked directly to the fact that the federal court decree dictated state and local budget priorities. *Id.* at 448. The element of budgetary concerns and competing branches of government are not at issue in the case before the Court. Accordingly, the equitable concerns are also distinguishable.

Given these important distinctions, ACLU-TN respectfully submits that the analysis set forth in *Horne* does not apply to the case before the Court.

### iv.     *The City has not established an equitable basis for termination of the Consent Decree*

Even if the analysis set forth in *Horne* does apply, however, the City has failed to set forth an equitable basis for termination of the Consent Decree thereunder.

A defendant may seek to vacate a consent decree into which it has entered based on equitable considerations. Pursuant to the third clause of Rule 60(b)(5), district courts may grant

relief from a judgment if applying the Consent Decree prospectively is no longer equitable in light of "a significant change either in factual conditions or in law." *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992); see also Fed. R. Civ. P. 60(b)(5). Once the City proves that there is a significant change in circumstances, the City bears the burden of proving, first, that it has achieved compliance with the federal-law provisions whose violation the Decree sought to remedy; and second, that it will continue that compliance in the absence of continued judicial supervision. *See John B.*, 710 F.3d at 412. Under the second prong of this test, the City must prove that it has implemented a "durable remedy" in order to demonstrate that continued enforcement of the Decree is unnecessary. *See Horne*, 557 U.S. at 450. In other words, the City has to meet the burden that it has fulfilled its outstanding obligations, "by other means." *Horne*, 557 U.S. at 439.

The City has not set forth in its Motion a change in factual or legal circumstances which would serve as an equitable basis for vacating the Consent Decree. For example, in *Horne*, the Supreme Court identified multiple bases for a possible determination that circumstances warranted terminating the court's supervision, including the passage of a funding solutions bill in direct response to penalties arising from the litigation, passage of new federal legislation, and reforms implemented by a change in superintendents. *Id.* at 459-66. The Court also discussed at length the equitable concerns raised by the fact that the executive and legislative actors had weighed in on separate sides of the litigation. *Id.* at 452.

The City has articulated no such change in factual or legal circumstances.  At most, the City has argued that technology has changed over time and that it believes that it is too difficult for the Director to comply with certain provisions of the Consent Decree. These concerns do not rise to the level of the types of equitable concerns that would warrant the termination of the Decree.

Further, even if we reach the test set forth in *Horne*, the City has not met that test, even at the preliminary levels. The City has not proven that it is compliant with underlying federal law in its efforts to protect constitutional rights, efforts that serve as the basis of the Consent Decree in this matter.[4]  Instead, the City asserts that ***ACLU-TN*** has not proven that the City is in current violation of the constitutional rights of its citizens. This is not the standard. In pursuing a Rule 60(b)(5) motion, ***the City*** bears the burden of proving that it is in compliance with the law. *Horne*, 557 U.S. at 439. The City has not, however, put forward any such evidence. Further, the trial in this matter focused, appropriately, on the City's violations of the Consent Decree alone. Thus, proof of constitutional violations was incidental to the inquiry before the Court. *Hadix v. Johnson*, 66 F.3d 325 (6th Cir. 1995) ("[D]efendants may not use the consent decree as a shield against litigation which might result in specific findings of unconstitutionality and then use the lack of specific findings of unconstitutionality as a shield against the imposition of remedies consistent with the bargained-for terms of the consent decree.") Nevertheless, there was certainly evidence of constitutional violations presented at trial; this evidence further undermines the City's assertion that it is entitled to relief pursuant to the equitable considerations of Rule 60(b)(5). *See* Section III.

The City has also failed to put forth evidence that it will continue in any semblance of compliance in the absence of continued judicial supervision. The City has presented no evidence that it has implemented a "durable remedy" in order to demonstrate that continued enforcement of the Decree is unnecessary. *See Horne,* 557 U.S. at 450. The City, likewise, has not put forth any evidence that it has met its burden by fulfilling its outstanding obligations "by other means." *Horne*, 557 U.S. at 439. Unlike in *Horne*, where multiple alternate methods of future compliance

---

[4] The City has not argued in its Motion that change in intervening law undermines the constitutional foundation of the Consent Decree; indeed, no such change exists.

were asserted, or in *John B.*, where the State established a rigorous structure to ensure future compliance with the decree, the City, here, has advanced scant evidence of how future compliance will be implemented or assured.

Based on the City's failure to meet the standards for termination of the Consent Decree, ACLU-TN respectfully submits that the City's Motion should be dismissed.

## II.   STANDARD FOR MODIFICATION

Even if the City's Motion is construed as a motion to modify, rather than to vacate, the City has failed to meet the threshold requirements for modification of the Decree.

Modification of a consent decree is appropriate: (1) "when changed factual conditions make compliance with the decree substantially more onerous," (2) "when a decree proves to be unworkable because of unforeseen obstacles," or (3) "when enforcement of the decree without modification would be detrimental to the public interest." But "modification should not be granted where a party relied upon events that actually were anticipated at the time it entered into a decree." *United States v. State of Mich.*, 62 F.3d 1418 (6th Cir. 1995).

Rule 60(b)(5) "does not allow modification simply 'when it is no longer *convenient* to live with the terms of a consent decree,' but solely when there is 'a significant change either in factual conditions or in law.'" *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613-14 (6th Cir. 2011) (quoting *Rufo*, 502 U.S. at 383–84). The party seeking to show such a change "bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Id.* If that party carries its burden, then the district court "should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* "[M]odification of a consent decree is an extraordinary remedy that should not be undertaken lightly." *East Brooks Books*, 633 F.3d at 465 (internal quotation marks omitted).

12

"[T]he Supreme Court has rejected the notion that a court may enforce a consent decree only to the point of ordering relief to which the parties would have been entitled after a trial on the merits." *United States v. Michigan,* Nos. 94-2391/95-1258, 1995 WL 469430, at *14. With a consent decree, the important consideration is whether the district court is acting according to the scope and intention of what was bargained for. *See Lorain N.A.A.C.P. v. Lorain Bd. of Educ.,* 979 F.2d 1141, 1152 (6th Cir.1992). Moreover, the Supreme Court has explicitly stated that where specific provisions of the decree require a higher standard, courts should not "rewrite a consent decree so that it conforms to a constitutional floor." *Rufo*, 112 S.Ct. at 764.

As articulated above, ACLU-TN respectfully submits that the City has failed to articulate a change in circumstances sufficient to justify the extraordinary remedy of modifying the Consent Decree in this matter. *See* Section I (B)(iv), *supra*. The City identifies portions of the Consent Decree that it would like to change, but provides thin justification for the equitable reasons that would justify modification pursuant to the factors set forth in *Rufo*.

Indeed, the City claims that Sections C(1) and F of the Consent Decree should be modified because they are "too broad and ambiguous." Although ACLU-TN disagrees with that assertion, broadness and ambiguity are not a significant change of circumstance that justify equitable revision in any respect. (ECF 124-1, PageID 5021.)

The City claims that Sections D and E are "outdated and unduly restrictive," but does not identify the ways in which the evolution of social media has made it so. Further, the City's request that this provision be "made consistent with existing protections and limitations associated with the First and Fourth Amendments" is inconsistent with the law on modification. *Rufo*, 112 S.Ct. at 764.

13

The City claims that Section G should be revised because it is too difficult for the Director to authorize each investigation. (ECF 124-1, PageID 5023-24.) As an initial matter, the City agreed specifically to this provision of the Consent Decree and has articulated no change in conditions that would support a modification of this provision. *See Rufo*, 502 U.S. at 385. Even further, however, the City has not put forth evidence of any effort towards an alternate method of compliance.

With respect to various provisions, the City adopts an interpretation of the Consent Decree that tortures its meaning.  For example, with respect to Section H, the City claims that the Consent Decree would prohibit the City from maintaining a Department of Human Services. (ECF 124-1, PageID 5024-25.) This is simply not what the Consent Decree means.  Similarly, The City claims that the Consent Decree prevents it from engaging in the "best practices" of modern policing. (ECF 124-1, PageID 5021.) To that end, the City contends that the Consent Decree contains an "apparent (as interpreted by the Court) prohibition against modern methods of surveillance." (ECF 124, PageID 5013.) This, however, stands in contrast to the Court's Order in this case:

> The City's use of social media collators to search for specific threats to police and public safety, however—and the City's circulation of information about any specific threats it discovered—was *not* "political intelligence" because the purpose of such threats is unlawful and they are not protected under the First Amendment. The Consent Decree does not prohibit the City from monitoring social media altogether; it simply prohibits the City from casting too wide a net. Additionally, if the City casts an appropriately narrow net but inadvertently gathers information about the exercise of rights protected under the First Amendment, the Consent Decree prohibits the City from disseminating that information.

(ECF 120, PageID 4881-82.) Thus, the City's claims that the Consent Decree is too broad, too restrictive, too ambiguous, or too burdensome, are not based on the Consent Decree, but rather on the City's attempts to bind its own hands to attempt to justify seeking relief.

In summary, ACLU-TN submits that the City has not met the threshold requirements for seeking modification or termination of the Consent Decree. Further, the City's suggested modifications are not "suitably tailored" to any changed circumstances.

## III.   A   SCHEDULING   ORDER   AND   EVIDENTIARY   HEARING   ARE NECESSARY PRIOR TO ANY MODIFICATION OR TERMINATION

If the Court determines that the City has met the threshold requirements to trigger an inquiry into whether modification or termination is warranted, then ACLU-TN submits that a scheduling order and evidentiary hearing are necessary.

The termination or modification of a consent decree "without the consent of all parties to the agreement is indeed a signal event that requires a material change in circumstances that only a formal hearing and appropriate finds of fact can demonstrate." *U.S. v. Wayne County, Michigan*, 369 F.3d 508, 511 (6th Cir. 2004); *Heath v. DeCourcy*, 992 F.2d 630, 634 (6th Cir. 1993).  There are rare exceptions to the need for a full evidentiary hearing. The Court is free to deny a motion to modify or vacate a consent decree without a formal hearing. *Wayne County*, 369 F.3d at 512. A hearing may also be unnecessary if the "parties' briefs clearly set forth the relevant facts and arguments of a case such that a hearing would not add anything to the briefs, and where the court has sufficient evidence before it to make detailed factual findings." *Gonzales v. Galvin*, 151 F.3d 526, 534–35 (6th Cir. 1998). Neither of these exceptions apply in this case.

The City argues in its Motion that the Court should vacate or modify the Decree because the "record in this case does not establish that the City has violated the constitutional rights of individuals lawfully participating in protest activities." (ECF 124-1, Page Id. 5020.)

Pursuant to the first clause of Rule 60(b)(5), a district court may not terminate its jurisdiction over a consent decree until it finds both that defendants are in compliance with the decree's terms and that the decree's objectives have been achieved. *Gonzales v. Galvin*, 151 F.3d

526, 531 (6th Cir. 1998). Factors to be considered in whether a consent decree should be vacated include (1) any specific terms providing for continued supervision and jurisdiction over the consent decree; (2) the consent decree's underlying goals; (3) whether there has been compliance with prior court orders; (4) whether defendants made a good faith effort to comply; (5) the length of time the consent decree has been in effect; and (6) the continuing efficacy of the consent decree's enforcement. *Gonzales*, 151 F.3d 526, 531 (6th Cir. 1998).

The *Horne* analysis, likewise, occurs in the context of a fact-intensive determination of whether prospective application of the Consent Decree is no longer equitable. To make this determination, the City must prove, and ACLU-TN must have an opportunity to rebut, that it has achieved compliance with the federal-law provisions whose violation the decree sought to remedy; and second, that it will continue that compliance in the absence of continued judicial supervision. *See John B. v. Emkes*, 710 F.3d 394, 412, 2013 WL 979205 (6th Cir. 2013). Under the second prong of this test, the City must prove that it has implemented a "durable remedy." *See Horne,* 557 U.S. at 450.

All of these factors are fact intensive inquiries. While the discovery that has been completed will certainly be relevant to some of these factors, ACLU-TN should be afforded the opportunity to conduct additional discovery targeted towards these issues.

Further, to the extent that constitutional violations are relevant to the modification issue, the record lacks development regarding constitutional violations. This is unsurprising, as the focus of the prior litigation in this case was appropriately on whether the City was in contempt of the provisions of the Decree and not on whether its conduct violated the First Amendment. The City filed the current motion five days before the trial in this case, raising for the first time the issue of

vacating or modifying the Decree. The discovery requests and depositions conducted in the prior action were not targeted at these issues and expert testimony was not solicited.

That being the case, the record does indicate that First Amendment rights were violated. For example, the existence of the City Hall Escort List raised grave constitutional concerns. (Tr. Ex. 145). As the Court found in its Order Granting in Part and Denying in Part the ACLU-TN's Motion for Summary Judgment, the list was compiled by Sgt. Reynolds from a list he developed using "associates in fact" of Keedran Franklin and the Coalition of Concerned Citizens." (ECF 120, Page ID 4861). Including individuals on this escort list because of their protected speech activities would be unconstitutional retaliation and violation of the First Amendment. *See N.A.A.C.P. v. Claiborne Hardware, Inc.*, 458 U.S. 886, 913 (1982); *American–Arab Anti–Discrimination Committee v. Reno*, 70 F.3d 1045, 1066 (9th Cir. 1995); *Healy v. James*, 408 U.S. 169, 186 (1972); *see also United States v. Robel*, 389 U.S. 258, 264–65 (1967).

As another example, at a protest outside of the Valero Refinery several individuals were arrested, potentially in violation of their First Amendment rights. *See, e.g.*, *Fields v. City of Philadelphia*, 862 F.3d 353, 359 (3d Cir. 2017). Paul Garner was present at the protest and testified at trial that he was away from protestors who were engaged in civil disobedience by blocking the entrance to the refinery. He was filming the scene with his camera:

> I was kind of a distance away down the sidewalk on the other end where there was a few other people. I was still filming and then the police kind of in this bee swarm kind of started approaching us. I speculated that maybe an order to disperse them again, but I didn't one. I was backing away, moving, still filming, and one of the officers near the front just kind of changed pace really quickly and snatched me up. And I audibly -- you know, I told him, I'm leaving. I'm walking away. He said no, you're going to jail.

(ECF 139, Page ID 5908, Ln 20 – 5909, Ln 4.) Mr. Garner was then arrested. *Id.* at 5909.

These examples, and others in the record, require further factual development to determine whether they constitute constitutional violations. Additionally, ACLU-TN should be allowed the opportunity to explore the recent conduct of the MPD regarding its treatment of protestors. Discovery in the contempt phase of this case covered a period of time ending in March of 2017. Discovery closed in the contempt phase on April 30, 2018. To fairly determine whether there has been a material change in facts that warrant a modification of the Decree, ACLU-TN should be allowed discovery on events that have occurred over the past several months. The City should not be allowed to prosecute their motion based on information from over a year ago during a time in the litigation when they had not put forward the issue now before the Court.

The City also claims that the Decree should be modified because it runs counter to "best practices" across the country. In support they cite to their expert's report and an Independent Review Report on 2017 Protest Events in Charlottesville, Virginia. The expert report was filed on February 28, 2018, well before the issue of modification or the argument of "best practices" came before the court. (ECF 67-1). The report addressed the expert's opinion on how to interpret the decree, which became irrelevant before trial. During trial, the Court ruled that testimony from the City's expert "would not be relevant to remaining issues." (ECF 140, Page ID 6082, Ln. 21-22.) Likewise, the Court ruled that the Charlottesville report was irrelevant to the contempt proceedings. (ECF 138, Page ID 5703.)

Because these reports were not relevant to the contempt phase of the litigation, ACLU-TN should now be given the opportunity to fully explore the City's contentions that the provisions of the Decree run contrary to "best practices." It is entitled to consult and retain its own experts on the issues, which, in turn, will provide the Court with the best information and expert opinion upon

which to decide whether modification is appropriate under the facts and, if so, what modifications would be necessary.

## IV.    THE CITY'S MOTION FOR RELIEF FROM JUDGMENT OR ORDER SHOULD NOT BE HEARD UNTIL ALL INTERESTED AND INDEFENSIBLE PARTIES HAVE BEEN JOINED.

The Decree was entered into among individual parties to the original action in addition to the ACLU-TN and the City. Chan Kendrick and Mike Honey were both original plaintiffs to the Kendrick case and named in the Decree.  Although their involvement in the contempt action was not necessary to reaching a determination in that phase of the litigation, the City's Motion raises the new issue of whether the Decree should be vacated or modified. As original parties, Mr. Kendrick and Mr. Honey should be considered necessary parties and given the opportunity to weigh in on the relief requested of the Court.

Fed. R. Civ. P. 19(a) requires that all parties necessary to litigation be joined where "in that person's absence, the court cannot accord complete relief among existing parties." Required parties are "[p]ersons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it." *Shields v. Barrow*, 58 U.S. 130, 139 (1854); *see Sch. Dist. of City of Pontiac v. Sec'y of U.S. Dep't of Educ.*, 584 F.3d 253, 301 (6th Cir. 2009).

Consent decrees are viewed as comparable to contracts in many aspects. "Consent judgments are, in effect, merely contracts acknowledged in open court and ordered to be recorded, but as such they bind the parties as fully as do other judgments. *Long v. City of Saginaw*, 911 F.2d 1192, 1201 n.5 (6th Cir. 1990). In contract law, an action to set aside, interpret or modify a contract requires all parties who may be affected to be joined. *See Sch. Dist. of City of Pontiac*, 584 F.3d at

303 ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation."); *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.")

Before this Court considers whether to vacate or modify the Decree, the City should be required to serve the other parties to the Decree with its Motion for Relief and provide them with an opportunity to appear before the court and make their arguments concerning the relief requested.

## V.    CONCLUSION

In filing a motion seeking relief from the Consent Decree, the City has essentially initiated a new action in which the City is now the plaintiff and the remaining original parties are now the defendants. In this new action, the City bears the burden to prove each of the elements of its claim that the Consent Decree should be vacated or modified.

Accordingly, ACLU-TN asks that the Court set a scheduling conference where the parties can submit a proposed scheduling order providing for discovery on the newly raised issues. ACLU-TN further asks that at the scheduling conference, an evidentiary hearing date be set so that the parties may create a record upon which the Court may make its decision on the City's Motion for Relief.

Respectfully submitted,

 /s/ Mandy Strickland Floyd
Mandy Strickland Floyd (BPR# 31123)
Thomas H. Castelli (BPR#24849)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, Tennessee 37212
Phone: (615) 320-7142
Fax: (615) 691-7219
mfloyd@aclu-tn.org
tcastelli@aclu-tn.org

*Attorneys for ACLU-TN*

## CERTIFICATE OF SERVICE

I certify that on October 9, 2018 the foregoing document was electronically filed with the

Clerk of the Court using CM/ECF and served via electronic mail to:

Buckner Wellford, Esq.
Mark Glover, Esq.
Jennie Vee Silk, Esq.
Lawrence J. Laurenzi
BAKER, DONELSON, BEARMAN,
 CALDWELL, & BERKOWITZ, P.C.
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103

*Attorneys for the City*

*/s/ Mandy Strickland Floyd*
Mandy Strickland Floyd