# BUTLER | SNOW

## INTERNAL M E M O R A N D U M

**To:** The Monitoring Team

**From:** Edward L. Stanton III

**Date:** March 5, 2019

**Subject:** Summary of February 11-12, 2019, Monitoring Team Meeting

## **OVERVIEW**

The Court's October 26, 2018, Opinion and Order (ECF No. 151) and its October 29, 2018, Order Memorializing Sanctions (ECF No. 152) required the City of Memphis to revise certain Memphis Police Department (MPD) policies and procedures to comply with the consent decree in Case No. 76-449 (*Kendrick* Consent Decree). As part of this requirement, the Court also ordered that the City of Memphis submit the revised items for the Court's review and invited the ACLU to respond to the same.

On February 11-12, 2019, we gathered in Memphis, Tennessee, and met with MPD representatives, discussed their observations, and proposed changes to the revised MPD policies and procedures.[1] The Monitoring Team reviewed a number of items before making proposals.[2] In addition, we reviewed the ACLU's Response in Opposition to Policies Proposed by Defendant City of Memphis, submitted to the Court on February 4, 2019. (ECF No. 186.)

Please provide your feedback as indicated in the charts below. The feedback will then be reconciled and provided to the Court.

---

[1]   During the two-day meeting, the Monitoring Team met with the following MPD Command Staff personnel: Police Director Michael Rallings, Deputy Police Director James M. Ryall, Deputy Chief Frank Garrett (Uniform Patrol District One), Deputy Chief Terry Landrum (Uniform Patrol District Two), Deputy Chief Michael Shearin (Investigative Services), Deputy Chief Michael Hardy (Special Operations), Deputy Chief Don Crowe (Information Systems), and Deputy Chief Sharonda Hampton (Administrative Services). The Monitoring Team also met with the following Memphis Police Department officials: Major Stephen Chandler (Information Systems); Major Sharon Cunningham (Training Academy); Lieutenant Tracey Washington (Training Academy); and Manager John Williams (Real Time Crime Center). MPD legal counsel were present at each of these meetings.

[2]   Among the items considered were the following: Memphis Police Department Departmental Regulation 138; Memphis Police Department Political Intelligence Training for the Office of Homeland Security, the Real Time Crime Center, and the Command Staff; Memphis Police Department Authorization for Investigations which May Incidentally Result in the Collection of Information Related to the Exercise of First Amendment Rights Under Section G of *Kendrick* Consent Decree; Memphis Police Department Written Guidelines for the Use of Manual Social Media Searches and of Social Media Collators; and Memphis Police Department List of Social Media Search Terms.

March 4, 2019
Page 2

# RESPONSES TO THE MEMPHIS POLICE DEPARTMENT POLICIES AND TRAINING MATERIALS

## 1. Departmental Regulation 138 Political Intelligence (Revised)

| City of Memphis Submission | ACLU Response to City of Memphis Submission | Monitoring Team's Response to ACLU's Comments | Monitoring Team's Additional Comments |
|---|---|---|---|
| Departmental Regulation 138 prohibits the Memphis Police Department from engaging in "political intelligence." <br><br> The regulation defines "political intelligence" as "gathering, indexing, filing, maintenance, storage, or dissemination of information, or any other investigative activity, relating to any person's beliefs, opinions, associations, or other exercise of First Amendment rights." The definition also includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive. <br><br> The regulation states that political intelligence is not a permissible goal of an investigation or means to an end of an otherwise lawful investigation, but it permits the incidental receipt of information relating to First Amendment rights during investigations into unlawful conduct. In the | The ACLU raised two proposals. First, the ACLU recommends that Departmental Regulation 138 be further revised to include a definition of "First Amendment rights." The ACLU argues that the definition of "'political intelligence' must be founded on an understanding of what rights are included among First Amendment rights. Accordingly, the ACLU proposes that Departmental Regulation 138 include the *Kendrick* Consent Decree's definition of First Amendment rights: "rights protected by the First Amendment to the Constitution of the United States including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publically for any lawful purpose." <br><br> Second, the ACLU recommends that Departmental Regulation 138 link to the text of 28 CFR Part 23, in the same manner that the | Agree | The Monitoring Team agrees with the ACLU but proposes one addition to the first ACLU recommendation. The Monitoring Team recommends that the definition of First Amendment rights expressly include the right to petition the government. <br><br> The Monitoring Team also recommends that Paragraph 3, which states that "any member conducting or supervising such an investigation must bring the matter to the attention of the director of Police Services, or his/her designee, for review and written authorization," have a time limit for notification added – for instance, "…prior to initiating such an investigation, or, where the possibility of such incidental receipt is discovered after an investigation has commenced, no later than [X] days after such discovery." |

| | | | |
|---|---|---|---|
| case of the latter, the Director of Police Services or his Designee must provide written approval. | Departmental Regulation 138 links to the *Kendrick* Consent Decree and the *Opinion and Order*. The ACLU argues that linking this text will allow officers to conveniently "deepen their understanding and receive additional guidance on the operation of criminal intelligence… while safeguarding privacy and civil liberties." | | |

2. **Memphis Police Department Political Intelligence Training for the Office of Homeland Security, the Real Time Crime Center, and the Command Staff:**

The City of Memphis submitted a Training Plan document and a PowerPoint presentation.

   a. *Training Plan*

| City of Memphis Submission | ACLU Response to the City of Memphis Submission | Monitoring Team's Response to ACLU | Monitoring Team's Additional Comments |
|---|---|---|---|
| The Training Plan defines "political intelligence" as "gathering, indexing, filing, maintenance, storage, or dissemination of information, or any other investigative activity, relating to any person's beliefs, opinions, associations, or other exercise of First Amendment rights." The definition also includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive. 

The Training Plan states that | The ACLU objects to training that occurs only once in an officer's career, and it proposes that the training be continuing. The ACLU argues that a short, one-time training presentation would fail to correct the system-wide issues. Instead, the ACLU recommends that the officers receive annual refresher trainings comparable to other critical policies and procedures. | Agree | The Monitoring Team recommends that the training incorporate the use of hypothetical examples and be provided to all officers and civilian employees working within or otherwise assigned or detailed to the Memphis Police Department. Recommended training options include the following: providing a one- to two-hour block taught by an instructor who prepares a lesson plan and course evaluations; building the training into existing training models; and using short officer training videos, known as video alerts. |

March 4, 2019
Page 4

| | | | |
|---|---|---|---|
| political intelligence is not a permissible goal of an investigation or means to an end of an otherwise lawful investigation, but it permits the incidental receipt of information relating to First Amendment rights during investigations into unlawful conduct. In the case of the latter, the Director of Police Services or his Designee must provide written approval.<br><br>The Memphis Police Department states that the training will be offered annually or on an as needed basis. Further, the Memphis Police Department states that training will be included as part of the mandatory new hire or transfer orientation. | | | |

    b. *PowerPoint Presentation*

| City of Memphis Submission | ACLU Response to the City of Memphis Submission | Monitoring Team's Response to ACLU | Monitoring Team's Additional Comments |
|---|---|---|---|
| The Memphis Police Department includes in its *Kendrick* Consent Decree PowerPoint the definition of "political intelligence" and an historical explanation of the *Kendrick* Consent Decree.<br><br>The PowerPoint defines "political intelligence" as "gathering, indexing, filing, maintenance, storage, or dissemination | The ACLU objects to the PowerPoint, because the PowerPoint does not provide a sufficient means of understanding the Consent Decree's contents. Accordingly, the ACLU recommends that a definition of "First Amendment rights" be added to the materials.<br><br>The ACLU also recommends that the training materials be augmented with the | Agree | The Monitoring Team agrees with the ACLU and suggests also adding language to the slide "Harassment and Intimidation Prohibited," stating that a valid law enforcement purpose is required. |

March 4, 2019
Page 5

| | | | |
|---|---|---|---|
| of information, or any other investigative activity, relating to any person's beliefs, opinions, associations or other exercise of First Amendment Rights."<br><br>Additionally, the PowerPoint provides the proper procedure for the following: conducting investigations that might incidentally result in political intelligence, disseminating political intelligence gathered in an authorized investigation, and finding answers for further questions.<br><br>The PowerPoint also prohibits harassment and intimidation of persons exercising First Amendment rights. | following: specific examples of what violates the Consent Decree; examples of what constitutes the operation of an office for political intelligence (and what does not); examples regarding the use of the Bob Smith account; examples regarding the dissemination of information related to First Amendment rights; and examples involving recording protest attendees' identity for the purpose of maintaining a record.<br><br>Additionally, the ACLU recommends adding a discussion explaining what does not constitute political intelligence. | | |

3. **Authorization for Investigations that may Incidentally Result in the Collection of information Related to the Exercise of First Amendment Rights under Section G of the *Kendrick* Consent Decree.**

   The City of Memphis submitted the following items: a draft Policy and Procedure entitled, "Guidelines for Delegation of Authority of Director of Police services to Authorize Investigations Which May Interfere with the Exercise of First Amendment Rights under Section G of the *Kendrick* Consent Decree;" a draft Policy and Procedure entitled, "Authorization for Investigations Which May Incidentally Result in the Collection of Information Related to the Exercise of First Amendment Rights Under Section G of *Kendrick* Consent Decree;" and a form entitled, "Authorization for Investigations That May Incidentally Result in Political Intelligence."

   a. *Policy and Procedure Guidelines for Delegation of Authority of Director of Police services to Authorize Investigations Which May Interfere with the Exercise of First Amendment Rights under Section G of the Kendrick Consent Decree*

March 4, 2019
Page 6

| City of Memphis Submission | ACLU Response to the City of Memphis Submission | Monitoring Team's Response to ACLU | Monitoring Team's Additional Comments |
|---|---|---|---|
| The Memphis Police Department draft Policy states that the City of Memphis and the Memphis Police Department shall not engage in political intelligence and "Political intelligence includes any investigation into the lawful exercise of the First Amendment rights, even if the investigating officer does not have a partisan political motive."<br><br>The Policy permits investigations into unlawful conduct that may incidentally result in the receipt of information relating to First Amendment rights, but requires approval from Director of Police Services or Designee. The Designee selection process allows up to three Designees. All Designees must be Command Staff level. The Policy also requires that Director identify each Designee in an interdepartmental communication distributed to Command Staff, all specialized unit supervisors, and the Commander of each precinct. Notably, the Policy prohibits a Designee from being in the direct chain of command of the unit o officer requesting authorization. | The ACLU does not object to the use of a Designee delegation procedure but states that the Guidelines for Delegation proposed are overbroad. The ACLU recommends that the Guidelines be amended to include a procedure for Designees to report to the Director of Police Services. Further, the ACLU recommends that the Guidelines provide that the Director of Police Services remain knowledgeable about and responsible for authorizations under Section G. | Largely agree | The Monitoring Team agrees with the ACLU and further recommends that review and recommendation of the delegation be made by competent in-house counsel or other authorized/assigned counsel.<br><br>The Monitoring Team is also concerned that the volume of these investigations may make it difficult for the Director of Police Services to oversee all investigations. One suggestion is for the Designee to draft a report and recommendation for the Director of Police Services. In that case, the Director of Police Services may delegate the recommendation process, he but remains ultimately responsible for the conduct of the investigation. |

March 4, 2019
Page 7

    b. *Policy and Procedure: Authorization for Investigations Which May Incidentally Result in the Collection of Information Related to the Exercise of First Amendment Rights Under Section G of Kendrick Consent Decree*

| City of Memphis Submission | ACLU Response to the City of Memphis Submission | Monitoring Team's Response to ACLU | Monitoring Team's Additional Comments |
| --- | --- | --- | --- |
| Key parts of this policy provide the following: officers may not engage in political intelligence; "Political intelligence includes any investigation into the lawful exercise of the First Amendment rights, even if the investigating officer does not have a partisan political motive;" investigations into unlawful conduct that may incidentally result in the receipt of information relating to First Amendment rights are permitted, but also require approval from Director of Police Services or Designee; when an officer learns that an investigation into unlawful conduct may incidentally result in the collection of information about the exercise of First Amendment rights, the investigation must be brought to the attention of the Director or his Designee; and written authorization is required if there is an investigation into unlawful conduct that may incidentally result in the collection of information about the exercise of First | The ACLU objects and recommends that the Authorization Policy discuss when a lawful criminal investigation is likely to result in the collection of information about (or to interfere with) the exercise of First Amendment rights, as well as a discussion of what constitutes First Amendment rights. The ACLU further recommends that a discussion about when Section G applies be included. The ACLU objects to excluding certain activities from the authorization process. | Agree | The Monitoring Team recommends that the policy include a definition of "situational assessment."<br><br>The Monitoring Team also recommends further discussion of whether situational assessment reports should be excluded from the authorization process. |

March 4, 2019
Page 8

| | | | |
|---|---|---|---|
| Amendment rights. | | | |

    c. *Form: Authorization for Investigations That May Incidentally Result in Political Intelligence*

| City of Memphis Submission | ACLU Response to the City of Memphis Submission | Monitoring Team's Response to ACLU | Monitoring Team's Additional Comments |
|---|---|---|---|
| The form states that any officer conducting an investigation into unlawful conduct that may incidentally result in the gathering of political intelligence or information related to the exercise of First Amendment rights requires approval by Director of Police Services or his Designee, and it sets a 90 day time limit for such investigations. It also provides for up to a 90 day extension.<br><br>The form also includes a section that states, "Based on the foregoing, and all information known to me, I have determined that this investigation meets the requirements of Section G of the Kendrick Consent Decree, and I hereby approve the investigation. This authorization will expire 90 says (sic) from the date of my signature." | The ACLU objects to the form, because it does not provide a place for the written findings as required by Section G. Instead, the form merely includes a statement that the "investigation meets the requirements of Section G." Therefore, the ACLU recommends that a space be provided for findings. | Agree | Without specific findings supporting the authorization, no record will exist to ensure consistency and compliance. |

**4. Written Guidelines for the use of Manual Social Media Searches and of Social Media Collators**

| City of Memphis Submission | ACLU Response to the City of Memphis Submission | Monitoring Team's Response to ACLU | Monitoring Team's Additional Comments |
|---|---|---|---|
| | | | |

March 4, 2019
Page 9

| | | | |
|---|---|---|---|
| The Guidelines state that the purpose is to establish rules for use of social media via manual social media searches and through use of social media collators for the Office of Homeland Security and the Real Time Crime Center officers and any officers with access to social media collators.<br><br>They also define criminal intelligence information; criminal nexus, criminal procedure; undercover account; political intelligence; public domain; reasonable suspicion; social media; social media collator; social media sites; and valid law enforcement purpose.<br><br>Among other | The ACLU raises several concerns and makes recommendations. First, the ACLU states its concern that the Guidelines govern only officers who use social media collators and those officers assigned to the Office of Homeland Security and the Real Time Crime Center. The ACLU argues that previous violations of the Consent Decree involved officers in other units. Therefore, the ACLU recommends that all officers who use social media comply with these Guidelines.<br><br>Second, the ACLU recommends that the Guidelines specify when officers may use social media for personal purposes and when they may use their personal social media accounts for law enforcement purposes. Accordingly, ACLU suggests that the Guidelines provide that the social media policy is inapplicable only when an officer uses social media while not on duty and for personal reasons.<br><br>Third, the ACLU recommends that the | Agree with first and third, and fourth recommendation. Disagree with second recommendation. Offer several additional recommendations. | The Monitoring Team made several observations and recommendations. First, the Monitoring Team agrees that the Guidelines should apply to all officers, for the reasons provided by the ACLU.<br><br>Second, the Monitoring Team does not agree with the ACLU about when the Guidelines are applicable. The Team is concerned that an officer could attempt to justify social media surveillance disguised as personal curiosity. Therefore, the Monitoring Team recommends that the following language be added to the Guidelines:<br><br>(1) "Use of social media while on duty should be conducted for police business purposes only, and only in compliance with this Policy;" and<br><br>(2) "The officer's personal use of the social media platform and any searches conducted for personal reasons are nevertheless subject to this reporting requirement, when:<br><br>•The information searched, gathered, |

March 4, 2019
Page 10

| | | | |
|---|---|---|---|
| items, the Guidelines prohibit the Memphis Police Department from using social media for conducting political intelligence and limit scope of viewable accounts following a homicide or critical events. | Guidelines relating to the dissemination of information from social media be revised for clarity. Specifically, the ACLU requests that a clear statement be included that information obtained from social media may not be disseminated beyond those recipients authorized by the Guidelines.<br><br>Fourth and finally, the ACLU recommends that the "Command Staff" be defined in the Guidelines to avoid confusion. | | collected, stored or disseminated involves, includes, intersects or overlaps with, or otherwise relates to or has direct or derivative use in any investigation, inquiry or matter involving official law enforcement or department interest; and<br><br>•The officer has knowledge of such investigation, inquiry, or matter, or should reasonably have such knowledge."<br><br>Third, the Monitoring Team agrees with the ACLU that the Guidelines regarding the dissemination of social media information should be revised for clarity.<br><br>Fourth, the Monitoring Team agrees that "Command Staff" should be defined.<br><br>Fifth, the Monitoring Team recommends that the "Document and Retention" section be revised for clarity. In particular, the sentence beginning "The search histories of each social media platform searched |

March 4, 2019
Page 11

|  |  |  | by an MPD officer shall be retained…" should be clarified; possible alternatives include "The search histories of an MPD officer on any social media platform shall be retained…", or "All social media searches by any MPD officer shall be retained…". |
|---|---|---|---|
|  |  |  | In addition, the Monitoring Team anticipates that the 90-day reporting period is going to become confusing when applied. Right now, the 90-day clock appears to start when any given search happens; it is not clear whether that is what is intended, or if there is supposed to be a regularized reporting period to match the city's quarterly reporting requirements. One proposal is for searches to be reported at or shortly after the time they happen, rather than waiting for three months to report them. |
|  |  |  | Sixth, the Monitoring Team recommends there be a definition of "special events." |
|  |  |  | Seventh, the Monitoring Team proposes adding a |

March 4, 2019
Page 12

| | | | |
|---|---|---|---|
| | | | disciplinary consequence for knowing failure to adhere.<br><br>Eighth, the Monitoring Team recommends incorporating a procedure for audits of social media searches.<br><br>Ninth, the Monitoring Team recommends that the policy state that an undercover social media account may not impersonate an actual person known to the subject of the investigation.<br><br>Tenth and finally, the Monitoring Team recommends that language be added addressing the monitoring of juveniles on social media— in particular, if there are restrictions on monitoring or targeting juveniles as part of other law enforcement practices, policies, or procedures, those should be considered for incorporation into the online sphere. The Monitoring Team plans to request copies of any existing practices, policies, or procedures regarding the monitoring or targeting of juveniles, and expects to propose |

March 4, 2019
Page 13

|  |  |  | additional policy language after reviewing those materials. |
|---|---|---|---|

## 5. List of Social Media Search Terms

| City of Memphis Submission | ACLU Response to the City of Memphis Submission | Monitoring Team's Response to ACLU | Monitoring Team's Additional Comments |
|---|---|---|---|
| The Memphis Police Department states that its search terms include mainly names of individuals. | The ACLU does not object to this submission. | Disagree | The filing certifies that none of the names searched for were "associated with a protest or other scenario in which First Amendment rights were being exercised." Each search must also have a valid law enforcement purpose, however. The current certification is important but not sufficient; the Monitoring Team recommends that for future search term productions, the police department also certify that each search had a valid law enforcement purpose. The Monitoring Team also recommends that the police department certify that each search term produced in this submission had a valid law enforcement purpose; if that certification is not possible, the Monitoring Team recommends that the department provide an explanation.<br><br>The Monitoring Team also recommends that the department provide an explanation for the use of the word "protest" as a search term in conjunction with the words "St. Jude" and "marathon." |

46898850.v1