# ButLER|SNOW

## M E M O R A N D U M

**To:**  The Monitoring Team

**From:**  Edward L. Stanton III

**Date:**  March 31, 2019

**Subject:**  The Monitoring Team's Comments on the City's Revised Submissions to the Court

---

### OVERVIEW

As you recall, the Court ordered the City to make several submissions by January 14, 2019, as a start to achieving compliance with the *Kendrick* Consent Decree. The City made the required submissions (*see* ECF Nos. 183, 185), and the ACLU then objected to those submissions on February 4, 2019 (*see* ECF No. 186). This team reviewed the City's submissions and the ACLU's objections and prepared a set of recommendations in late February and early March.

The City subsequently revised its submissions in response to the ACLU's objections and sent them to the ACLU. (*See* **Exhibit A**.) The ACLU then responded to the revisions. (*See* **Exhibit B**.) Upon request, the City provided both the revised submissions and the ACLU's responses to the team. Please provide your feedback regarding the same as you did with the original submissions and objections. The feedback will then be reconciled and provided to the Court.

## RESPONSES TO THE MEMPHIS POLICE DEPARTMENT POLICIES AND TRAINING MATERIALS

### 1. Departmental Regulation 138 Political Intelligence (Revised)

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's Response? | Monitoring Team's Recommendations to the Court. |
|---|---|---|---|---|
| *First*, the | *First*, the City | The ACLU | Agree | *First*, the Monitoring |

**EXHIBIT 2**

March 31, 2019
Page 2

| | | | | |
|---|---|---|---|---|
| Monitoring Team recommended that the definition of First Amendment rights expressly include the right to petition the government.<br><br>***Second***, the Monitoring Team recommended that the policy require a time limit for notification when an officer learns that investigation may incidentally result in the receipt of First Amendment information – for instance, "…prior to initiating such an investigation, or, where the possibility of such incidental receipt is discovered after an investigation has commenced, no later than [X] days after such discovery." Currently the policy states the following: "Any member conducting or supervising such an investigation must bring the matter to the attention of the director of Police Services, or his/her designee, for review and written authorization." | added a definition of First Amendment rights: "First Amendment rights are rights protected by the First Amendment to the constitution of the United States, including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publicly for any lawful purpose."<br><br>***Second***, the City provided a hyperlink to 28 CFR 23. | stated that the First Amendment definition and the hyperlink satisfied their objections. | | Team agrees that the proposed First Amendment rights definition is sufficient.<br><br>***Second***, the Team reasserts and incorporates here its recommendation that there be a time limit to notify the Director/ Designee after an officer learns that investigation may incidentally result in the receipt of First Amendment information.<br><br>***Third***, the Team recommends adding language to the fourth paragraph to state as follows: "No member **shall knowingly, intentionally or recklessly facilitate or cause the interception, recording, transcription of— or otherwise interfere with or cause, any interference with any communications** by means of electronic or covert surveillance for the purpose of gathering political intelligence."<br><br>***Fourth***, the Team recommends revising the second sentence in the fourth paragraph as |

March 31, 2019
Page 3

| | | | | follows: "No member shall engage in any action or disseminate damaging, derogatory, false or anonymous information about any person which will deprive any individual of their First Amendment Rights; nor will any member encourage, cooperate with, or contract with any local, state, federal or private agency to plan or conduct any investigation **for the purpose, expectation or anticipation of political intelligence**." |
|---|---|---|---|---|
| | | | | *Fifth*,  The Team recommends revising the fifth paragraph as follows: "Investigations into unlawful conduct **that reasonably may be expected to result** incidentally result in the receipt of information relating to First Amendment rights are permissible, but require approval by the Director of Police Services or his/her designee. Any member conducting or supervising such an investigation must bring the matter to the attention of the Director of Police Services, or his/her designee, for |

March 31, 2019
Page 4

| | | | | review and written authorization." |
|---|---|---|---|---|
| | | | | ***Sixth***, the Team recommends revising the last sentence in the fifth paragraph as follows: "An extension may be granted in writing by the Director or his/her designee for periods of up to an additional ninety (90) days; **and in extraordinary circumstances where warranted, additional 90-day periods as documented and approved by the Director or his Designee**." |

### 2. Memphis Police Department Political Intelligence Training for the Office of Homeland Security, the Real Time Crime Center, and the Command Staff:

The City of Memphis submitted a Training Plan document and a PowerPoint presentation.

*a.  Training Plan*

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's response. | Monitoring Team's Recommendations to the Court. |
|---|---|---|---|---|
| The Monitoring | ***First***, the City | The revisions | Agree | The Monitoring Team |

March 31, 2019
Page 5

| | | | | |
|---|---|---|---|---|
| Team recommended that the training incorporate the use of hypothetical examples and be provided to all officers and civilian employees working within, or otherwise assigned or detailed to, the Memphis Police Department. Recommended training options included the following: providing a one- to two-hour block taught by an instructor who prepares a lesson plan and course evaluations; building the training into existing training models; and using short officer training videos, known as video alerts. | removed language stating, "[t]raining will be offered annually, or on an 'as needed' basis for future members of OHS, RTCC, and/or MPD's Command Staff." *Second*, the City added the following: "Annual [i]n-[s]ervice training for members of OHS, RTCC, and MPD's Command Staff will be required, and additional training will be offered on an 'as needed' basis." | addressed the ACLU's concerns. | | agrees with the revisions but recommends adding a requirement that the training be updated annually to track changes in relevant laws and MPD policies. |

b.   *PowerPoint Presentation*

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's response? | Monitoring Team's Recommendations to the Court. |
|---|---|---|---|---|
| The Monitoring Team suggested adding language to | *First*, the City added the following language to its presentation: "First | The ACLU recommended revisions to slide 14 that states, "Real Time Crime Center's | Agree | *First*, the Monitoring Team agrees with the revisions but recommends that the City update slide 4, showing DR 138, with |

March 31, 2019
Page 6

| | | | | |
|---|---|---|---|---|
| the slide "Harassment and Intimidation Prohibited," stating that a valid law enforcement purpose is required. | Amendment rights are rights protected by the First Amendment to the constitution of the United States, including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publicly for any lawful purpose."<br><br>***Second***, the City added a slide with examples of impermissible political intelligence and prohibited conduct. The examples primarily addressed gathering and/or indexing information about groups such as Black Lives Matter and other community organizers.<br><br>***Third***, the City added a slide with examples of conduct that does | monitoring of stationery and mobile cameras is not political intelligence."<br>The ACLU believes that this may not necessarily be true, because some of the stationary cameras and the mobile units could be positioned in such a way that they are intended to capture political intelligence. Accordingly, the ACLU recommended that this example be clarified. | | revised DR 138 that includes the new definition of First Amendment rights.<br><br>***Second***, regarding slide 7, the third bullet states that MPD actions shouldn't be for purpose of, **or have the effect of**, deterring exercise of First Amendment rights. The example below that, however, only refers to recording names or license plates **for the purpose of** chilling the exercise of First Amendment rights (or maintaining a record). Therefore, the Monitoring Team recommends that the example incorporate the "reasonable effect" language: "MPD shall not record… for the purpose of chilling the exercise of First Amendment rights or for the purpose of maintaining a record of that gathering, **or where such recording will reasonably have the effect of deterring any person from exercising First Amendment rights**."<br><br>***Third***, regarding slide 12, bullet 1: in light of the fact that MPD no |

March 31, 2019
Page 7

| | | | | |
|---|---|---|---|---|
| | not constitute political intelligence. | | | longer uses social media collators, the Team recommends adding language about non-collator searches to ensure that it is comprehensive. Thus, the example would provide as follows: "An MPD officer searches a social media collator **or platform** for all instances…." |
| | | | | *Fourth*, regarding slide 14, the Team recommends revising the language to provide: "An MPD officer wearing a body camera that has been activated pursuant to MPD policy does not have to cover the camera every time he or she passes..." |
| | | | | *Fifth*, regarding the last bullet on slide 14, the Team believes that the search "kill the police" could incidentally collect information related to First Amendment protected rights and would therefore require approval first. Accordingly, the Team recommends either removing or clarifying this example. |
| | | | | *Sixth*, more generally, |

March 31, 2019
Page 8

| | | | | the Team recommends that the City's examples of community organizers not single out one or two named groups. |
|---|---|---|---|---|
| | | | | |

3. **Authorization for Investigations that may Incidentally Result in the Collection of information Related to the Exercise of First Amendment Rights under Section G of the *Kendrick* Consent Decree.**

The City of Memphis submitted the following items: (1) a draft Policy and Procedure entitled, "Guidelines for Delegation of Authority of Director of Police services to Authorize Investigations Which May Interfere with the Exercise of First Amendment Rights under Section G of the *Kendrick* Consent Decree"; a draft Policy and Procedure entitled, "Authorization for Investigations Which May Incidentally Result in the Collection of Information Related to the Exercise of First Amendment Rights Under Section G of *Kendrick* Consent Decree"; and a form entitled, "Authorization for Investigations That May Incidentally Result in Political Intelligence."

　　　　a. *Policy and Procedure Guidelines for Delegation of Authority of Director of Police services to Authorize Investigations Which May Interfere with the Exercise of First Amendment Rights under Section G of the Kendrick Consent Decree*

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's response? | Monitoring Team's Recommendations to the Court. |
|---|---|---|---|---|
| *First*, the Monitoring Team recommended that review and recommendation of the delegation be made by competent in-house counsel or | The City added language to the policy stating, "Each designee shall report directly to the | The revisions addressed the ACLU's concerns. The ACLU appreciated the specific | Agree | *First*, the Monitoring Team recommends revising the last sentence of the policy to state as follows: "The Director shall have the authority to |

| | | | | |
|---|---|---|---|---|
| other authorized/assigned counsel.<br><br>*Second*, the Monitoring Team was concerned that the volume of these investigations would make it difficult for the Director of Police Services to oversee all investigations. The Team suggested that the Designee draft a report and recommendation for the Director of Police Services. In that case, the Director of Police Services could delegate the recommendation process but remain ultimately responsible for the conduct of the investigation. | Director on the last Friday of every month. The Designee's report to the Director shall include a description of every investigation authorized by the Designee that may incidentally result in the receipt of information relating to First Amendment rights. The Designee's report shall include the date of the request for authorization, the name of the requesting officer, a description of the investigation, and the expected duration of the investigation. The Director shall have the authority to rescind authorization for any investigation that the | timeframe for reporting and the ability of the Director to rescind the authorization. | | rescind authorization for any investigation that the Director deems **to violate the letter or intent of the department prohibition against the gathering of political intelligence, or in cases in which either the initial, authorized investigative goals or purposes no longer exist; or when political intelligence collection is no longer merely incidental**."<br><br>*Second*, the Team recommends that the policy also be revised as follows: "Each designee shall report directly to the Director on the last Friday of every month **that is a regular business day**." |

March 31, 2019
Page 10

| | Director deems to constitute political intelligence." | | | |
|---|---|---|---|---|

       *b. Policy and Procedure: Authorization for Investigations Which May Incidentally Result in the Collection of Information Related to the Exercise of First Amendment Rights Under Section G of Kendrick Consent Decree*

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's response? | Monitoring Team's Recommendations to the Court. |
|---|---|---|---|---|
| *First*, the Monitoring Team recommended that the policy include a definition of "situational assessment." | *First*, the City added a definition of First Amendment rights: | *First*, the ACLU had some concerns about the absolute nature of the exclusions; however, it commented that the revised exclusions are clearer and give good examples where authorization would not be needed. | Agree | *First*, the Monitoring Team would like to know what policy governs the dissemination of First Amendment information to law enforcement, referenced in the "Dissemination" section on page 3. |
| *Second*, the Monitoring Team recommended further discussion of whether situational assessment reports should be excluded from the authorization process. | "First Amendment rights are rights protected by the First Amendment to the constitution of the United States, including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publicly for any lawful purpose." | *Second*, the ACLU suggested that there may be times when an investigation starts out in one of the excluded categories and evolves into | | *Second*, the Team recommends that the City add the warning suggested by ACLU.  *Third*, the Team recommends revising two typos: on page 1: "unlawful conduct which may incidentally result **in the in the** receipt of information…." On page 3 "…in order to disrupt the Council |
| | *Second*, the City removed its initial list of activities that do not require a written authorization from | | | |

March 31, 2019
Page 11

| | | | |
|---|---|---|---|
| | Director/Designee.<br><br>***Third***, the City added a footnote defining "assessment reports" and added a footnote stating where to find a definition for "crime analysis."<br><br>***Fourth***, the City added examples of investigations of certain unlawful conduct that might incidentally result in the collection of information about First Amendment rights. Examples included a planned flash mob at a shopping center and a threat by a person to bring a gun into a City Council meeting.<br><br>***Fifth***, the City added a list of activities that do not require prior written authorization from the Director/ Designee.  The list included the following: (1) initial, on scene active investigation into the planning or occurrence of a criminal act; (2) criminal intelligence | something that does implicate First Amendment rights. Accordingly, the ACLU recommended that the City add a warning or caveat that officers involved in any investigation should remain vigilant for any changes that would trigger the need for authorization. | | **meeintg**."<br><br>***Fourth***, the Team recommends adding the following note at the end of the "Exclusions" section: "There may be times when an investigation starts out in one of the excluded categories and evolves into something that does implicate First Amendment rights. Accordingly that officers involved in any investigation should remain vigilant for any changes that would trigger the need for authorization." |

March 31, 2019
Page 12

| | development; (3) investigation or monitoring organized gangs reasonably suspected of criminal activity involvement; (4) the ongoing, gathering, investigating, and monitoring of suspected and potential sex crimes; and (5) crime analysis and reporting. | | | |
|---|---|---|---|---|

   c.   *Form: Authorization for Investigations That May Incidentally Result in Political Intelligence*

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's response? | Monitoring Team's Recommendations to the Court. |
|---|---|---|---|---|
| The Monitoring Team recommended that there be a place for specific findings on the form.  The Monitoring Team stated that without specific findings supporting the authorization, no record will exist to ensure consistency and compliance. | *First*, the City added a space to document a report number.<br><br>*Second*, the City added the following language to its investigation approval section: "1.This investigation does not violate the provisions of the Kendrick Consent | The ACLU recommended that the City to add a separate section for the Director or Designee to list the precautions and techniques to be employed during the investigation. The ACLU is particularly concerned that these precautions and techniques actually meet the Consent Decree's | Largely disagree | The Monitoring Team is concerned that the ACLU's response to the City's revisions intrudes into law enforcement sources and methods, some of which could be secret or law enforcement sensitive. |

March 31, 2019
Page 13

| | | | |
|---|---|---|---|
| | Decree; and 2.the expected collection of information about, or interference with, First Amendment rights is unavoidably necessary for the proper conduct of the investigation; and 3.every reasonable precaution has been employed to minimize the collection of information about, or interference with, First Amendment rights; and 4. the investigation employs the least intrusive technique necessary to obtain the information." *Third*, the City added more space for the officer to provide his reasons for extending the investigation | requirement that they be the least intrusive means. Alternatively, the ACLU suggested that the applying officer could list the precautions and techniques and have the authorizing officer sign off them. | | |

March 31, 2019
Page 14

|  | authorization. |  |  |  |
|--|--|--|--|--|
|  |  |  |  |  |

4.  **Written Guidelines for the use of Manual Social Media Searches and of Social Media Collators**

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's response? | Monitoring Team's Recommendations to the Court. |
|--|--|--|--|--|
| The Monitoring Team made several observations and recommendations. *First*, the Monitoring Team agreed that the Guidelines should apply to all officers for the reasons provided by the ACLU in its objections.<br><br>*Second*, the Monitoring Team did not agree with the ACLU about when the guidelines are applicable. The Team was concerned that an officer could attempt to justify social media surveillance | *First*, the City revised the scope to include all MPD officers who utilize social media during the course of their duties, as well as to all MPD personnel with access to social media collators.<br><br>*Second*, the City defined "Command Staff" and "criminal investigation." It revised its criminal intelligence definition for clarity, and removed its | The revisions satisfied the ACLU's objections. | Largely agree | *First*, the Monitoring Team reasserts and incorporates its original recommendations.<br><br>*Second*, the Monitoring Team believes the description of a situational assessment report isn't consistent with the definition on page 3 of the Authorization for Investigations. There, a situational assessment report is described as an "**after**-action report of an incident describing the incident, MPD's reaction to the incident, and an analysis of the |

March 31, 2019
Page 15

| | | | | |
|---|---|---|---|---|
| disguised as personal curiosity. Therefore, the Monitoring Team recommended that the following language be added to the Guidelines: (1) "Use of social media while on duty should be conducted for police business purposes only, and only in compliance with this Policy;" and (2) "The officer's personal use of the social media platform and any searches conducted for personal reasons are nevertheless subject to this reporting requirement, when: •The information searched, gathered, collected, stored or disseminated involves, includes, intersects or overlaps with, or otherwise relates to or has direct or derivative use in any investigation, inquiry or matter involving official law enforcement or department interest; and •The officer has knowledge of such investigation, | "criminal nexus, criminal predicate" and "reasonable suspicion" definitions.<br><br>**Third**, the City revised its policy to provide, "the officer's personal use of social media platform and any searches conducted for personal reasons **while not on duty** are not subject to this reporting requirement."<br><br>**Fourth**, the City added language to its rule on dissemination. The additional language provides, "information gathered from social media may not be forwarded or shared beyond those who are authorized by this Policy." Additionally, the City added language stating, "[a]ny information gathered and retained from | | | successes and failures of MPD's reaction to the incident;" here, it appears that a situational assessment report would be prepared prior to an incident. Therefore, the Team recommends that the City clarify when a situational assessment report is prepared and for what purpose. In addition, the Team recommends adding language explicitly stating how the information gathered for a situational assessment report about an event involving First Amendment-protected activity may be used, stored, disseminated, and retained.<br><br>**Third**, the Team recommends a shorter retention period for information about First Amendment activities, unless there's a legitimate law enforcement purpose for a thirty-day period (e.g., that it would take that period of time to determine whether the information is related to criminal activity).<br><br>**Fourth**, regarding |

March 31, 2019
Page 16

| | | | | |
|---|---|---|---|---|
| inquiry, or matter, or should reasonably have such knowledge."<br><br>***Third***, the Monitoring Team agreed with the ACLU that the Guidelines regarding the dissemination of social media information should be revised for clarity.<br><br>***Fourth***, the Monitoring Team agreed that "Command Staff" should be defined.<br><br>***Fifth***, the Monitoring Team recommended that the "Document and Retention" section be revised for clarity. In particular, the sentence beginning, "The search histories of each social media platform searched by an MPD officer shall be retained…" should be clarified; possible alternatives include, "The search histories of an MPD officer on any social media platform shall be retained…", or "All social media | social media may only be disseminated to **MPD officers and staff as necessary**." | | | page 6, the City states, "Any information gathered and retained form social media may only be disseminated to **MPD officers and staff as necessary**." This appears to be more permissive than the previous, now-deleted language, saying the information may only be disseminated "to members of the Command staff and only when the information pertains to threats to public safety or is potential evidence in a criminal investigation." The Monitoring Team would like clarification as to the reason for this change. |

March 31, 2019
Page 17

| | | | |
|---|---|---|---|
| searches by any MPD officer shall be retained…".<br><br>In addition, the Monitoring Team anticipated that the 90-day reporting period is going to become confusing when applied. Right now, the 90-day clock appears to start when any given search happens; it is not clear whether that is what is intended, or if there is supposed to be a regularized reporting period to match the city's quarterly reporting requirements. One proposal was that searches be reported at or shortly after the time they happen, rather than waiting for three months to report them.<br><br>**Sixth**, the Monitoring Team recommended there be a definition of "special events."<br><br>**Seventh**, the Monitoring Team proposed adding a disciplinary consequence for knowing failure to | | | |

March 31, 2019
Page 18

| | | | | |
|---|---|---|---|---|
| adhere.<br><br>***Eighth***, the Monitoring Team recommended incorporating a procedure for audits of social media searches.<br><br>***Ninth***, the Monitoring Team recommended that the policy state that an undercover social media account may not impersonate an actual person known to the subject of the investigation.<br><br>***Tenth and finally***, the Monitoring Team recommended that language be added addressing the monitoring of juveniles on social media— in particular, if there are restrictions on monitoring or targeting juveniles as part of other law enforcement practices, policies, or procedures, those should be considered for incorporation into the online sphere. | | | | |

March 31, 2019
Page 19

## 5. Social Media Search Terms

| Monitoring Team's Prior Feedback. | Description of the City's Revised 1/14 Submissions, Provided to the ACLU on 2/11. | Description of the ACLU's Response to the City's Revised Submissions, Provided to the City on 3/14. | Does the Monitoring Team Agree or Disagree with the ACLU's response? | Monitoring Team's Recommendations to the Court. |
|---|---|---|---|---|
| *First*, The Monitoring Team did not agree with the ACLU's lack of objections to the social media search terms list. In particular, the filing certifies that none of the names searched for were "associated with a protest or other scenario in which First Amendment rights were being exercised." The Team believes that each search must also have a valid law enforcement purpose, however. The Monitoring Team suggested that current certification is important but not sufficient. Accordingly, the Team recommended that the police department certify that each search term produced in its submissions have a valid law enforcement purpose. If that certification is not possible, the Monitoring Team recommended that the | None | No objections were made to January 14, 2019, submission. | Disagree | The Monitoring Team reasserts and incorporates its prior feedback. |

March 31, 2019
Page 20

| | | | | |
|---|---|---|---|---|
| department provide an explanation.<br><br>***Second***, the Monitoring Team also recommended that the department provide an explanation for the use of the word "protest" as a search term in conjunction with the words "St. Jude" and "marathon." | | | | |

46900116.v1



# MEMPHIS POLICE DEPARTMENT

## Policy and Procedure



**SERIAL:**                                    **DATE:**
**FROM:**                                      **TO:**
**SUBJECT:** UTILIZING SOCIAL MEDIA FOR INVESTIGATIONS

---

**PURPOSE:**
To establish guidelines for the use of social media, via manual social media searches and through the use of social media collators, for all officers assigned to the Office of Homeland Security ("OHS") and Real Time Crime Center ("RTCC"), as well as any officer with access to social media collators, and in compliance with the Order, Judgment, and Decree entered in Civil Case 76-449 ("*Kendrick* Consent Decree"), and in accordance with the Memorandum Opinion issued by the United States District Court in Case No. 2:17-cv-02120, Doc. 151.

**SCOPE:**
This policy applies to all MPD officers who utilize social media in the course of their duties, as well as to all MPD personnel with access to social media collators, and to all officers assigned to the Office of Homeland Security ("OHS") and Real Time Crime Center ("RTCC").

**GENERAL:**
Social media is a tool for real time communication and has become an integral part of daily life for citizens of all ages. Its usage can be a valuable tool to aid in investigations and analysis within public safety interest areas. Similarly, in the aftermath of a crime, social media can be used to obtain information to identify suspects, victims and witnesses.

Social media, by definition, is a forum on which the expression of First Amendment rights may be expected to occur. The MPD's use of social media is governed by the *Kendrick* Consent Decree.

1

EXHIBIT A

This policy shall outline the restrictions and uses of social media by applicable officers.   This policy is intended to address social media in general, and not any one particular form of social media.

## DEFINITIONS:

**Command Staff -** The MPD Command staff includes the Director of Police, Deputy Director, and the six Deputy Chiefs.

**Criminal Investigation -** If probable cause exists that a crime has been committed, a criminal investigation is the process of collecting information or evidence about an incident in order to: (1) determine if a crime has been committed; (2) identify a perpetrator;  (3) establish probable cause; (4) apprehend the perpetrator; and (5) provide evidence to support a conviction in court.

**Criminal Intelligence** ~~Information~~ — Data which ~~meets criminal intelligence collection criteria and which~~ has been evaluated and determined to be relevant to the identification of criminal activity engaged in by individuals who or organizations which are reasonably suspected of involvement in criminal activity.

~~**Criminal Nexus, Criminal Predicate** — Established when behavior or circumstances are related to an individual or organization's involvement or planned involvement in criminal activity or enterprise.~~

**Undercover Account** — The utilization of an online alias to search or engage in interactions with a person via social media sites that may or may not be in the public domain (i.e. "friending a person on Facebook").

**Political Intelligence** – the gathering, indexing, filing, maintenance, storage or dissemination of information, or any other investigative activity, relating to any person's beliefs, opinions, associations or other exercise of First Amendment rights.   Political intelligence includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive.   Political intelligence is not permissible as a goal of an investigation nor as the means to an end of an otherwise lawful investigation.

**Public Domain** — Any Internet resource that is open and available to anyone, without use of a password, specific invitation, or other identifier.

~~**Reasonable Suspicion** — Information exists which establishes sufficient facts to give trained law enforcement officer or MPD employee a basis to~~

~~believe that there is a reasonable possibility that an individual or organization is involved in a definable criminal activity or enterprise.~~

**Social Media** — A category of Internet-based resources that integrate user-generated content and user participation.

**Social Media Collator** — A tool used to capture data and monitor social media sites by utilizing automated tools such as web crawlers and word search functions to make predictive analysis, develop trends, or collect information.

**Social Media Sites** — Sites which focus on building online communities of people who share interests and activities and/or exploring the interests and activities of others. Social media websites are further categorized by Internet-based resources that integrate user-generated content and user participation. This includes, but is not limited to, social networking sites (Facebook), micro blogging sites (Twitter), photo-and video-sharing sites (Instagram). The absence of an explicit reference to a specific social media website does not limit the application of this policy.

**Valid Law Enforcement Purpose** — A purpose for information/intelligence gathering development, that furthers the authorized functions and activities of a law enforcement agency, which may include the prevention of crime, ensuring the safety of the public, furthering officer safety, and homeland and national security.

## USE OF SOCIAL MEDIA

The collection and use of information through the use of social media shall be conducted in accordance with the *Kendrick* Consent Decree, and the Memorandum Opinion issued by the United States District Court in Case No. 2:17-cv-02120, Doc. 151, which may be found on the Memphis Police Department Kiosk [show link here], and shall further be conducted without violating constitutionally protected rights, or the requirements of 28 CFR Part 23[1], or any relevant state or local regulations.

Social media shall not be used by MPD to conduct political intelligence. Political intelligence, as defined by the *Kendrick* Consent Decree, is the gathering, indexing, filing, maintenance, storage or dissemination of information, or any other investigative activity, relating to any person's beliefs, opinions, associations or other exercise of First Amendment rights.

---

[1] 28 CFR Part 23 is a federal regulation that provides guidance to law enforcement agencies on the implementation standards for operating multijurisdictional criminal intelligence systems funded under the Omnibus Crime Control and Safe Streets Act of 1968, as amended (Crime Control Act)

Political intelligence includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive. Political intelligence is not permissible as a goal of an investigation nor as the means to an end of an otherwise lawful investigation. (See DR 138.)

All searches of social media by a MPD officer, through the use of a social media account or social media collator, shall be based on a valid law enforcement purpose, and not for the purpose of gathering information related to First Amendment rights. Absent authorization to conduct an investigation, for example, impermissible search terms might include a phrase or name of an organization that expresses political beliefs, such as "Black Lives Matter," "Occupy Wall Street" or "Sovereign Citizens." An example of permissible search terms, which in and of themselves indicate unlawful conduct not protected by the First Amendment, would be "shoot the police." A search term such as "St. Jude Marathon" is permissible because it does not involve the collection of information associated with a person's exercise of First Amendment rights.

Social Media searches are limited to sources within the public domain that are accessible without use of a password or other identifier. If an MPD officer needs to create an alias or undercover account or seeks to gain access to a "private" social media account, these actions require prior written authorization by the Director of Police Services or his/her designee. (See Policy # XXX.)

Even when a search of social media is carried out in compliance with other provisions of this Policy, there should be no interaction by the MPD officer with any individual's social media account such as through commenting, "liking," direct messaging, posting, etc. The officer should merely view the content of the social media account for data/information collection.

In the event a MPD officer encounters information on social media pertaining to an imminent threat to public safety or evidence of the planning or commission of a crime, the MPD officer shall immediately notify his/her commanding officer.

Social media searches following a homicide or critical incident or occurrence of a crime should be limited to the social media accounts of

persons who have been identified as suspects, victims, and/or witnesses to a crime. Only searches of open-sources (non-private) should be used.

Only social media content directly relevant to the criminal investigation should be retained and disseminated, and it shall be placed in the case file.

Use of social media while on duty should be conducted for police business purposes only, and only in compliance with this Policy.

## SOCIAL MEDIA SEARCHES REQUIRING AUTHORIZATION BY DIRECTOR

In the event that a search of social media is part of an investigation into unlawful conduct which may incidentally result in the receipt of information relative to First Amendment rights, such searches require authorization by the Director of Police Services or his/her designee. (See Policy ###, HERE)

## DOCUMENTATION AND RETENTION

Other than crime analysis, situational assessment reports, and evidence collected during a criminal investigation, no information obtained from social media websites shall be retained.

The search histories of each social media platform searched by an MPD officer shall be retained for a period of no less than 90 days. At the end of each 90-day period, each MPD officer who conducted a search on social media must submit a list of search terms used to search the particular social media platform related to the officer's duties and responsibilities as an officer of the MPD. These reports shall be submitted to the officer's commander.

The officer's personal use of the social media platform and any searches conducted for personal reasons while not on duty are not subject to this reporting requirement.

Crime analysis and situational assessment reports may be prepared for special events management, including First Amendment-protected activities. At the conclusion of the situation or First Amendment-protected event that was the catalyst for generation of a situational awareness report, and where there was no criminal activity related to the information gathered, the

5

information obtained from social media or from a social media monitoring tool will be retained for no more than thirty (30) days.

Information from social media that does indicate a criminal nexus of unlawful conduct that is not protected by the First Amendment may be retained in an intelligence report, suspicious activity report, or case investigative file.

Information obtained from a social media site in the course of an investigation that is identified as criminal in nature will be collected and retained using screen shots, printouts of chat logs, copying uniform resource locators (URL's), and any other reasonable means for preserving the evidence for subpoena or investigatory purposes. This evidence will be stored in the same manner as other evidence of a criminal investigation. When possible, MPD employees will utilize investigative computer systems and software intended to record data from social media sites.

At no time shall MPD Personnel maintain any social media files outside of these authorized files.

## DISSEMINATION

Information gathered from social media, including screen shots or "snags" of social media sites, shall not be disseminated except as necessary for preparations for special events management or for the investigation of unlawful activity. Information gathered from social media may not be forwarded or shared beyond those who are authorized by this Policy. Any information gathered and retained from social media may only be disseminated to members of the Command StaffMPD officers and staff as necessary., and only when the information pertains to threats to public safety or is potential evidence in a criminal investigation.

## DISCIPLINE

Any employee who violates this Section will be subject to disciplinary action, up to and including termination.

Cross Reference

DR 138

**REPORT #:** _____

# Authorization for Investigations That May Incidentally Result in Political Intelligence

In accordance with Policy # XXX any officer conducting an investigation into unlawful conduct that may incidentally result in the gathering of political intelligence (see DR 138) or information related to the exercise of First Amendment rights, requires approval by the Director of Police Services or his/her Designee. If approved, the investigation will not exceed more than ninety (90) calendar days. An extension may be granted by the Director/Director's Designee for an additional ninety (90) days if necessary.

REPORT #:_____

**Purpose of Investigation (include all pertinent facts)**

_____
_____
_____
_____
_____

**Subjects of Investigation (include all Aliases and known Handles)**

_____
_____

**Method of Investigation:** ☐ Social Media    ☐ Undercover Capacity    ☐ Surveillance
☐ Other (explain): _____

_____
_____
_____

_____
Requesting Investigator's Signature    Date: _____

**Investigation Approval Status**

Based on the foregoing, and all information known to me, I have determined that: that

1. tThis investigation does not violate the provisions of the *Kendrick* Consent Decree; and
2. the expected collection of information about, or interference with, First Amendment rights is unavoidably necessary for the proper conduct of the investigation; and
3. every reasonable precaution has been employed to minimize the collection of information about, or interference with, First Amendment rights; and
4. the investigation employs the least intrusive technique necessary to obtain the information.

Thus, this investigation meets the requirements of Section G of the *Kendrick* Consent Decree, and I hereby approve the investigation. This authorization will expire 90 says from the date of my signature.

_____
**Director of Police Services or Designee**

## REPORT #: _____

-Date: _____

| Extension |
| --- |

Reason for Extension: _____
=====

_____

_____

☐ Approved
Extension Expires:                           _____
                                             Director of Police Services or Designee          Date

## DR 138 POLITICAL INTELLIGENCE (REVISED)

The Memphis Police Department and the City of Memphis shall not engage in political intelligence. "Political Intelligence" means the gathering, indexing, filing, maintenance, storage or dissemination of information, or any other investigative activity, relating to any person's beliefs, opinions, associations or other exercise of First Amendment rights.

First Amendment rights are rights protected by the First Amendment to the constitution of the United States, including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publicly for any lawful purpose.

Political intelligence includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive.  Political intelligence is not permissible as a goal of an investigation nor as the means to an end of an otherwise lawful investigation.

No member shall intercept, record, transcribe or otherwise interfere with any communications by means of electronic or covert surveillance for the purpose of gathering political intelligence. No member shall engage in any action or disseminate damaging, derogatory, false or anonymous information about any person which will deprive any individual of their First Amendment Rights; nor will any member encourage, cooperate with, or contract with any local, state, federal or private agency to plan or conduct any investigation involving political intelligence.

Investigations into unlawful conduct that may incidentally result in the receipt of information relating to First Amendment rights are permissible, but require approval by the Director of Police Services or his/her designee. Any member conducting or supervising such an investigation must bring the matter to the attention of the Director of Police Services, or his/her designee, for review and written authorization.  If approved, the investigation shall not exceed ninety (90) calendar days. An extension may be granted in writing by the Director or his/her designee for period of up to an additional ninety (90) days.

The form to be utilized to request approval to conduct an investigation under the authority provided in this this DR, are in accordance with the Order, Judgment and Decree for Civil Case 76-449 ("*Kendrick* Consent Decree"), and the Memorandum Opinion issued by the United States District Court in Case No. 2:17-cv-02120, Doc. 151. Copies of both may be found on the Memphis Police Department Kiosk

[show links here].

Except as may be otherwise provided in this DR, the fundamental principles found
in The Code of Federal Regulations, 28 CFR Part 23, contain operating policies
providing law enforcement professionals with guidance on the operation of
criminal intelligence information systems effectively while safeguarding privacy
and civil liberties.  In the event of a conflict between the principles and provisions
of 28 CFR Part 23 and this DR, as well as the provisions of the *Kendrick* Consent
Decree, the provisions of the *Kendrick* Consent Decree shall govern.

## TRAINING PLAN

In the Opinion and Order (ECF No. 151), the Court ordered, in part, the following:

The City shall design training for members of OHS, RTCC, and MPD's Command Staff. The new training shall define "political intelligence." The new training shall specify that "political intelligence" includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer or unit does not have a partisan political motive. The new training shall specify that political intelligence is not permissible as a goal of an investigation nor as the means to an end of an otherwise lawful investigation. The new training shall inform officers that investigations into unlawful conduct that may incidentally result in the receipt of information relating to First Amendment rights are permissible, but require approval as set out in Consent Decree § G. No officer may be assigned to RTCC or OHS, or be promoted to the Command Staff without receiving this training. The City shall submit a training plan to the Court no later than January 14, 2019 for review and approval.

Pursuant to the Order, the City submits the following training plan for the Court's review and approval.

- The City has drafted training materials for members of OHS, RTCC, and MPD's Command Staff. This draft is attached hereto as Exhibit A. The City will provide a copy of the draft to the Court-appointed Monitor.

- Within 21 days after approval of the training materials by the Court, the City will hold training sessions for all members of OHS, RTCC, and MPD's Command Staff.

- Training will be done by the City of Memphis City Attorney's Office or Law Division and/or its designee(s).

   o Attendance will be mandatory and tracked to ensure all members receive the training.

   o Acknowledgement of receipt of this training shall be signed by members of OHS, RTCC, and MPD's Command Staff and placed in their personnel files.

- For future members of OHS, RTCC, and/or MPD's Command Staff, training will be included in the mandatory new hire or transfer orientation requirements.

- Annual In-Service training~~Training~~ for members of OHS, RTCC, and MPD's Command Staff will be required~~offered annually~~, and~~or~~ additional training will be offered on an "as needed" basis. ~~for future members of OHS, RTCC, and/or MPD's Command Staff~~

- MPD members who are being considered for promotion to the Command Staff will have their personnel files reviewed for training completion. Those being considered

for promotion to the Command Staff will be ineligible for promotion until completion
of training.



**MEMPHIS POLICE DEPARTMENT**
**POLICY AND PROCEDURE**

**SERIAL:**                                    **DATE:**
**FROM:**                                      **TO:**
**SUBJECT:** Authorization for Investigations Which May Incidentally Result in the Collection of Information Related to the Exercise of First Amendment Rights Under Section G of *Kendrick* Consent Decree

In accordance with the Order, Judgment, and Decree entered in Civil Case 76-449 ("*Kendrick* Consent Decree"), the Memphis Police Department and the City of Memphis shall not engage in "political intelligence."  Political intelligence includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive.  First Amendment rights are rights protected by the First Amendment to the constitution of the United States, including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publicly for any lawful purpose.

Investigations into unlawful conduct that may incidentally result in the receipt of information relating to First Amendment rights are permissible, but require approval by the Director of Police Services, or his/her Designee, under Section G of the *Kendrick* Consent Decree (available HERE).

**PURPOSE**

The purpose of this policy is to outline the procedure for requesting authorization to conduct an investigation into unlawful conduct which may incidentally result in the in the receipt of information relating to First Amendment rights.

**PROCEDURE**

The requirement to obtain written authorization is applicable to any investigation into unlawful conduct by any officer, which may incidentally result in the collection of information about the exercise of First Amendment rights.

When this becomes known to the officer, the investigation must be brought to the attention of the Director or his/her Designee.

For purposes of this Policy, the following activities shall not require a written authorization from the Director/designee:

1. Ongoing, active investigation into the planning or occurrence of a criminal act;

2. Criminal intelligence development (defined as information relevant to the identification of criminal activity engaged in by individuals or organizations which are reasonably suspected of involvement in criminal activity)

3. Investigating or monitoring organized gangs reasonably suspected of involving criminal activity;

4. Investigating or monitoring sex crimes, including pedophilia;

5. Investigating or monitoring hate crimes;

6. Crime analysis and reporting.

When requesting written authorization, the officer shall provide the factual basis for the investigation and the investigative techniques to be employed. The written authorization shall be substantially in the form set forth in Exhibit One to this Policy, although additional information relevant to the authorization may be included.

The Director/Director's Designee may authorize the investigation upon making the following findings:

a. The investigation does not violate the provisions of the *Kendrick* Consent Decree;

b. The expected collection of information about related to First Amendment activity is unavoidably necessary for the proper conduct of the investigation;

c. Every reasonable precaution has been employed to minimize the collection of information related to First Amendment activity; and

d. The investigation employs the least intrusive technique necessary to obtain the information.

If approved, the investigation will not exceed more than ninety (90) calendar days. An extension may be granted by the Director for an additional ninety (90) days, if necessary.

**DOCUMENTATION AND RETENTION**

Other than crime analysis[1] and situational assessment reports[2], all information found during an authorized investigation and obtained from social media websites shall be placed within a case file, suspicious activity report, or intelligence report. At no time should MPD Personnel maintain any social media files outside of these authorized files.

At the expiration of the 90 day authorization, or the expiration of the extension (if any), all information collected during the authorized investigation will be destroyed, unless the information is identified as evidence of a crime and/or is associated with an open criminal investigation.

Information identified as evidence of a crime that is obtained in the course of an investigation authorized under this policy from a social media site will be collected and retained using screen shots, printouts of chat logs, copying uniform resource locators (URL's) for subpoena or investigatory purposes, or storing the information via secure digital means. When possible, employees will utilize investigative computer systems and software intended to record data from social media sites. This information will be stored in conjunction with a case file number.

## DISSEMINATION

Information collected related to the exercise of First Amendment rights as a result of the authorized investigation may be disseminated only to the Director or his/her Designees who have been authorized to grant the investigation, unless the information will be used as evidence in a criminal indictment or proceeding, at which time the information may be disseminated to law enforcement consistent with MPD policy.

## EXAMPLES

Examples of unlawful conduct, the investigation of which might incidentally result in the collection of information about the exercise of First Amendment rights, include the following:

- A planned flash mob at a shopping mall intended to shut down the mall. An investigation into such a flash mob would necessarily involve the collection of information about persons' First Amendment rights of gathering and associating with one another. As such, the investigation into this unlawful conduct would require authorization pursuant to this Policy.

- A threat by a person to bring a gun into City Council chambers in order to disrupt the Council meeintg. An investigation into this threat might incidentally include the collection of information about the political opinions and motives of the person making the threat, and would require authorization pursuant to this Policy.

## EXCLUSIONS

---

[1] "Crime Analysis" is defined in the "Exclusions" Section below.
[2] "Situational Assessment Report" is defined as an after-action report of an incident describing the incident, MPD's reaction to the incident, and an analysis of the successes and failures of MPD's reaction to the incident.

For purposes of this Policy, the following activities shall not require a prior written authorization from the Director/designee:

1. Initial, on the scene active investigation into the planning or occurrence of a criminal act (*e.g.* a homicide scene and its immediate aftermath, where the responding officer searches Facebook for the name of the victim and/or the name(s) of any suspect(s));

2. Criminal intelligence development (defined as information relevant to the identification of criminal activity engaged in by individuals or organizations which are reasonably suspected of involvement in criminal activity) (*e.g.* the ongoing gathering of intelligence into a drug trafficking ring);.

3. Investigating or monitoring organized gangs reasonably suspected of involving criminal activity (*e.g.* the ongoing gathering of intelligence into known gangs);

4. The ongoing gathering, investigating, and monitoring of suspected and potential sex crimes, including human trafficking, child pornography, and pedophilia;

5. Crime analysis and reporting. Crime analysis is the systematic study of crime and disorder problems as well as other police–related issues—including sociodemographic, spatial, and temporal factors—to assist the police in criminal apprehension, crime and disorder reduction, crime prevention, and evaluation. Crime analysis is not haphazard or anecdotal; rather, it involves the application of social science data collection procedures, analytical methods, and statistical techniques. More specifically, crime analysis employs both qualitative and quantitative data and methods. Crime analysts use qualitative data and methods when they examine non-numerical data for the purpose of discovering underlying meanings and patterns of relationships. The qualitative methods specific to crime analysis include field research (such as observing characteristics of locations) and content analysis (such as examining police report narratives). Crime analysts use quantitative data and methods when they conduct statistical analysis of numerical or categorical data. Although much of the work in crime analysis is quantitative, crime analysts use simple statistical methods, such as frequencies, percentages, means, and rates. Typical crime analysis tools include link analysis and crime mapping software.

   The central focus of crime analysis is the study of crime (e.g., rape, robbery, and burglary); disorder problems (e.g., noise complaints, burglar alarms, and suspicious activity); and information related to the nature of incidents, offenders, and victims or targets of crime (targets refer to inanimate objects, such as buildings or property). Crime analysts also study other police-related operational issues, such as staffing needs and areas of police service. Even though this discipline is called "crime analysis," it actually includes much more than just the examination of crime incidents. Crime analysis is also used to address any deficiencies in training and to update policies and procedures.

Cross References:

DR 138
*Kendrick* Consent Decree



**MEMPHIS POLICE DEPARTMENT**
**POLICY AND PROCEDURE**

**SERIAL:**                                    **DATE:**
**FROM:**                                     **TO:**
**SUBJECT:** Guidelines for Delegation of Authority of Director of Police Services to Authorize Investigations Which May Interfere with the Exercise of First Amendment Rights Under Section G of *Kendrick* Consent Decree

In accordance with the Order, Judgment and Decree entered in Civil Case 76-449 ("*Kendrick* Consent Decree"), the Memphis Police Department and the City of Memphis shall not engage in "political intelligence." Political intelligence includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive.

Investigations into unlawful conduct that may incidentally result in the receipt of information relating to First Amendment rights are permissible, but require approval by the Director of Police Services under Section G of the *Kendrick* Consent Decree.

The Director of Police Services may delegate his/her authority to authorize such authorizations as follows:

**Selection of Designees by Director**

The Director of Police Services may identify up to 3 designees, who shall each be at the Command staff (persons who hold rank of Major or higher) level of the MPD, who are entitled to issue the written authorization to investigate per Section G. The Director shall identify each designee in an interdepartmental communication distributed to the Command Staff, all specialized unit supervisors, and the Commander of each precinct. If a designee is replaced or if an additional designee or designees is named within the parameters of this policy, that individual[s] shall similarly be identified in an interdepartmental communication as set forth in the preceding sentence.

The designee issuing such written direction shall not be in the direct chain of command of the unit or officer requesting authorization. If each designee falls within the applicable chain of command set forth in this policy, the Director must personally authorize the written investigation.

**Designees Report to Director**

Each designee shall report directly to the Director on the last Friday of every month.  The Designee's report to the Director shall include a description of every investigation authorized by the Designee that may incidentally result in the receipt of information relating to First Amendment rights.  The Designee's report shall include the date of the request for authorization, the name of the requesting officer, a description of the investigation, and the expected duration of the investigation. The Director shall have the authority to  rescind authorization for any investigation that the Director deems to constitute political intelligence.

Cross References:

DR 138
Policy # XXX: Authorization for Investigations Which May Interfere with the Exercise of
First Amendment Rights Under Section G of *Kendrick* Consent Decree



## *KENDRICK* CONSENT DECREE

# INTRODUCTORY TRAINING FOR MPD OFFICERS

# THE *KENDRICK* CONSENT DECREE

- In 1978, the City of Memphis entered into an agreement with the ACLU-TN known as the *Kendrick* Consent Decree.

- The City agreed to refrain from specifically defined activities related to "political intelligence."

- The Consent Decree is located on the MPD Kiosk.

# WHAT IS "POLITICAL INTELLIGENCE"?

- "Political intelligence," is defined in the *Kendrick* Consent Decree as the gathering, indexing, filing, maintenance, storage, or dissemination of information, or any other investigative activity, relating to any person's beliefs, opinions, associations or other exercise of First Amendment Rights.

- First Amendment rights are rights protected by the First Amendment to the constitution of the United States, including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publicly for any lawful purpose.

- The United States District Court recently confirmed that the definition of "political intelligence" in the *Kendrick* Consent Decree includes <u>any</u> investigation into the lawful exercise of First Amendment rights, even if the investigating officer or unit does not have a partisan motive.  <u>Political intelligence is not permissible as a goal of an investigation nor as the means to an end of an otherwise lawful investigation</u>.

# REVISED DR138

- DR 138 has been revised, pursuant to the Court's order, and can be found on the Kiosk.

**DR 138 POLITICAL INTELLIGENCE (REVISED)**

The Memphis Police Department and the City of Memphis shall not engage in political intelligence. "Political Intelligence" means the gathering, indexing, filing, maintenance, storage or dissemination of information, or any other investigative activity, relating to any person's beliefs, opinions, associations or other exercise of First Amendment rights. Political intelligence includes any investigation into the lawful exercise of First Amendment rights, even if the investigating officer does not have a partisan political motive. Political intelligence is not permissible as a goal of an investigation nor as the means to an end of an otherwise lawful investigation.

No member shall intercept, record, transcribe or otherwise interfere with any communications by means of electronic or covert surveillance for the purpose of gathering political intelligence. No member shall engage in any action or disseminate damaging, derogatory, false or anonymous information about any person which will deprive any individual of their First Amendment Rights; nor will any member encourage, cooperate with, or contract with any local, state, federal or private agency to plan or conduct any investigation involving political intelligence.

Investigations into unlawful conduct that may incidentally result in the receipt of information relating to First Amendment rights are permissible, but require approval by the Director of Police Services or his/her designee. Any member conducting or supervising such an investigation must bring the matter to the attention of the Director of Police Services, or his/her designee, for review and written authorization. If approved, the investigation shall not exceed ninety (90) calendar days. An extension may be granted in writing by the Director or his/her designee for period of up to an additional ninety (90) days.

The form to be utilized to request approval to conduct an investigation under the authority provided in this this DR, are in accordance with the Order, Judgment and Decree for Civil Case 76-449 ("*Kendrick* Consent Decree"), and the Memorandum Opinion issued by the United States District Court in Case No. 2:17-cv-02120, Doc. 151. Copies of both may be found on the Memphis Police Department Kiosk [show links here].

Except as may be otherwise provided in this DR, the fundamental principles found in The Code of Federal Regulations, 28 CFR Part 23, contain operating policies providing law enforcement professionals with guidance on the operation of criminal intelligence information systems effectively while safeguarding privacy

# NO ELECTRONIC SURVEILLANCE FOR THE PURPOSE OF POLITICAL INTELLIGENCE

- The *Kendrick* Consent Decree prohibits MPD from electronic surveillance as a means of political intelligence.

- "No officer shall intercept, record, transcribe or otherwise interfere with any communications by means of electronic or covert surveillance for the purpose of gathering political intelligence."

- This prohibition includes the use of social media for the purpose of political intelligence.

# NO COVERT SURVEILLANCE FOR THE PURPOSE OF POLITICAL INTELLIGENCE

- MPD shall not recruit, solicit, place, maintain, or employ an informant for political intelligence; nor shall any officer, employee, or agent of the City of Memphis, for the purpose of political intelligence, infiltrate or pose as a member of any group or organization exercising First Amendment Rights.

# HARASSMENT AND INTIMIDATION PROHIBITED

- MPD shall not "disrupt, discredit, interfere with or otherwise harass any person exercising First Amendment rights."

- This includes a prohibition against dissemination of damaging, derogatory, false, or anonymous information about any person for the purpose of political intelligence, or an attempt to provoke disagreement, dissention, or violence between persons.

- MPD shall not engage in any action for the purpose of, or reasonably having the effect of, deterring any person from exercising First Amendment rights.

- <u>EXAMPLE</u>: MPD shall not record the name of or photograph any person in attendance, or record the license plate number of any person in attendance, of any lawful meeting or demonstration for the purpose of chilling the exercise of First Amendment rights or for the purpose of maintaining a record of that gathering.

# INVESTIGATIONS THAT MIGHT INCIDENTALLY RESULT IN POLITICAL INTELLIGENCE

- For any investigation into unlawful conduct that may incidentally result in political intelligence, prior authorization is REQUIRED.

- These investigations are permissible, but require approval by the Director of Police Services or his/her designee.

- If the investigation is authorized by the Director/Director's Designee, the investigation will not exceed more than ninety (90) calendar days.

- An extension may be requested by the investigating office, and granted by the Director/Director Designee for an additional ninety (90) days if necessary.

- The Authorization Form for any such investigation can be found on the Kiosk.

# WHEN WILL AN INVESTIGATION THAT INVOLVES POLITICAL INTELLIGENCE BE AUTHORIZED?

- After a review of the factual basis for the investigation as well as the investigative techniques to be employed, the Director or his/her designee may authorize the investigation upon making the following findings:

    - The investigation does not violate the provisions of the *Kendrick* Consent Decree;

    - The expected collection of information related to the exercise of First Amendment rights is unavoidably necessary for the proper conduct of the investigation;

    - Every reasonable precaution has been employed to minimize the collection of information about, or interference with, First Amendment rights; and

    - The investigation employs the least intrusive technique necessary to obtain the information.

# DOCUMENTATION AND RETENTION OF "POLITICAL INTELLIGENCE" GATHERED IN AN INVESTIGATION

- Other than crime analysis and situational assessment reports, all information found during an authorized investigation of unlawful conduct and obtained from social media websites shall be placed within a case file, suspicious activity report, or intelligence report.

- At no time should MPD Personnel maintain any social media files outside of these authorized files.

- At the expiration of the 90 day authorization, or the expiration of the extension (if any), all information collected during the authorized investigation will be destroyed, unless the information is identified as evidence of a crime and/or is associated with an open criminal investigation.

- Information identified as evidence of a crime that is obtained in the course of an investigation authorized under this policy from a social media site will be collected and retained using screen shots, printouts of chat logs, copying uniform resource locators (URL's) for subpoena or investigatory purposes, or storing the information via secure digital means. When possible, employees will utilize investigative computer systems and software intended to record data from social media sites. This information will be stored in conjunction with a case file number.

# DISSEMINATION OF POLITICAL INTELLIGENCE GATHERED IN AN AUTHORIZED INVESTIGATION

- Information collected related to the exercise of First Amendment rights as a result of the authorized investigation may be disseminated only to the Director or his/her Designees who have been authorized to grant the investigation, unless the information will be used as evidence in a criminal investigation or proceeding, at which time the information may be disseminated to law enforcement representatives consistent with MPD policy.

# EXAMPLES OF IMPERMISSIBLE POLITICAL INTELLIGENCE

Each of these represents an affirmative investigative act focusing on First Amendment rights in violation of the Consent Decree.

- An MPD officer searches a social media collator for all instances of the term "Black Lives Matter," because the information relates to First Amendment Rights.

- An MPD officer gathers and circulates social media posts about potential boycotts.  Boycotts are within the protection of the First Amendment.

- An MPD officer gathers information about journalists based on their associations with Black Lives Matter.

- An MPD officer indexes information relating to the leadership of lawful protests.

- An MPD commander orders social media monitoring of a "Black Lives Matter Rally" and a "Community Organizers Cookout."

# OTHER EXAMPLES OF PROHIBITED CONDUCT

- Operating a department for the purpose of monitoring protest activity or political groups.

- The use of undercover social media accounts to monitor protest activity or political groups.

- The creation and dissemination of bulletins, PowerPoints, etc. that identify persons associated with political groups or protests.

- Recording the identities of protest attendees and maintaining a record of that information.

# EXAMPLES OF CONDUCT THAT DOES NOT CONSTITUTE POLITICAL INTELLIGENCE

- The Director of Police does not conduct political intelligence by collecting the phone numbers of local activists for future dialogues, if those numbers are openly asked for and freely given.

- Real Time Crime Center's monitoring of stationery and mobile cameras is not political intelligence.

- An MPD officer's act of simply receiving or inadvertently finding information related to First Amendment activities is not political intelligence because it does not involve an affirmative action by the officer to gather the information.

- An MPD officer does not have to cover his body camera every time he passes someone with a political t-shirt, because the information received by the camera about political activities was not affirmatively sought out by the officer.

- Similarly, an MPD officer who queries a social media collator for the phrase "kill police," is not going out of her way to "gather" information related to First Amendment rights, even though her action is definitely investigative in nature. If her search returns information related to a lawful assembly titled "Do Not Kill Police," her action does not become political intelligence because First Amendment rights were not the focus or subject of her investigative activity.

# MORE TRAINING TO FOLLOW

- The City of Memphis and MPD are working with the Court-appointed Monitor to develop more training on the *Kendrick* Consent Decree and its provisions.

- Every new and existing officer of MPD will receive training on the *Kendrick* Consent Decree and its prohibition against political intelligence.

# QUESTIONS?

- Please contact your commanding officer with any questions about the *Kendrick* Consent Decree, political intelligence, or the use of social media in investigations.

**Archived:** Monday, March 25, 2019 4:50:30 PM
**From:** Silk, Jennie
**Sent:** Monday, March 18, 2019 5:13:03 PM
**To:** Will Perry
**Cc:** Glover, R. Mark; Tullis, Mary Wu
**Subject:** City of Memphis - ACLU-TN's comments on City's Submissions to the Court
**Sensitivity:** Normal
**Attachments:**
4826-2706-3175 v.1 Item #2 Training Plan - Redlined with ACLU-TN's Suggestions.docx  811-1423-6039 v.2 Item #4 Social Media policy - Redlined with ACLU-TN's Suggestions.docx  836-0637-1207 v.3 Item #3 Policy re authorization to conduct investigation under Section G - Redlined with ACLU-TN's Suggestions.docx  811-4195-6743 v.1 Item #3 Kendrick Authorization Form - Redlined with ACLU-TN's Suggestions.docx  825-9154-2151 v.1 Item #1 Revised DR 138 - Redlined with ACLU's Suggestions.docx  847-2552-6151 v.1 Introductory Kendrick Consent Decree Training - Redlined with ACLU-TN's Suggestions.pptx  846-7270-5415 v.1 Guidelines for Delegation of Authority Under Section G - REDLINED with ACLU-TN's SUGGESTIONS.docx  [51] Court's Order Finding City in Contempt.pdf  [85] City's Submission in Response to the Court's Order.pdf  [86] Plaintiff's Response in Opposition to Policies Proposed by Defendant City of Memphis.pdf

---

Hi Will,

As we discussed on the conference call on Friday, here are the ACLU-TN's comments on the redlined documents the City submitted to the Court.  Please circulate these to your team.

As you know,  the Court required the City to submit several documents for the Court's review pursuant to the Order Finding the City in Contempt (ECF No. 151, pp. 33-35, attached).  We submitted those documents on January 14, 2019 (ECF No. 185, attached).  The ACLU-TN was allowed to object and comment on the City's submissions (ECF No. 186, attached).

In response, we redlined our submissions to incorporate many of the ACLU-TN's comments and suggestions.  Those documents are also attached.  We forwarded those redlined documents to the ACLU-TN for their review on February 11, 2019.

Last week, the ACLU-TN got back to us with their comments on those redlined documents.  See email from ACLU-TN below.  We are working on incorporating as many of their changes as we can in advance of the Court-ordered  deadline of April 1, 2019.

Please let us know if you have any questions.

Thanks,

**Jennie Vee Silk**
Associate

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
2000 First Tennessee Building
165 Madison Avenue
Memphis, TN 38103

Phone  901.577.8212
Fax      901.577.0812
JSilk@bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia and Washington, D.C.

---

**From:** Tom Castelli [mailto:tcastelli@aclu-tn.org]
**Sent:** Thursday, March 14, 2019 1:41 PM
**To:** Silk, Jennie; Glover, R. Mark; Tullis, Mary Wu; Wellford, Buckner
**Cc:** Mandy Floyd
**Subject:** RE: Emails from Mark

Below are our comments on your revisions.  The majority of our objections have been resolved by your revisions.  We appreciate your work in addressing them in a thoughtful manner.  We are more than happy to discuss the few remaining issues that we have.

Tom

1. **DR 138 Political Intelligence**

The definition included, and hyperlink satisfies our objections.

**EXHIBIT B**

2. **Training Plan**

The revisions address our concerns.

3. **Training PowerPoint**

One suggested revision to slide 14

- Real Time Crime Center's monitoring of stationery and mobile cameras is not political intelligence.

This may not necessarily be true as some of the stationary cameras and the mobile units could be positioned in such a way that they are intended to capture political intelligence. The monitoring of the cameras without some improper purpose would not violate the decree. Perhaps this example could be clarified.

4. **Guidelines for Delegation of Authority of Director**

The revisions satisfy our objection. In particular, we appreciate the specific timeframe for reporting and the ability of the Director to rescind the authorization.

5. **Authorization for Investigations Policy**

We still have some concerns about the absolute nature of the exclusions. All in all, the revised exclusions are clearer and give examples where authorization would not be needed. However, there may be times when an investigation starts out in one of these excluded categories and evolves into something that does implicate First Amendment rights. Perhaps the City could add a warning or caveat that officers involved in any investigation should remain vigilant for any changes that would trigger the need for authorization.

6. **Form: Authorization for Investigations**

While the addition of the individual findings required for authorization is a positive step, this does not quite meet our objection. The Decree requires that the Director find that the collection of information or interference with First Amendment activity is unavoidable, that that every reasonable precaution has been employed and that the least intrusive techniques are used. Nothing in the form provides for findings related to what precautions are to be employed during the investigation or which techniques are to be used to ensure they are the least intrusive. We would suggest adding a separate section for this information. Perhaps these precautions and techniques could be recommended by the applying officer and signed off by the authorizing officer. A space for the authorizing officer to make a conditional authorization would also be advisable – i.e. "I authorize the investigation if the following precautions and techniques are used."

If the list of findings remains in the form, we recommend that the authorizing officer be required to initial each finding. This will reinforce requirements of the Decree with the authorizing officer at the time of authorization.

7. **Written Guidelines for the Use of Manual Social Media Searches and of Social Media Collators**

The revisions have satisfied our objections.

Thomas H. Castelli
Legal Director
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, Tennessee 37212
615-320-7142
615-645-5062 (Direct line)
www.aclu-tn.org



This email was sent by an attorney or his agent, is intended only for the addressee's use, and may contain confidential and privileged information. If you are not the intended recipient, you are hereby notified that any retention, dissemination, reproduction or use of the information contained in this email is strictly prohibited. If you have received this email in error, please delete it and immediately notify the sender by reply email. Nothing in this email should be construed as a commitment by the sender or ACLU-TN to represent the addressee in any matter. Thank you for your cooperation.

**From:** Silk, Jennie <jsilk@bakerdonelson.com>
**Sent:** Friday, March 8, 2019 1:13 PM
**To:** Mandy Floyd <mfloyd@aclu-tn.org>; Tom Castelli <tcastelli@aclu-tn.org>
**Cc:** Glover, R. Mark <mglover@bakerdonelson.com>; Tullis, Mary Wu <mtullis@bakerdonelson.com>
**Subject:** Emails from Mark

Hi Mandy and Tom,

Attached is an email from Mark Glover sent to you guys on Monday.  We haven't heard back from you guys on the redlined documents, and it unusual for us not to get a response from you.  We are just worried that you may not be receiving Mark's emails for some reason.

Please let us know when you get a chance.  We are hopeful that we can work together to narrow down some of the issues before the Court.

Thanks!

**Jennie Vee Silk**
Associate

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
2000 First Tennessee Building
165 Madison Avenue
Memphis, TN 38103

Phone  901.577.8212
Fax      901.577.0812
JSilk@bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC represents clients across the U.S. and abroad from offices in Alabama, Florida, Georgia, Louisiana, Maryland, Mississippi, South Carolina, Tennessee, Texas, Virginia and Washington, D.C.

NOTICE: This electronic mail transmission with any attachments may constitute an attorney-client communication, protected health information (PHI) or other confidential information that is in fact confidential, legally protected from disclosure and/or protected by the attorney-client privilege. If you are the intended recipient, please maintain confidentiality and be aware that forwarding this e-mail to others may result in a waiver of these protections and privileges and regardless electronic communications may be at times illegally accessed and viewed. If you are not the intended recipient, this e-mail is not intended for transmission to you, nor to be read, reviewed, used, distributed or even received by you or any other unauthorized persons. If you have received this electronic mail transmission in error, please double delete it from your system immediately without copying, reading or disseminating it, and notify the sender by reply e-mail, so that our address record can be corrected. Thank you very much.