# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ACLU OF TENNESSEE, INC., )<br> )<br> )<br>  Intervening Plaintiff, )<br> )<br>v. )<br> )<br>CITY OF MEMPHIS, TENNESSEE )<br> )<br>  Defendant. ) | No. 2:17-cv-2120-JPM-jay |

**JULY 2019 QUARTERLY REPORT OF THE INDEPENDENT MONITOR**

Edward L. Stanton III (TN BPR #18904)
BUTLER SNOW LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
Telephone:  (901) 680-7200
Facsimile: (901) 680-7201
Email: Edward.Stanton@butlersnow.com

*Independent Monitor*

**TABLE OF CONTENTS**

I. INTRODUCTION & EXECUTIVE SUMMARY ........................................................... 1

II. OVERVIEW OF THE MONITORING TEAM'S ACTIVITIES ............................................. 1

III. PROGRESS TOWARDS NINETY-DAY GOALS .................................................. 4

    A.    Review of the MPD's Policies, Procedures, & Training Materials. ....................... 4

        1.    The Current Status of the City's Policies, Procedures, and Training Materials. ............................................................................... 5

        2.    Recommendations Regarding the City's Hypotheticals. ............................ 8

        3.    Real-Time RFAs for Discrete Action by MPD. ......................................... 9

    B.    New Process for Authorizing Investigations That May Incidentally Result in the Collection of First Amendment Information ................................... 9

    C.    Auditing & Ongoing Compliance with the Kendrick Consent Decree. ........................................................................................... 10

IV. PUBLIC ENGAGEMENT ............................................................................. 10

V. CONCLUSION ........................................................................................ 13

APPENDIX OF DOCUMENTS REFERENCED IN THIS REPORT ......................................... 14

# I.
# INTRODUCTION & EXECUTIVE SUMMARY

This Second Quarterly (Q2) Report follows the Monitoring Team's Interim and First Quarterly (Q1) Reports (ECF Nos. 197, 205), and the Court's April 23, 2019, hearing on the progress of the City's efforts to comply with the *Kendrick* Consent Decree.[1, 2] At that hearing, the Court Ordered the Monitoring Team to submit the following: by May 7, 2019, a list of goals to be accomplished within ninety days; by May 23, 2019, a joint public engagement plan with Intervening Plaintiff ACLU of Tennessee, Inc. (ACLU-TN), and Defendant City of Memphis (City); and by July 24, 2019, a Q2 Report that tracks the parties' and the Monitoring Team's "progress towards the accomplishment of established goals." (Order, April 23, 2019, ECF No. 203 at 2.) The ninety-day goals (ECF No. 208) and joint public engagement plan (ECF No. 211) were submitted as Ordered. This Q2 Report now describes the progress towards those goals and implementation of the public engagement plan. It begins with an overview of the Monitoring Team's activities since the April 23 hearing, addresses each of the four ninety-day goals in turn, and concludes with a discussion of the Monitoring Team's community-engagement efforts.

# II.
# OVERVIEW OF THE MONITORING TEAM'S ACTIVITIES

As of May 2, 2019, when the Monitoring Team's Q1 Report was filed, the Monitoring Team had done the following:

---

[1] The decree is ECF No. 3 in Case No. 2:76-cv-000449 before this Court and has been made publicly available on the Monitoring Team's website, www.memphispdmonitor.com.

[2] The larger context of this lawsuit, the appointment of Edward L. Stanton III as Independent Monitor, and the Monitoring Team's activities from December 21, 2018, when Mr. Stanton was appointed, to April 23, 2019, when the Court held its first hearing on the progress of the Monitoring Team, are captured in Mr. Stanton's Independent Monitor Submission (ECF No. 180-1) and in the Interim and First Quarterly Reports of the Monitoring Team (ECF Nos. 197, 205), all available on www.memphispdmonitor.com.

1

- Requested, received, and reviewed 1.46 GB of data from the City—the equivalent of between 125,000 and 175,000 pages of text.

- Exchanged more than 1200 internal and external emails.

- Conducted 15 weekly Monitoring Team conference calls and additional ad hoc calls as necessary, as well as more than a dozen weekly and ad hoc calls with legal counsel for the City and MPD.

- Attended two in-person meetings on February 11-12 and April 22-23, 2019, and two video conference meetings on March 5 and March 27, 2019.

- Met in-person with more than a dozen members of the MPD Command Staff, Real Time Crime Center, and Training Academy.

- Tracked more than 500 hours of Monitoring Team time in tenths of an hour.

- Coordinated with Legility, LLC (formerly Counsel on Call, website available here), Three(i) (website available here), and other vendors to establish a document management system accessible to the entire Monitoring Team and to design and establish the Monitoring Team's website, which was to go live, with the Court's approval, in the next ninety (90) days. (As has now occurred.)

- Produced three separate sets of analyses (*see* ECF Nos. 197-1, 197-2 & 197-3), and two reports (*see* ECF Nos. 197, 205).

- Presented a progress report at the hearing on April 23, 2019, by Independent Monitor Edward L. Stanton III, Deputy Monitor Jim Letten, and every subject-matter expert (SME) on the Monitoring Team.

These efforts have continued and expanded since May 2, 2019. In the eighty-four days between the Q1 Report and this report, the Monitoring Team has done the following:

- Requested, received, and reviewed more than 1,000 additional pages of documents from the City (on May 7, June 7, and July 19, 2019).

- Exchanged more than 1,000 internal and external emails.

- Conducted 12 weekly Monitoring Team conference calls and additional ad hoc calls as necessary, as well as more than a dozen weekly and ad hoc calls with legal counsel for the City and MPD.

2

- Conducted a conference call with the City and the ACLU-TN on May 10, 2019.

- Conducted in-person Monitoring Team meetings on July 11 and 12, 2019.

- Met in-person with Lt. Col. David L. Rudolph, who oversees the MPD Training Academy, on May 7, 2019, and with Deputy Chief Don Crowe, whose responsibilities include overseeing information technology, and Police Legal Counsel Zayid Saleem, Esq., on May 16, 2019.

- Tracked more than 300 hours of Monitoring Team time in tenths of an hour. (*See, e.g.,* Sealed ECF No. 213 and ECF No. 215.)

- Coordinated with the Court, Three(i) (website available here), and local media to launch the Monitoring Team's website, www.memphispdmonitor.com, which went live on July 2, 2019. Press releases announcing the website and the Monitoring Team's first community forum were issued on July 2 and 11, 2019. (*See* Press Releases, attached here as **Exhibit 1**.)

- Hosted the Monitoring Team's first community forum on July 11, 2019, at Mississippi Boulevard Christian Church, 70 N. Bellevue Blvd., Memphis, TN 38104.[3]

- Met in-person with community members Paul Garner, Jimmy Hollingsworth, Hunter Demster, Aaron "Al" Lewis, and Charles Belenky.[4]

- Conferred with more than a dozen community members via phone, email, and www.memphispdmonitor.com.

- Participated in interviews with local media.[5]

- Provided real-time authorizations for discrete MPD activity on three occasions: May 9, 2019;[6] June 12, 2019;[7] and July 12, 2019.[8]

---

[3]   The forum was live-streamed and remains available for viewing on www.memphispdmonitor.com and on YouTube (link here).

[4]   All community members identified here expressly consented to the use of their names in this report.

[5]   *See, e.g.,* "Live at 9: Monitoring MPD," and "Team Monitoring MPD Conduct to Speak at Public Forum," on local Channel 3 (links here and here); and "Stanton Says Monitoring of Police Surveillance Ban Comes with Tension," in the *Daily Memphian* (link here).

[6]   (*See* May 9, 2019, Letter from E. Stanton to B. McMullen, attached as **Exhibit 2**. The Monitoring Team requests that this letter be sealed.)

- Participated in a video conference with members of Facebook's legal, public policy, and law enforcement teams on July 19, 2019.

These and ongoing efforts are described in greater detail where relevant to the ninety-day goals and the joint community engagement plan discussed below.

## III.
## PROGRESS TOWARDS NINETY-DAY GOALS

The core of this report are the Monitoring Team's four ninety-day goals, submitted to the Court on May 7, 2019 (*see* ECF No. 203), and filed on May 13, 2019 (*See* ECF No. 208). The Monitoring Team's progress on the first three goals—(1) review of the Memphis Police Department (MPD)'s policies, procedures, and training materials, (2) creation of an authorization process for investigations that may incidentally result in the collection of First Amendment information, and (3) an auditing and compliance program to ensure the MPD's ongoing compliance with the *Kendrick* Consent Decree (ECF No. 3, Case No. 2:76-cv-000449)—is summarized immediately below but reflected in full in **Exhibits 3** and **4** to this report.[9] The final goal, implementation of a public engagement plan, is discussed below in § IV.

### A.     Review of the MPD's Policies, Procedures, & Training Materials.

The Monitoring Team's review of the MPD's policies, procedures, and training materials has been ongoing since January 14, 2019, when the City of Memphis submitted existing and proposed policies, procedures, and training materials related to the *Kendrick* Consent Decree

---

[7]     (*See* Sealed ECF No. 214 at 3-4 & Ex. 2.) The Monitoring Team currently is evaluating a July 16, 2019, request for authorization (RFA) by the City and pursuing additional information related to a July 19, 2019, disclosure by the City related to the use of Facebook.

[8]     The Monitoring Team will provide additional information related to this authorization *in camera* or under seal, as the Court prefers, prior to the scheduled hearing on August 27, 2019. (*See* ECF No. 212.)

[9]     **Exhibit 4**, the Monitoring Team's proposed auditing and compliance program, is being submitted separately for the Court's consideration, and the Monitoring Team requests that the Court consider filing it, if at all, under seal.

(Submissions) to the Court. (*See* ECF Nos. 151, 152, 183 & 185.) After the ACLU of Tennessee (ACLU-TN) responded to those Submissions (*see* ECF No. 186), the City, ACLU-TN, and the Monitoring Team exchanged a series of revisions, responses, and recommendations that are captured in the Monitoring Team's Interim and Q1 Reports. (ECF Nos. 197, 205.) Also captured in those reports are the Monitoring Team's recommendations regarding certain hypothetical scenarios submitted directly to the Monitoring Team by the City.

During this review of policies, procedures, and hypotheticals, the City has made real-time requests for authorization (RFAs) from the Monitoring Team to take specific actions. Following this Court's guidance, Mr. Stanton has authorized discrete action by the MPD on three occasions: May 9, 2019; June 12, 2019; and July 12, 2019. [10, 11]

1. <u>The Current Status of the City's Policies, Procedures, and Training Materials.</u>

On June 7, 2019, the City requested additional guidance regarding the recommendations in the Monitoring Team's Interim and Q1 Reports. (*See* June 7, 2019, Letter from M. Glover to E. Stanton, attached as **Exhibit 5**.)[12] That guidance concerned eight specific issues:

- Revised DR 138;

---

[10]  At the hearing on April 23, 2019, this Court stated that the Monitoring Team has authority qua "special master" to authorize or prohibit discrete action by the City:

> The first step is always to go to the monitor's team and seek their input, but sometimes the monitor may say, on this issue we need to petition the Court on it, and that's fine. And, then, sometimes, [the City] may disagree, either one of the parties in this case might disagree with either the resolution—or the resolution, and so, in essence, it's like an appeal, but you just need to say we request the Court to review X, and we will.

(Hr'g Tr., ECF No. 207, PageID # 7189: 16-25.)

[11]  *See supra* notes 6-8 and accompanying text.

[12]  The Monitoring Team requests that, beginning with the section, "The Eleven Scenarios," Pages 10-20 of this letter be redacted, or the entire letter sealed, as the Court prefers. As the Monitoring Team noted in its Interim Report (ECF No. 197, PageID # 6850), these inquiries are sensitive, and the City has requested that access to them be restricted for public-safety reasons.

- The MPD Training Plan;

- The MPD Training PowerPoint Presentation;

- Guidelines for the Police Director's delegation of authority to authorize investigations;

- Authorization for criminal investigations that may incidentally result in the collection of First Amendment information, governed by § G of the *Kendrick* Consent Decree (§ G Investigations);

- The Authorization Form for § G Investigations;

- The MPD Social Media Policy; and

- The certification process for MPD searches of social media.

(*See* **Ex. 5** at 1-10.) The Monitoring Team will respond to these requests prior to the scheduled hearing on August 27, 2019 (*see* ECF No. 212), and will supplement this report with those responses. The status of the Monitoring Team's review of these requests, current as of July 23, 2019, is attached to this Report as **Exhibit 3**.[13]

Concurrently with its examination of the City's Submissions, and as instructed by the Court,[14] the Monitoring Team has surveyed police department policies related to social media

---

[13] For reasons described in note 12 above, the Monitoring Team requests that, beginning with the section, "The Eleven Scenarios," Pages 32-51 of **Exhibit 3** be redacted, or the entire exhibit sealed, as the Court prefers.

[14] In its Order sanctioning the City for violating the *Kendrick* Consent Decree, the Court noted that, by successfully implementing the decree, the "MPD has the opportunity to become one of the few, if only, metropolitan police departments in the country with a robust policy for the protection of privacy in the digital age." (ECF No. 151, PageID # 6278 (citing Rachel Levinson-Waldman, *Government Access to and Manipulation of Social Media: Legal and Policy Challenges*, 61 How. L.J. 523 (2018).) But the Court also observed that Memphis "is not alone in confronting the questions presented by modern surveillance." (*Ibid.*) The Court elaborated on this observation at the April 23, 2019, hearing, explaining that "Congress is starting to look at the issue of regulation and social media" and asking where the national line-drawing process between privacy rights and public safety "fit[s] into what will be appropriate [in this case]." (Hr'g Tr., ECF No. 207, PageID # 7130:24-7131:10.) The Court is concerned that Memphis be

use across the country. (*See* Comparison Chart-PD Social Media Policies, attached as **Exhibit 6**.) Guided by Public Policy and Social Media SME Rachel Levinson-Waldman (*see* ECF No. 205 at PageID # 7063-64), the Monitoring Team has concluded the following:

- Most police department policies include, at the outset, a clear statement of the purposes that social media can serve.

- Some department policies, such as the Austin, TX, policy, state that social media may be used only for "a valid law enforcement purpose," such as pre-employment background investigations, crime analysis and situation assessment reports, criminal intelligence development, or criminal investigations.

- Other policies prohibit, in addition to uses of social media that might violate the First Amendment, attempts to "seek or retain information about an individual's race, ethnicity, citizenship, place of origin, disability, gender, or sexual orientation, unless relevant to that individual's criminal conduct or activity or if required for identification."

The Monitoring Team is not aware of any Congressional activity related to these issues at present, but one draft bill is in progress.[15]

On July 19, 2019, the Monitoring Team also participated in a video conference with members of Facebook's legal, public policy, and law enforcement teams. That conference included two of Facebook's privacy and public policy managers and the leads for the Americas and North America law enforcement teams. Relevant conclusions from that conference are as follows:

---

"both in sync [with national trends] but not necessarily adopt[ ] a lower standard." (*Id.* at PageID # 7131:16-18.)

[15] This bill was developed at the Brennan Center for Justice, where Ms. Levinson-Waldman is Senior Counsel to the Liberty and National Security Program. (*See* ECF No. 205 at PageID # 7063-64.)

- All law enforcement requests to Facebook go through Facebook's law enforcement portal, which was established in 2012. A recognized law enforcement email domain—e.g., policeofficer@mpd.cityofmemphis.gov—is required to access the portal.

- Proof of a warrant, subpoena, or other legal process is necessary to obtain information via the portal. In case of an imminent threat to life or a risk of serious bodily injury, information can be obtained through the portal based on a representation that legal process will be obtained, and the law-enforcement officer must follow up with proof of that process.

- Facebook's real-name rule applies equally to civilians and law enforcement. Facebook takes down or disables millions of fake accounts every day—often bots or scam accounts, but also undercover law enforcement accounts—and takes affirmative steps to educate law enforcement agencies about what they are and are not allowed to do on the platform.

- Any Facebook user's name, cover photo, and profile photo are always available; additional availability depends on an individual user's privacy settings. Posts in public groups are generally visible; closed and secret groups are more restricted. *See, e.g.,* "What Are the Privacy Settings for Groups," https://www.facebook.com/help/220336891328465?helpref=about_content.

- As a default matter, Facebook Live streams are accessible to the public, but access can be limited to specific audiences—e.g., a user's entire friend group or a group of specific people.

- Facebook proactively reports certain information—such as child sexual exploitative imagery—to law enforcement and has a process for informing law enforcement when a user appears likely to harm herself or others.

Many of the concerns that came out of the Monitoring Team's first community forum, discussed below in § IV, had to do with MPD's use of Facebook and other social media and the specific uses that the Court held to violate the *Kendrick* Consent Decree.

    2.    <u>Recommendations Regarding the City's Hypotheticals.</u>

The status of the Monitoring Team's review of the City's submitted hypotheticals, current as of July 23, 2019, is included on pages 32-51 of **Exhibit 3**. The Monitoring Team

8

requests that those pages be redacted, or the entire exhibit sealed, for the public-safety reasons identified in the team's Interim Report.[16]

### 3. Real-Time RFAs for Discrete Action by MPD.

At the hearing on April 23, 2019, the Court expressly authorized the Monitoring Team qua "special master" to authorize or prohibit specific action by the MPD.[17] Since the hearing and based on that authorization, Mr. Stanton has granted RFAs for specific action on three occasions: May 9, 2019; June 12, 2019; and July 12, 2019.[18] The May 9, 2019, authorization is described in **Exhibit 2** to this report, which the Monitoring Team has requested be sealed. Similarly, the June 12, 2019, authorization is described at Sealed ECF No. 214 at 3-4 & Ex. 2. The Monitoring Team will provide additional information related to the third, July 12, 2019, authorization *in camera* or under seal, as the Court prefers, prior to the scheduled hearing on August 27, 2019. (*See* ECF No. 212). The Monitoring Team has concerns related to that request, as well as follow-up questions for the City related to the June 12, 2019, RFA, all of which will be communicated to the City and the Court prior to August 27, 2019. The Monitoring Team also is evaluating a July 16, 2019, request for authorization (RFA) by the City and pursuing additional information related to a July 19, 2019, disclosure by the City related to the use of Facebook.[19]

### B. New Process for Authorizing Investigations That May Incidentally Result in the Collection of First Amendment Information

Please see Pages 5-7 of **Exhibit 5** and Pages 11-19 of **Exhibit 3**.

---

[16] *See supra* notes 12 and 13 and accompanying text.

[17] *See supra* note 10 and accompanying text.

[18] *See supra* notes 6-8 and accompanying text.

[19] One of the three Core Principles to which Mr. Stanton and the Monitoring Team have pledged to remain faithful is "rigorous transparency." (*E.g.*, ECF No. 205 at PageID # 7065.) In light of that Core Principle, the Monitoring Team requests that the Court consider, and perhaps put to the City, when and under what circumstances RFAs and similar inquiries by the City may be made available to the public without compromising public safety.

9

### C. Auditing & Ongoing Compliance with the *Kendrick* Consent Decree.

Please see the Monitoring Team's proposed Auditing and Compliance plan for the MPD, which will be separately submitted, in camera or under seal as the Court prefers, as **Exhibit 4.**

## IV.
## PUBLIC ENGAGEMENT

In the Monitoring Team's ninety-day goals (*see* ECF No. 208 at PageID # 7217) and joint public engagement plan with the City and the ACLU-TN (*see generally* ECF No. 211), the team identified four community engagement efforts that would consist of (1) a public website, (2) media exposure, (3) community forums, and (4) focus groups. The public website—www.memphispdmonitor.com—was submitted to the Court on June 18, 2019, for review; launched on July 2, 2017; and announced in print and digital media via press release. (*See* **Ex. 1**.) The Monitoring Team also has participated in multiple media interviews,[20] and the first community forum, held on July 11, 2019, at Mississippi Boulevard Christian Church, was attended by media, live streamed, and remains available for viewing online.[21] Focus groups are currently being scheduled as suggested by Court during the hearing on April 23, 2019 (*see* ECF No. 207, PageID # 7179-80), and as identified in the ninety-day goals (ECF No. 208, PageID # 7217) and the joint public engagement plan. (ECF No. 211, PageID # 7282).

At the forum on July 11, 2019, community members cited a litany of frustrations with the City, the MPD, and the Monitoring Team. Many were suspicious of the Monitoring Team and its relationship to the City, and there was considerable confusion about the scope of the team's mandate and the role of community members in fulfilling that mandate. At one point, community members asked police officers who were attending the forum to leave. Before that, community

---

[20]   *See supra* note 5 and accompanying text and *infra* note 22 and accompanying text.

[21]   *See supra* note 3 and accompanying text.

members asked to see the notes taken by one officer. Frustration led some attendees to leave before the forum was over, although others remained after the forum ended to speak with the Monitoring Team.[22]

What has come out of the forum, however, has been encouraging. Within two business days, Mr. Stanton personally had contacted every person who provided a phone number or email address at the forum. More than a dozen community members since have corresponded with the Monitoring Team via phone, email, and www. memphispdmonitor.com. Five community members—Paul Garner, Jimmy Hollingsworth, Hunter Demster, Aaron Lewis, and Charles Belenky[23]—have met one-on-one with the Monitoring Team and have referred other community members for follow-up meetings. They and other community members also have agreed to participate in the upcoming focus groups. Lessons learned from these meetings, the focus groups, and the first forum will inform the second, which will be scheduled before the end of this year. (*See* ECF No. 211, PageID #7282.)

But community members already have offered several specific recommendations:

- **(A)** The Monitoring Team should be broadened to include one or more "lay" community members. This broadening would help establish trust between the Monitoring Team and the community and facilitate better communication between the two.

- **(B)** Subsequent community forums should include an educative component. Not enough time at the first forum was devoted to explaining (1) what the *Kendrick* Consent Decree is and requires; (2) how the City violated the decree; (3) the Monitoring Team's role in helping bring the City into compliance with the decree; (4) community members' role in facilitating compliance and reporting non-compliance.

---

[22] Media coverage of the forum on local Channel 5 ("MPD Consent Decree Meeting Disintegrates") and the local public radio affiliate, WKNO ("MPD Oversight Committee Faces Skeptical Public"), is available here and here. *See also supra* note 5 and accompanying text.

[23] *See supra* note 4 and accompanying text.

- **(C)** Although focus groups are contemplated by the joint public engagement plan, subsequent community forums should include small groups sessions. Such sessions would facilitate better communication and diminish any apparent barriers between the Monitoring Team and community members.

- **(D)** In addition to a website, the Monitoring Team should host and regularly update a Facebook page or other social media. Many people do not read the news.

- **(E)** Hard copies of documents discussed at community forums, focus groups, and any one-on-one meetings should be made available to attendees. Not everyone has access to the Internet.

- **(F)** The Monitoring Team should do a better job of discussing the subjects in **(B)** and should not overly rely on or refer people to www.memphispdmonitor.com

- **(G)** The Monitoring Team should participate in Facebook Live or other online streaming question-and-answer sessions with community members.

- **(H)** The Monitoring Team should coordinate with the ACLU-TN, the Mid-South Peace and Justice Center, and other social justice organizations to ensure convenient timing and locations for future community forums, focus groups, and other community outreach.

- **(I)** Community members want more information on MPD's use of social media. In particular, community members are aware that the MPD's use of the "Bob Smith" account was held by the Court to violate the *Kendrick* Consent Decree, but also understand that several other undercover accounts improperly being used by the City were disabled. They want to know the names of those other accounts.[24]

The Monitoring Team commends these recommendations to the Court's discretion.

---

[24] The July 19, 2019, disclosure by the City, referenced in note 7 and § III(A)(3), above, is related to this request by community members.

## V.
## CONCLUSION

Mr. Stanton and the Monitoring Team look forward to discussing this report and any subsequent developments at the hearing on August 27, 2019. All members of the Monitoring Team will be present for the hearing.

RESPECTFULLY SUBMITTED, this 24th day of July 2019,

/s/ *Edward L. Stanton III*
Edward L. Stanton III (TN BPR #18904)
BUTLER SNOW LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
Telephone:  (901) 680-7200
Facsimile: (901) 680-7201
Email: Edward.Stanton@butlersnow.com

***Independent Monitor***

13

## APPENDIX OF DOCUMENTS REFERENCED IN THIS REPORT

| Doc. | Description | Pages |
|---|---|---|
| **Ex. 1** | July 2 and July 11, 2019, Press Releases | 3 |
| **Ex. 2** | May 9, 2019, Letter from E. Stanton to B. McMullen | 3, 9 |
| **Ex. 3** | Monitoring Team Recommendations as of July 23, 2019 (not yet final) | 6, 8, 9 |
| **Ex. 4** | Monitoring Team Proposed Auditing and Compliance Plan (to be submitted separately) | 4, 10 |
| **Ex. 5** | June 7, 2019 Letter from M. Glover to E. Stanton | 5, 9 |
| **Ex. 6** | Comparison Chart – PD Social Media Policies | 7 |
| ECF No. 3, Case No. 2:76-cv-000449 | *Kendrick* Consent Decree | 1, 4 |
| ECF No. 151 | Opinion and Order of October 26, 2018 | 5, 6 |
| ECF No. 152 | Order Memorializing Sanctions (October 29, 2018) | 5 |
| ECF No. 180 | Order Docketing Materials Submitted by Independent Monitor (January 7, 2019) | 1 |
| ECF No. 183 | Sealed Document Court-Ordered Search Terms (January 14, 2019) | 5 |
| ECF No. 185 | Order Docketing City Submissions | 5 |
| ECF No. 186 | ACLU-TN Objections to City Submissions | 5 |
| ECF No. 197 | Interim Report | 1, 2, 5 |
| ECF No. 203 | April 23, 2019, Order | 1, 4 |

| Doc. | Description | Pages |
|---|---|---|
| ECF No. 205 | Q1 Report | *passim* |
| ECF No. 207 | Transcript of April 23, 2019, Hearing | 5, 6, 10 |
| ECF No. 208 | Ninety Day Goals | 1, 4, 10 |
| ECF No. 211 | Joint Public Engagement Plan | 1, 10, 11 |
| ECF No. 212 | Notice of August 27, 2019, Hearing | 4, 6, 9 |
| ECF No. 213 | Sealed Order on Costs of Independent Monitor for May 2019 (June 14, 2019) | 3 |
| ECF No. 214 | Sealed Search Terms and Related RFA by the City (July 16, 2019) | 4, 9 |
| ECF No. 215 | Order on June 2019 Costs of Independent | 3 |

48589630.v1

48592676.v1