# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ACLU OF TENNESSEE, INC., | ) |
| | ) |
| | ) |
| Intervening Plaintiff, | ) |
| | ) No. 2:17-cv-02120-JPM-jay |
| v. | ) |
| | ) |
| CITY OF MEMPHIS, TENNESSEE | ) |
| | ) |
| Defendant. | ) |

## NOVEMBER 2019 QUARTERLY REPORT OF THE INDEPENDENT MONITOR

Edward L. Stanton III (TN BPR #18904)
BUTLER SNOW LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: Edward.Stanton@butlersnow.com

*Independent Monitor*

**TABLE OF CONTENTS**

I. INTRODUCTION & EXECUTIVE SUMMARY .......... 1

II. OVERVIEW OF THE MONITORING TEAM'S ACTIVITIES .......... 1

III. THE COURT'S DIRECTIONS TO THE MONITORING TEAM AT THE APRIL AND AUGUST 2019 HEARINGS .......... 3

IV. REAL-TIME REQUESTS FOR AUTHORIZATION .......... 6

V. PUBLIC ENGAGEMENT .......... 7

VI. CONCLUSION .......... 12

APPENDIX OF DOCUMENTS REFERENCED IN THIS REPORT .......... 13

# I.
# INTRODUCTION & EXECUTIVE SUMMARY

This Third Quarterly (Q3) Report follows four prior reports by the Monitoring Team:

- Interim Report (ECF No. 197);

- First Quarterly (Q1) Report (ECF No. 205);

- Second Quarterly (Q2) Report (ECF No. 219); and

- Q2 Supplemental Report (Q2 Supplement) (*see* **Exhibit 1**—submitted on August 26, 2019, but not yet docketed).

It fulfills four goals. ***First***, this Q3 Report provides an overview of the Monitoring Team's activities since August 26, 2019, the date that the team submitted its Q2 Supplement to the Court (**Ex. 1**). ***Second***, this report addresses the discrete tasks that the Court directed the Monitoring Team to complete at hearings on April 23, 2019, and August 27, 2019, concerning the progress of the Monitoring Team's efforts to help restore Defendant City of Memphis (City) to compliance with the *Kendrick* Consent Decree.[1] ***Third***, the report identifies the various requests for authorization (RFAs) from the City to which the Monitoring Team has responded. ***Fourth and finally***, the report discusses the Monitoring Team's community engagement efforts since August 26, 2019.

# II.
# OVERVIEW OF THE MONITORING TEAM'S ACTIVITIES

Since the submission of its Q2 Supplement on August 26, 2019, the Monitoring Team has done the following:

- Exchanged more than 1,000 internal and external emails.

---

[1] The decree is ECF No. 3 in Case No. 2:76-cv-000449 before this Court and has been made publicly available on the Monitoring Team's website, www.memphispdmonitor.com. All docketed and unsealed reports of the Monitoring Team and selected Orders of the Court are available on www.memphispdmonitor.com.

1

- Conducted 12 weekly Monitoring Team conference calls and additional ad hoc calls as necessary; participated in more than a dozen weekly and ad hoc calls with the City; and joined scheduled and ad hoc calls with Intervening Plaintiff ACLU of Tennessee, Inc. (ACLU-TN).

- Conducted a conference call with the City and the ACLU-TN on October 21, 2019.

- Conducted in-person Monitoring Team meetings on August 27, 2019, and November 7, 2019.

- Met in-person with MPD Deputy Chief Don Crowe, whose responsibilities include overseeing information technology, at the Real Time Crime Center regarding the cameras at City Hall.

- Tracked more than 650 hours of Monitoring Team time. (*See, e.g.,* ECF Nos. 226, 242, 253.)

- Hosted a second community engagement forum on November 7, 2019, at Mississippi Boulevard Christian Church, 70 N. Bellevue Blvd., Memphis, TN 38104.[2]

- Conferred via email, telephone, and www.memphispdmonitor.com with more than a dozen community members.[3]

- Met in-person with members of the Memphis Shelby County Crime Commission and the Memphis Interfaith Coalition for Action and Hope (MICAH).

- Consulted with the Federal Bureau of Investigation (FBI) regarding national social media policies.

- Interviewed three candidates to facilitate the focus groups in this matter. (*See, infra,* **Exhibit 4**.)

---

[2]   The forum was live-streamed on www.memphispdmonitor.com and remains available for viewing on YouTube (link here).

[3]   Not all of these community members have given the Monitoring Team permission to identify them by name. To facilitate transparency while preserving confidentiality, the team identifies those community members by initials only: K.H., D.M., D.R., F.N., H.D., C.H., J.M., E.L., G.M., D.T., C.B., M.G., J.H.

- Participated in a FaceBook Live session with Jimmy Hollingsworth on November 6, 2019.[4]

- Participated in interviews with local media.[5]

- Submitted to the Court on September 26, 2019, and October 4, 2019, statements from community members present at the August 27, 2019, hearing.

- Provided real-time responses to RFAs for discrete MPD activity or clarifications regarding the same on ten occasions: August 29, 2019 (2); September 6, 2019; October 4, 2019; October 11, 2019; October 16, 2019; October 21, 2019; October 23, 2019; and November 9, 2019; November 13, 2019.[6]

- Raised with the Court on October 4, 2019, and, at the Court's direction, shared with the ACLU-TN later that same day, an issue brought to the Monitoring Team's attention by community members.

These and ongoing actions by the Monitoring Team are described in greater detail where relevant to the discrete tasks, RFAs, and community-engagement efforts discussed below.

## III.
## THE COURT'S DIRECTIONS TO THE MONITORING TEAM AT THE APRIL AND AUGUST 2019 HEARINGS

This Court has held two hearings on the status of the Monitoring Team's efforts to help restore the City to compliance with the Kendrick Consent Decree, on April 23, 2019, and August 27, 2019. At the April hearing, the Court Ordered the Monitoring Team to submit the following documents: (1) by May 7, 2019, a list of goals to be accomplished within ninety days; (2) by May 23, 2019, a joint public engagement plan with the ACLU-TN and the City; and (3) by July

---

[4] Mr. Hollingsworth expressly consented to the use of his name in the Monitoring Team's reports.

[5] *See, e.g.,* "Retro Local: The History of the Memphis Kendrick Consent Decree" (link here); "Residents Leave with Unanswered Questions Following Memphis Police Department Monitoring Team Meeting" (link here); "As MPD Crafts Social Media Surveillance Policy, Activists Want Assurances" (link here).

[6] The Monitoring Team also received an RFA from the City on November 12, 2019, to which the team has not yet responded.

3

24, 2019, a Q2 Report that tracked the parties' and the Monitoring Team's "progress towards the accomplishment of established goals." (Order, April 23, 2019, ECF No. 203 at 2.) The ninety-day goals (ECF No. 208), joint public engagement plan (ECF No. 211), and Q2 Report (ECF No. 219) all were submitted as Ordered.

At the August hearing, the Monitoring Team identified three "next steps": (1) creating a compliance plan for the City; (2) implementing the compliance plan following an audit of the Memphis Police Department (MPD)'s investigative policies, protocols, and training guidelines; and (3) putting together community focus groups. (Order, Sept. 5, 2019, ECF No. 225.) Additionally, the Court set November 21, 2019, as the date for a third hearing in this matter and directed the Monitoring Team to be prepared at that time to discuss the social-media monitoring policies of various federal agencies as a supplement to the survey of police department policies that the Monitoring Team submitted as Exhibit 6 to the Q2 Report (ECF No. 219-1, PageID # 7564). The Monitoring Team's progress on each of these issues is as follows:

- Creating a Compliance Plan: Consistent with a separate Order of the Court (ECF No. 216), the Monitoring Team submitted a proposed Audit & Compliance Plan for the MPD on August 2, 2019.[7] (*See* **Exhibit 2** (the plan has not yet been docketed).)

- Auditing MPD's Policies, Protocols, and Training Guidelines: On August 26, 2019, the Monitoring Team submitted as Exhibit A to its Q2 Supplement (**Ex. 1**) its final responses to the City's outstanding questions regarding the policies and procedures that the City originally submitted to the Court on January 14, 2019.[8] (*See* ECF No. 152.) The Monitoring Team subsequently notified the Court via letter on October 23, 2019 (**Exhibit 3**), that all outstanding issues except one regarding those policies and procedures either had been resolved or separately raised with the Court. The Court's recent Order denying the City's motion for immediate modification of the *Kendrick*

---

[7]   The plan was referenced as Exhibit 4 to the Q2 Report (*see* ECF No. 219, PageID # 7582 & n. 9, PageID # 7588; ECF No. 219-1, PageID # 7552) but submitted separately on August 2, 2019.

[8]   Draft, but incomplete, responses were submitted to the Court as Exhibit 3 to the Q2 Report. (ECF No. 219-1, PageID # 7521 (partially filed under seal).)

4

Consent Decree (ECF No. 250; *see* ECF No. 227) likely resolves that remaining issue.

- Focus Groups: On October 8, 2019, the Monitoring Team requested via letter (**Exhibit 4**), and with the consent of the City and the ACLU-TN, additional time to complete the focus-group portion of the joint public engagement plan (ECF No. 211). The Court granted that request on October 23, 2019. (ECF No. 241.) On October 29, 2019, the Monitoring Team formally retained Dr. Sheila Peters of Fisk University to conduct and analyze the focus groups. (*See* Expert Retention Letter, attached as **Exhibit 5**.) Dr. Peters (bio [here](#)) is a licensed clinical psychologist and professor, trained at Vanderbilt University, whose expertise specifically includes biased-based policing and community perceptions. She has proposed a schedule, consistent with the Court's Order (ECF No. 241), that will culminate in the submission of a final report regarding the focus groups in April 2020. (*See* **Ex. 5**, Exhibit A.)

- Federal Social-Media Monitoring Policies: Included as **Exhibit 6** to this Q3 Report is a chart, similar to Exhibit 6 to the Q2 Report, that surveys the social media policies of the following federal agencies:

    o Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF);
    o Drug Enforcement Administration (DEA);
    o Department of Homeland Security (DHS);
    o Federal Bureau of Investigation (FBI);
    o Federal Emergency Management Agency (FEMA);
    o Internal Revenue Service Criminal Investigations (IRS);
    o United States Marshals Service (Marshals Service);
    o United States Postal Inspection Service (Postal Inspection Service);
    o United States Secret Service (Secret Service); and
    o Social Security Administration (SSA).

(**Ex 6**.) The exhibit also includes a cover memorandum that explains the methodology of the survey. (*Ibid.*)

The Court also invited more direct public participation at the August hearing by requesting that interested community members submit statements about their concerns to the Court through the Monitoring Team. The Monitoring Team submitted all such statements that it received, from six community members in total, on September 26 and October 4, 2019. (*See* Letters to the Court, attached as **Exhibit 7**.)

## IV.
## REAL-TIME REQUESTS FOR AUTHORIZATION

At the hearing on April 23, 2019, the Court expressly authorized Mr. Stanton qua "special master" to authorize or prohibit specific action by the MPD.[9] Based on that authorization, Mr. Stanton has responded to RFAs for specific action on ten occasions since August 26, 2019, granting some, denying others, and clarifying the rest: August 29, 2019 (2); September 6, 2019; October 4, 2019; October 11, 2019; October 16, 2019; October 21, 2019; October 23, 2019; and November 9, 2019; November 13, 2019.[10]

Rather than duplicate discussion of the issues raised by the RFAs, this report attaches the relevant correspondence for each RFA as follows:

- August 29, 2019 (**Exhibit 8**).

- August 29, 2019 (**Exhibit 9**).

- September 6, 2019 (**Exhibit 10**).

- October 4, 2019 (**Exhibit 11**).

- October 11, 2019 (**Exhibit 12**).

- October 16, 2019 (**Exhibit 13**).

---

[9]  As the Court explained,

> The first step is always to go to the monitor's team and seek their input, but sometimes the monitor may say, on this issue we need to petition the Court on it, and that's fine. And, then, sometimes, [the City] may disagree, either one of the parties in this case might disagree with either the resolution—or the resolution, and so, in essence, it's like an appeal, but you just need to say we request the Court to review X, and we will.

(Hr'g Tr., ECF No. 207, PageID # 7189: 16-25.)

[10]  The Monitoring Team also received an RFA from the City on November 12, 2019, to which the team is in the process of responding.

6

- October 21, 2019 (**Exhibit 14**).

- October 23, 2019 (**Exhibit 15**).

- November 9, 2019 (**Exhibit 16**).

- November 13, 2019 (**Exhibit 17**).

Similarly, on October 4, 2019, the Monitoring Team raised with the Court, and, at the Court's direction, shared with the ACLU-TN later that same day, an issue brought to the Monitoring Team's attention by community members. That issue was the MPD's handling of a Labor Day parade. Mr. Stanton had sought and obtained from the City an explanation of the MPD's conduct, after which he felt that the Court should be made aware of that conduct. All correspondence regarding that issue is included with this Q3 Report as **Exhibit 18**.

## V.
## PUBLIC ENGAGEMENT

As the Court is aware, in the Monitoring Team's ninety-day goals (*see* ECF No. 208, PageID No. # 7217) and joint public engagement plan with the City and the ACLU-TN (*see generally* ECF No. 211), the team identified four kinds of community-engagement efforts that would consist of (1) a public website, (2) media exposure, (3) community engagement forums, and (4) focus groups. As to the first, second, and fourth efforts:

- The public website—www.memphispdmonitor.com—was submitted to the Court on June 18, 2019, for review; launched on July 2, 2019; and announced in print and digital media via press release. The Monitoring Team has continued to update the website, posting there the docketed and unsealed reports that the team has submitted to the Court, as well as selected Court Orders that have been issued, unsealed, or later released to the public. The team also posts upcoming events on the "Key Dates" page of the site, in tandem with press releases, email blasts, and individual phone calls to community members with whom the Monitoring Team has met one-on-one.

7

- Team members also have continued to participate in interviews with local media.[11]

- Section III, above, details the Monitoring Team's progress regarding the timeline for focus groups.

One-on-one meetings with community members and groups, as well as contact information and distribution lists for better communication with community members, have come out of the remaining community-engagement effort: community forums. The Court will recall that several frustrations were expressed by community members at the Monitoring Team's first community forum on July 11, 2019.[12] Many were suspicious of the Monitoring Team and its relationship to the City, and there was considerable confusion about the scope of the team's mandate and the role of community members in fulfilling that mandate. At one point, community members asked police officers who were attending the forum to leave. Before that, community members asked to see the notes taken by one officer. Frustration led some attendees to leave before the forum was over, although others remained after the forum ended to speak with the Monitoring Team.[13] The Monitoring Team compiled a list of nine recommendations made by community members at the forum and included those recommendations in its Q2 Report:

- **(A)**  The Monitoring Team should be broadened to include one or more "lay" community members. This broadening would help establish trust between the Monitoring Team and the community and facilitate better communication between the two.

---

[11]  *See supra* note 5 and accompanying text.

[12]  The live-stream of that forum originally was posted on www.memphispdmonitor.com and remains available on YouTube (link here).

[13]  Media coverage of the forum on local Channel 5 ("MPD Consent Decree Meeting Disintegrates") and the local public radio affiliate, WKNO ("MPD Oversight Committee Faces Skeptical Public"), is available here and here.

8

- **(B)** Subsequent community forums should include an educative component. Not enough time at the first forum was devoted to explaining (1) what the *Kendrick* Consent Decree is and requires; (2) how the City violated the decree; (3) the Monitoring Team's role in helping bring the City into compliance with the decree; and (4) community members' role in facilitating compliance and reporting non-compliance.

- **(C)** Although focus groups are contemplated by the joint public engagement plan, subsequent community forums should include small groups sessions. Such sessions would facilitate better communication and diminish any apparent barriers between the Monitoring Team and community members.

- **(D)** In addition to a website, the Monitoring Team should host and regularly update a Facebook page or other social media. Many people do not read the news.

- **(E)** Hard copies of documents discussed at community forums, focus groups, and any one-on-one meetings should be made available to attendees. Not everyone has access to the Internet.

- **(F)** The Monitoring Team should do a better job of discussing the subjects in **(B)** and should not overly rely on or refer people to [www.memphispdmonitor.com.](www.memphispdmonitor.com.)

- **(G)** The Monitoring Team should participate in Facebook Live or other online streaming question-and-answer sessions with community members.

- **(H)** The Monitoring Team should coordinate with the ACLU-TN, the Mid-South Peace and Justice Center, and other social justice organizations to ensure convenient timing and locations for future community forums, focus groups, and other community outreach.

- **(I)** Community members want more information on MPD's use of social media. In particular, community members are aware that the MPD's use of the "Bob Smith" account was held by the Court to violate the *Kendrick* Consent Decree, but also understand that several other undercover

accounts improperly being used by the City were disabled. They want to know the names of those other accounts.[14]

(ECF No. 219, PageID # 7589-90.)

The team applied several of these recommendations to its second community forum on November 7, 2019.[15] First, half of the forum was devoted to educating community members on three subjects: (1) What does the *Kendrick* Consent Decree say? (2) What has the Monitoring Team been doing? and (3) What makes the *Kendrick* Consent Decree unique? (*See* Agenda, Handouts from Forum, attached as **Exhibit 19**.) Second, unlike the first forum, the second forum was broken into small, rotating group sessions to facilitate maximum interaction between the Monitoring Team, different members of which led each session, and community members. Third, the day before the second forum, Mr. Stanton participated in a Facebook Live session with Jimmy Hollingsworth, who attended the first forum and was one of the community members who met with the Monitoring Team one-on-one thereafter. Fourth, hard copies of the *Kendrick* Consent Decree and the other documents that each rotating session addressed were provided to all attendees.[16] (*See generally* **Ex. 19**.) Fifth and finally, the Monitoring Team coordinated with the City, the ACLU-TN, and individual community members prior to the second community forum both to publicize the forum and to ensure that the forum date did not conflict with any

---

[14] A July 19, 2019, disclosure by the City, referenced in § III(A)(3) and note 7 of the Q2 Report, is related to this recommendation. That disclosure and additional information concerning it are detailed in the Q2 Supplement. (*See* **Ex. 1** at Ex. C, pp. 5-6.) According to the City, it "investigated but ha[s] no knowledge of any other imposter accounts other than 'Bob Smith.'" (*Id.* at p. 6.)

[15] *See supra* note 2 and accompanying text.

[16] Those documents include "A Short Guide to the *Kendrick* Consent Decree," a page-and-a-half-long document that distills the consent decree into eight short paragraphs. The Monitoring Team is working on a more robust version of this document for dissemination to MPD officers and will incorporate in that version the Court's most recent rulings in its Order denying the City's motion for immediate modification of the consent decree. (*See generally* ECF No. 250.)

Civilian Law Enforcement Review Board (CLERB) meetings or other events that might address similar or related subjects. The Monitoring Team also has continued to meet with individuals and representatives of such groups as the Memphis Shelby County Crime Commission and MICAH to receive and respond to community concerns.

A recurring suggestion at the second community forum, in individual meetings with community members and group representatives, and in the statements submitted to the Court on September 26 and October 4, 2019, is for one or more community members to be added to the Monitoring Team. There appears to be a uniform impression that such an addition will facilitate transparency and increase the level of trust between the Monitoring Team and the community.

There is precedent for formal participation by community members in consent decree processes. In Baltimore, Maryland, for example, a Community Oversight Task Force is part of that city's consent decree with the federal Department of Justice.[17] Similarly, the federal consent decree regarding the New Orleans, Louisiana, Police Department includes a Police-Community Advisory Board.[18]

Such an advisory board might be useful in this case, as it could facilitate transparency and increase trust without compromising the confidentiality and subject-matter expertise inherent in and necessary to the functioning of the Monitoring Team.

As always, the Monitoring Team commits this recommendation and the others that it has received to the discretion of the Court.

---

[17]    *See* "Consent Decree Basics," Baltimore Police Department, available at https://www.baltimorepolice.org/transparency/consentdecreebasics.

[18]    *See* Amended and Restated Consent Decree Regarding the New Orleans Police Department, *available at* https://www.nola.gov/getattachment/NOPD/NOPD-Consent-Decree/2018-03-15-Amended-and-Restated-NOPD-Consent-Decree-CLEAN.pdf/.

## VI.
## CONCLUSION

Mr. Stanton and the Monitoring Team look forward to discussing this report and any subsequent developments at the hearing on November 21, 2019.

RESPECTFULLY SUBMITTED, this 20th day of November 2019,

/s/ *Edward L. Stanton III*
Edward L. Stanton III (TN BPR #18904)
BUTLER SNOW LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
Telephone:  (901) 680-7200
Facsimile: (901) 680-7201
Email: Edward.Stanton@butlersnow.com

***Independent Monitor***

## APPENDIX OF DOCUMENTS REFERENCED IN THIS REPORT

| Doc. | Description | Pages |
|---|---|---|
| **Ex. 1** | Q2 Supplement & Exhibits A-C (submitted on August 26, 2019, but not yet docketed). | *passim* |
| **Ex. 2** | Proposed Audit & Compliance Plan (submitted on August 2, 2019, but not yet docketed). | 4 |
| **Ex. 3** | October 23, 2019, Letter to the Court & Two Enclosures. | 4 |
| **Ex. 4** | October 8, 2019, Letter to the Court. | 2, 5 |
| **Ex. 5** | S. Peters Expert Retention Letter & Referenced Exhibit. | 5 |
| **Ex. 6** | Cover Memorandum & Comparison Chart – Federal Social Media Policies. | 5 |
| **Ex. 7** | Letters to the Court of September 26 and October 4, 2019 & Referenced Statements. | 5 |
| **Ex. 8** | August 29, 2019, Letter to M. Glover and M. Glover email of August 28, 2019. | 6 |
| **Ex. 9** | August 30, 2019, Email to Court & Attachments. | 6 |
| **Ex. 10** | September 6, 2019, Memorandum to the City & Referenced Exhibit. | 6 |
| **Ex. 11** | October 4, 2019, Email Exchange between B. McMullen and E. Stanton. | 6 |

| Doc. | Description | Pages |
|---|---|---|
| **Ex. 12** | October 11, 2019, Letter from E. Stanton to B. McMullen. | 6 |
| **Ex. 13** | Three Emails on October 16, 2019, and Two Emails on October 17, 2019, between B. McMullen and E. Stanton. | 6 |
| **Ex. 14** | October 21, 2019, Letter from E. Stanton to B. McMullen. | 7 |
| **Ex. 15** | October 23, 2019, Letter from E. Stanton to M. Glover. | 7 |
| **Ex. 16** | November 9, 2019, Email Exchange between B. McMullen and E. Stanton. | 7 |
| **Ex. 17** | November 13, 2019, Email Exchange between B. McMullen and E. Stanton. | 7 |
| **Ex. 18** | October 4, 2019, Email & Attachments from E. Stanton to T. Castelli. | 7 |
| **Ex. 19** | Handouts from November 7, 2019, Community Engagement Forum. | 10 |
| ECF No. 3, Case No. 2:76-cv-000449 | *Kendrick* Consent Decree | *passim* |
| ECF No. 152 | Order Memorializing Sanctions (October 29, 2018) | 4 |
| ECF No. 197 | Interim Report | 1, 2, 5 |
| ECF No. 203 | April 23, 2019, Order | 1, 4 |

14

| Doc. | Description | Pages |
|---|---|---|
| ECF No. 205 | Q1 Report | 1 |
| ECF No. 207 | Transcript of April 23, 2019, Hearing | 6, n. 9 |
| ECF No. 208 | Ninety Day Goals | 4, 7 |
| ECF No. 211 | Joint Public Engagement Plan | 4, 5, 7 |
| ECF No. 219 | Q2 Report | *passim* |
| ECF No. 219-1 | Q2 Report Exhibits | *passim* |
| ECF No. 225 | Order Following August 27, 2019, Hearing. | 4 |
| ECF No. 226 | Order on Costs of the Independent Monitor. | 2 |
| ECF No. 227 | The City's (formerly sealed) Motion for Immediate Modification of the Consent Decree. | 4-5. |
| ECF No. 241 | Order Extending the Deadline for Completion of Focus Groups. | 5 |
| ECF No. 242 | Order on Costs of the Independent Monitor. | 2 |
| ECF No. 250 | Order Denying the City's Motion for Immediate Modification of the Consent Decree. | 5, 10 |

| Doc. | Description | Pages |
|---|---|---|
| ECF No. 253 | Order on Costs of the Independent Monitor. | 2 |

50275484.v1