# EXHIBIT A

# BUTLER | SNOW

January 8, 2020

**Via Electronic Mail**

The Honorable Jon P. McCalla
U.S. District Court, Western District of Tennessee
Clifford Davis / Odell Horton Federal Building
167 North Main St., Room 942
Memphis, TN 38103
ecf_judge_mccalla@tnwd.uscourts.gov

      Re:    *ACLU-TN v. City of Memphis*, Case No. 2:17-cv-02120-JPM-jay: Proposed Social Media Policy

Dear Judge McCalla:

    Enclosed with this letter are the three Foreign Intelligence Surveillance Act (FISA) opinions that Ms. Levinson-Waldman referenced during the Telephonic Status Conference on January 2, 2020. (*See* ECF No. 273.) Two of the opinions, issued in October 2018 and September 2019, are from the FISA Court, and the third is an intermediate opinion from the FISA Court of Review, issued in July 2019. All three opinions were released as a package in October 2019.

    Because the combined length of the opinions is 200 pages, some brief discussion of the opinions and their context might be helpful to the Court.[1] The opinions concern FISA § 702, which authorizes the surveillance of foreigners but incidentally facilitates the collection of information about Americans. As the Court may be aware, the FISA warrant process requires probable cause that a target of government surveillance is a "foreign power" or an "agent of a foreign power." But § 702 requires no such predicate. Instead, the statute allows the government to surveil any person who (1) is not a U.S. citizen and (2) is located abroad, to (3) acquire "foreign intelligence information," which broadly includes "information with respect to a foreign power or foreign territory that relates to . . . the conduct of the foreign affairs of the United States."[2]

    In 2018, as commentators have noted, "the United States targeted more than 164,000 individuals and groups under Section 702, likely resulting in the mass collection of more than a

---

[1] For a more detailed discussion, please see the October 2019 article, "How the FBI Violated the Privacy Rights of Tens of Thousands of Americans," by the Brennan Center's Elizabeth Goitein, available at https://www.brennancenter.org/our-work/analysis-opinion/how-fbi-violated-privacy-rights-tens-thousands-americans.

[2] 50 U.S.C. § 1881a(a)-(b).

*Post Office Box 171443*
*Memphis, TN 38187-1443*

EDWARD L. STANTON III
901.680.7369
edward.stanton@butlersnow.com

*Crescent Center*
*6075 Poplar Avenue, Suite 500*
*Memphis, TN 38119*

T 901.680.7200 • F 901.680.7201 • www.butlersnow.com
BUTLER SNOW LLP

January 8, 2020
Page 2

billion communications."[3] But "[t]his vacuuming up of foreigners' messages means a vast number of Americans' international communications end up in government hands, too."[4] Thus, despite targeting non-Americans, the § 702 process involves the collection of a significant amount of information about Americans.

Each year, the FISA Court reviews the "targeting," "minimization," and "querying" procedures adopted by the government to limit the Fourth Amendment implications of § 702 surveillance. But the court conducts no individualized review of the targets of § 702 surveillance. And once data has been collected, it may be searched by the FBI as well as the NSA and the CIA. Further, although the NSA and CIA may query § 702 data only if the search is "reasonably likely" to return "foreign intelligence information," the FBI may do so if the search is "reasonably likely" to return "foreign intelligence information" or evidence of a crime. Critics rightly call this kind of querying a "backdoor search," because it allows the FBI to conduct warrantless searches of information about Americans that already was collected without a warrant or other showing of probable cause.

This background is relevant to the FBI's social-media protocols and my team's position that they should not be incorporated into the City's social-media policy for at least two reasons.

***First***, the enclosed FISA opinions raise questions about the FBI's compliance with what few limitations § 702 imposes. In 2018, Congress ordered the FBI to document all § 702 queries that use U.S.-person identifiers. The FBI objected to this order, however, proposing instead to track all § 702 queries without separating out the searches that involve U.S.-person identifiers. In the October 2018 opinion, the FISA Court rejected this proposal, finding it inconsistent with the plain language of the statute. The court also observed that the FBI had run "a large number" of inquiries since April 2017 for which there was not a reasonable likelihood of retrieving "foreign intelligence information" or evidence of a crime. The FBI appealed to the FISA Court of Review, which affirmed the FISA Court in July 2019, after which the Bureau submitted revised procedures. The FISA Court approved those revised procedures in the September 2019 opinion. According to that opinion, the FBI must (1) separately record § 702 queries that use U.S.-person identifiers and (2) document justifications for the queries before reviewing the information that they return.

***Second***, although the FBI encourages its agents to search § 702 data before initiating national-security investigations, a 2014 report by the Privacy and Civil Liberties Oversight Board reveals that it is common for FBI agents to query § 702 data in connection with criminal

---

[3] Granick and Gorski, "How to Address Newly Revealed Abuses of Section 702 Surveillance," *available at* https://www.justsecurity.org/66622/how-to-address-newly-revealed-abuses-of-section-702-surveillance/ (October 18, 2019).

[4] *Ibid.*

January 8, 2020
Page 3

investigations as well—including the pre-investigation "assessments" that my team specifically objects to including in the City's policy.[5]

Using the FBI's protocols as a base for the City's social-media policy would crest a slippery slope because the FBI is not bound by the *Kendrick* Consent Decree, and it was not so bound when it formulated its protocols. But the FBI's demonstrated resistance to oversight and its spotty compliance with the comparatively minimal limits on its powers make the Bureau's protocols a poor model for adoption by the City for a more fundamental reason. As the Court has now stated on several occasions, the *Kendrick* Consent Decree provides protections above the Constitutional floor. (*See e.g.*, Order, ECF No. 250, at PageID # 8405.) The FBI has proven itself unwilling or unable to comply with obligations *below* that floor. Its protocols should not now serve as guideposts for the City's social media policy or other efforts by the City to remedy violations of its own, greater legal commitments.

                              Sincerely,

                              BUTLER SNOW LLP

                              Edward L. Stanton III

ELS:blp

Encl.

cc:    R. Mark Glover, Esq.
       Bruce A. McMullen, Esq.
       Jennifer A. Sink, Esq.
       Thomas H. Castelli, Esq.
       Mandy Strickland Floyd, Esq.
       Jim Letten, Esq.
       Gadson W. Perry, Esq.

50745443.v1

---

[5] *Report on the Surveillance Program Operated Pursuant to Section 702 of the Foreign Intelligence Surveillance Act* (July 2, 2014), available at https://www.pclob.gov/library/702-Report.pdf, at p. 64.