# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ACLU OF TENNESSEE, Inc. )<br>)<br>Intervening Plaintiff, )<br>v. )<br>)<br>THE CITY OF MEMPHIS, )<br>)<br>Defendant. ) | No. 2:17-cv-02120-jpm-DKV |

## CITY OF MEMPHIS'S TRIAL MEMORANDUM

The movant, the City of Memphis ("the City"), respectfully submits this Trial Memorandum pursuant to Local Rule 16.4 of the District Court of the Western District of Tennessee in support of its Motion for Relief from Judgment or Order ("Motion to Modify") (ECF No. 124.) The City seeks modification of the consent decree entered on September 14, 1978, in the case styled *Kendrick, et al v. Chandler, et al*, No. 2:76-cv-00449 (W.D. Tenn. 1978) (hereafter, "Consent Decree") (Consent Decree, ECF 9-1), because changed circumstances surrounding technology, much of which did not exist in 1978, and police practices, which intersect with those new technologies, warrant revision and clarification of the Consent Decree.

The City and the Intervening Plaintiff, American Civil Liberties Union of Tennessee ("ACLU-TN"), have agreed to certain modifications of the Consent Decree. Those proposed modifications[1] are suitably tailored to the changed circumstances and constitute, for the most part, clarifications to the Consent Decree's protections applied to current day realities of technology and best police practices.

---

[1] The parties will separately file a Joint Notice of Filling Proposed Modified Consent Decree.

JVS 4841-9556-6783
2545600-000230

The parties extensively and fruitfully collaborated to reach these proposed modifications, and only one section of the Consent Decree remains on which the parties have been unable to reach a full agreement. The City seeks to further modify Section I of the Consent Decree to clarify that it is able to participate in joint operations with other law enforcement agencies, including receiving information from other law enforcement agencies, without violating the Consent Decree. The parties will continue working on coming to an agreement on Section I in advance of the trial.

In support thereof, the City states as follows:

## I. INTRODUCTION

The City and the Memphis Police Department ("MPD") are committed to the protection of the First Amendment rights of citizens. The jointly-proposed modifications to the Consent Decree, and the City's proposed modification to Section I, will in no way ameliorate that commitment, nor will they ameliorate the protections of the Consent Decree.

The Consent Decree should be modified to resolve ambiguities and updated to account for the significant developments in technology and law enforcement best practices that have occurred since the entry of the Consent Decree in 1978. The original parties to the Consent Decree could not possibly have contemplated these developments when they drafted the Consent Decree. Because the Consent Decree was written in 1978 but is being applied to 21st Century situations, it has been subject to vastly differing interpretations, which has led to a degree of confusion among MPD officers, the parties, and the public. Moreover, reasonable minds can, and have, differed as to what the Consent Decree does and does not allow. The City seeks modification to clarify some of those ambiguities.

The City is not seeking to eliminate any provisions of the Consent Decree, but simply to update the Decree so that it is clear and easily applicable to modern society. By updating the

Consent Decree as proposed by the parties, the City is further seeking to remedy ambiguities in its language. Moreover, the City needs a document that speaks for itself, without the need to continually seek or reference Orders of the Court and interpretations of the Monitor. Importantly, the City needs a document, and the public deserves a document, that is easily understandable by those trying to abide by it, *i.e.* its police officers, as well as the public, for which it was designed to protect.

For these reasons, the City asks the Court to adopt the jointly-proposed modifications as outlined in the Proposed Modified Consent Decree, and to modify Section I as proposed by the City.

## II. BACKGROUND AND HISTORY

On September 14, 1978, the Court entered the Consent Decree. (*See* Consent Decree, ECF 9-1).

The ACLU-TN intervened in the above-captioned case in March 2017 challenging the City's adherence to the Consent Decree. (ECF No. 16.) After a trial on the merits, the Court found the City violated the Consent Decree. (S*ee* ECF No. 151) ("October 26, 2018 Order"). Notably, the October 26, 2018 Order recognized that "the requirements of the 1978 Kendrick Litigation Consent Decree impose significant burdens on the City and the MPD." (*Id.* at PageID 6243.)

In August 2018, the City filed its Motion for Relief from Judgment or Order (ECF No. 124). Thereafter, the City believed that its Motion to Modify was premature. The City felt any modification of the Consent Decree would be best addressed after a period of attempted compliance with the Consent Decree, and after a period of operation under the supervision and oversight associated with the soon-to-be Court-appointed monitor. Once the City operated in that manner for a period of time, the City intended to revisit its Motion to Modify, if necessary. The

JVS 4841-9556-6783
2545600-000230

parties further believed that they could make significant progress on proposed joint modifications to the Consent Decree if given additional time to collaborate with each other and with the Monitor. Accordingly, on December 20, 2018, the parties filed a Joint Motion to Stay the City's Motion to Modify and/or Vacate Judgement (ECF No. 175, PageID 6523), which the Court granted. (ECF No. 178, PageID 6545.)

Since that time, the City has worked diligently with the Independent Monitor[2] to comply with the Court's sanctions in the Order and to revise its policies and procedures. In doing so, the City also presented several requests for authority ("RFAs") to the Monitor to obtain approval to act in certain situations that the City believed implicated the Consent Decree, under a literal reading of that Decree. (*See, e.g.* ECF No. 319-1, PageID 9473-9499.)

In and around September 2019, a series of findings by the Independent Monitor in response to those RFAs prompted the City to move the Court for immediate modification of Section I of the Consent Decree in the interest of public safety. (*See* ECF No. 227.) On November 13, 2019, the Court denied the City's Motion for Immediate Modification of Section I, in part because the parties had not engaged in discovery or participated in an evidentiary hearing. (ECF No. 250, PageID 8429.) The Court explained that any modification to Section I "would need to be carefully crafted after a thorough review of evidence and a finding of sufficiently changed circumstances to compel a modification. A change would need to achieve the goals of the Kendrick Consent Decree while providing the City and the Memphis Police Department flexibility to engage in the sharing of information for legitimate law enforcement purposes." (ECF No. 25, PageID 8428.)

The Court entered a new Scheduling Order on the City's Motion to Modify[3] (ECF No. 287,

---

[2] On December 21, 2018, the Court appointed Ed Stanton as Independent Monitor. (ECF No. 176.)
[3] ECF NO. 124

as amended at ECF 293), and the parties engaged in discovery. During that time, the parties began meeting in-person and "virtually" to discuss possible points of agreement that they believed were implicated by the Decree.

By April 17, 2020, the parties had developed a list of seventeen areas of discussion for modifications of the Consent Decree. The City notified the Court of these seventeen points in its Notice of Filing Pleading Regarding Jointly-Proposed Modifications to the Consent Decree (ECF No. 309, PageID 9288-90), and requested that the Court order the parties to mediation, either with a neutral mediator or the Independent Monitor, in an effort to develop a modified Consent Decree that clarified those areas of permissible conduct as outlined therein. (ECF No. 309, PageID 9290.)

On April 28, 2020, the Court granted the City's request for mediation with the Independent Monitor "in order to aid in the resolution of outstanding issues between the Parties and to narrow the issues in advance of the Modification Hearing." (ECF No. 311, PageID 9293.)

The parties subsequently engaged in multiple sessions of mediation with the Independent Monitor, and they were successful in arriving at a nearly-complete agreement on the substance of a Proposed Modified Consent Decree. The parties were unable to reach an agreement on revised language for Section I, although, even there, some recognition of the issues by both parties is apparent.

### III. LEGAL STANDARD

"A consent decree is essentially a settlement agreement subject to continued judicial policing." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). A consent decree shares the characteristics and "attributes of both a contract and of a judicial act." *Id.* (citing *United States v. ITT Cont'l Banking Co.*, 420 U.S. 223, 236 n.10 (1975)). "It is both 'a voluntary settlement agreement which could be fully effective without judicial intervention' and 'a final judicial order

Page **5** of **17**

JVS 4841-9556-6783
2545600-000230

. . . plac[ing] the power and prestige of the court behind the compromise struck by the parties.'" *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994) (quoting *Williams*, 720 F.2d at 920).

As this Court has noted, the "'scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it' or by what 'might have been written had the plaintiff established his factual claims and legal theories in litigation.'" *Vanguards*, 23 F.3d at 1017 (quoting *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 574 (1984)). (ECF No. 250, PageID 8388.)

A consent decree is subject to a Rule 60(b) motion because it is "a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 378 (1992). Rule 60(b) sets out six grounds by which a party, upon motion, may be relieved of "a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b)(1)–(6). Rule 60(b)(5) provides that a party may seek relief from a final judgment, order or proceeding on the grounds that "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).

Rule 60(b)(5) serves a particularly important function in "institutional reform litigation." *Horne*, 557 U.S. 433, 447 (2009). "[I]njunctions issued in such cases often remain in force for many years, and the passage of time frequently brings about changed circumstances—changes in the nature of the underlying problem, changes in governing law or its interpretation by the courts, and new policy insights—that warrant reexamination of the original judgment." *Id.* at 447-48.

The Supreme Court has also made clear that courts should take a flexible approach to modification under Rule 60(b)(5) in the context of institutional reform decrees. *Horne*, 557 U.S.

JVS 4841-9556-6783
2545600-000230

at 450; *Rufo*, 502 U.S. at 381; *Lorain N.A.A.C.P. v. Lorain Bd. Of Educ.*, 979 F.2d 1141, 1149 (6th Cir. 1992).

> A flexible approach allows courts to ensure that responsibility for discharging the State's obligations is returned promptly to the State and its officials when the circumstances warrant. In applying this flexible approach, courts must remain attentive to the fact that federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate federal law or does not flow from such a violation. If a federal consent decree is not limited to reasonable and necessary implementations of federal law, it may improperly deprive future officials of their designated legislative and executive powers.

*Horne*, 557 U.S. at 450 (internal citations omitted).  Indeed, "[t]he upsurge in institutional reform litigation since *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954), has made the ability of a district court to modify a decree in response to changed circumstances all the more important." *Rufo*, 502 U.S. at 380.

Additionally, such decrees implicate "sensitive federalism concerns" and involve dynamics not found in other types of litigation. *Id.*; *Missouri v. Jenkins*, 515 U.S. 70, 99 (1995). Public officials may "consent to, or refrain from vigorously opposing, decrees that go well beyond what is required by federal law," and binding later local officials to such decisions may "improperly deprive future officials of their designated legislative and executive powers." *Horne*, 557 U.S. at 448–49 (quoting *Frew v. Hawkins*, 540 U.S. 431, 441 (2004)). The court must "defer to local government administrators" when making modifications to an institutional reform decree, because such individuals have the "'primary responsibility for elucidating, assessing, and solving' the problems of institutional reform." *Id.* (quoting *Brown v. Board of Education*, 349 U.S. 294, 299 (1955)). While a decree may require such officials to "do more than is minimally requires by the Constitution, . . . a court should surely keep the public interest in mind on ruling on a request to modify based on a change in conditions making it substantially more onerous to abide by the decree." *Id.* at 392.  "To refuse modification of a decree is to bind all future officers of the State,

regardless of their view of the necessity of relief from one or more provisions of a decree that might not have been entered had the matter been litigated to its conclusion." *Id.*

Under Rule 60(b)(5), the "party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." *Rufo*, 502 U.S. at 383. Additionally, if "the party meets this standard, the court should consider whether the proposed modification is suitably tailored to the changed circumstance." *Id.* "A party seeking modification of a consent decree may meet its initial burden by showing either a significant change either in factual conditions or in law." *Id.* at 384; *Horne,* 557 U.S. at 457 (holding that Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest" (internal quotations omitted)). "Modification of a consent decree may be warranted" under Rule 60(b)(5) "when changed factual conditions make compliance with the decree substantially more onerous," "when a decree proves to be unworkable because of unforeseen obstacles," and "when enforcement of the decree without modification would be detrimental to the public interest." *Vanguards*, 23 F.3d at 1018 (quoting *Rufo*, 502 U.S. at 367).

IV. **CHANGED CIRCUMSTANCES WARRANT THE PARTIES JOINTLY-PROPOSED MODIFICATIONS, WHICH ARE SUITABLY TAILORED TO THOSE CHANGED CIRCUMSTANCES**

The Consent Decree should be modified due to changed circumstances since the entry of the 1978 decree. What has been agreed upon by the parties is, for the most part, an attempt to speak directly to technologies, practices, and circumstances existing in the modern era, rather than an expansion or contraction of the Decree's protections.

Technology, criminals' use of technology, and police practices have changed significantly in the time since the Consent Decree was entered. The City's police practices expert, Eric Daigle,

will testify, if the Court allows,[4] as to the legitimate need of law enforcement to use social media in criminal investigations and intelligence gathering. (*See* Expert Report, "Policing in a Digital Age," ECF No. 306-1.) The proof will show that, with proper police operational standards, MPD's use of social media as an investigative and intelligence-gathering tool is permissible under the Constitution and the Consent Decree, but a clarification of the 1978 language of the Decree is required to memorialize that understanding.

The proof at trial will also show how the use of photo and video recording by law enforcement is so prevalent and necessary in modern policing that it warrants the jointly-proposed modifications of the Consent Decree to recognize the appropriate circumstances of its continued use.

The Court will also hear proof of how the changing landscape of technology, the expectation of privacy associated with the use of video-based recording, and clearly established First Amendment jurisprudence makes the Consent Decree's provisions related to maintenance of information unnecessary to ensure the protection of a citizen's First and Fourth Amendment constitutional rights.

Additionally, the parties agree that Section G should be modified and clarified. Because social media is a platform for speech, under a literal reading of Section G, Director authorization is arguably required to begin any investigation on social media because it would necessarily constitute an investigation involving a person's speech. This is not what the parties contemplated or intended, and a modification is warranted under the circumstances.

Moreover, the proof at trial will show that a modification of the Consent Decree is

---

[4] If the Court wishes to hear evidence related only to the unresolved provision of Section I, the City anticipates presenting a very limited amount of proof at trial. The City seeks the Court's guidance on this issue.

appropriate because "enforcement of the decree without modification would be detrimental to the public interest." *United States v. State of Mich.*, 62 F.3d 1418 (6th Cir. 1995). The Court will hear testimony regarding the confusion surrounding the term "political intelligence" within the MPD. The Court will also hear evidence regarding differing interpretations of the Consent Decree, even among the members of the Monitoring Team, which will show that the Consent Decree, in the context of activities prevalent in 2020, is somewhat ambiguous, amorphous, and should be modified to ensure MPD officers know exactly how to act, without hesitation, in any situation which implicates the Consent Decree.

Accordingly, the parties propose the following modifications to the Consent Decree, which the City asserts are suitably tailored to the changed circumstances that warrant modification while preserving rights of free speech and privacy:

1. The term "Political Intelligence" should be renamed to "First Amendment-Related Intelligence." The proof will show that the term "political intelligence" caused confusion among MPD officers. "First Amendment-Related Intelligence" better encompasses what the Consent Decree was implemented to address, which is to protect the First Amendment rights of all people, not just their right to express political opinions.

Further, the definition should be modified to clarify that "'First Amendment-Related Intelligence' is the gathering, indexing, filing, maintenance, storage, or dissemination of information or any other investigative activity <u>which is undertaken due to or on the basis of a</u> person's beliefs, opinions, associations or the content of the speech or expression protected by the First Amendment." The original phrase, "relating to any," was subject to too broad of an interpretation.

2. The Consent Decree's "Definitions" Section B would be updated to include

definitions for "Legitimate Law Enforcement Purpose," "Social Media," and "Undercover Account."

3. Section C "Political Intelligence" should change to "First Amendment-Related Intelligence" pursuant to the term change. Section C should also be clarified to allow for the legitimate gathering or receipt of First-Amendment Related Intelligence, subject to the provisions in Section G.

4. Section D "Prohibition Against Electronic Surveillance" would be updated to recognize that MPD may view information posted to social media for legitimate law enforcement purposes. The new Section D will clarify that MPD may do this only so long as it does not improperly catalog and disseminate that information pursuant to Section H.

The new Section D acknowledges that there are further situations where the Memphis Police Department may inadvertently discover information related to the exercise of First Amendment rights as defined by the Consent Decree because of the very nature of social media. It also expressly prohibits MPD from surveilling groups or persons involved in the exercise of their First Amendment rights for the purpose of First Amendment-Related intelligence except as provided in subsection G.

Section D will further specify that if the Memphis Police Department gathers First Amendment-Related intelligence concerning an upcoming event on social media or otherwise, and if there is no legitimate law enforcement purpose to retain the intelligence, once the event has passed, the information gathered shall be destroyed or removed.

The City's fact and expert witnesses will testify on the importance of social media in modern-day policing, and why this modification is absolutely necessary.

5. Section E "Prohibition Against Covert Surveillance for First Amendment-Related

Intelligence" is jointly-proposed to be updated to clarify that MPD may employ "undercover accounts" on social media when investigating criminal activity, as long as those accounts are not created for the purpose of First Amendment-Related intelligence. Any First Amendment-protected information is gathered through the use of an undercover social media account shall not be retained unless necessary to further a criminal investigation. Further, MPD will implement supervisory controls to ensure all undercover social media accounts are not being used or created to violate this Consent Decree or otherwise infiltrate or identify groups expressing their First Amendment rights.

6. It is proposed that Section F "Harassment and Intimidation Prohibited" be updated and clarified. The parties agree that the "for the purpose of maintaining a record" language should be clarified to include the limiting phrase: "of persons exercising their First Amendment rights." The new sentence would read:

> As an example, the City of Memphis shall not, at any lawful meeting or demonstration, for the purpose of chilling the exercise of First Amendment rights <u>or for the purpose of maintaining a record of persons exercising their First Amendment rights</u>, record the name of or photograph any person in attendance, or record the automobile license plate numbers of any person in attendance.

The parties further agree that Section F should be updated to recognize that MPD may have officers present at gatherings of persons engaged in First Amendment activity for the purpose of ensuring public safety, as long as the MPD's presence is not for the purpose of, or may reasonably have the effect of, harassment or intimidation.

Finally, Section F will clarify that nothing in that provision prohibits the City from implementing reasonable time, place, and manner restrictions on First Amendment activities.

7. Section G "Investigations Which May Interfere with the Exercise of First Amendment Rights" is proposed by the parties to be updated in several respects. First, Section G

Page **12** of **17**

JVS 4841-9556-6783
2545600-000230

needs to clarify which types of investigation and intelligence-gathering would require authorization by the Director or the Director's Designee. The original language of Section G is too broad in that it requires Director authorization of criminal investigations which "may result in the collection of information about the exercise of First Amendment rights or interfere in any way with the exercise of such First Amendment rights… ." (Consent Decree, 9-1, PageID 51.) This arguably implicates every criminal investigation conducted on social media since social media is, at its core, a platform for speech.

The updated Section G clarifies that investigations and intelligence-gathering "which are reasonably unlikely to result in the collection of information about the exercise of First Amendment rights, or interfere in any way with the exercise of such First Amendment rights are permissible and require no special authorization under Section G." Moreover, the revised Section G clarifies that the Consent Decree does not require Director authorization under § G to begin any and all investigations on social media, only those that are reasonably likely to result in the collection of information about the exercise of First Amendment rights or interfere in any way with the exercise of such First Amendment rights. Where a social media investigation is based on the content of the speech or other expression, however, authorization is always required.

Further, the proposed modified Section G permits criminal investigations prompted by or based upon the content of a person's speech or other expression, if there is a legitimate law enforcement purpose for doing so. If an investigation is prompted by or based upon a person's speech or other expression for a legitimate law enforcement purpose, the investigation is permissible but always requires Director or Designee authorization.

The parties agree that Section should also be modified to allow for designees of the Police Director to authorize investigations under Section G.

JVS 4841-9556-6783
2545600-000230

Finally, Section G, as proposed, would be updated to acknowledge that there are certain types of crimes that occur exclusively on the Internet that are purely criminal. While these crimes may in some instances tangentially implicate the First Amendment, Director authorization under § G is not required to investigate those crimes. Examples of such cybercrimes are, including but not limited to, child pornography; identity theft; unauthorized intrusions into private networks; deployment of computer viruses; and cyberbullying. Such investigations will be subject to Director/Designee audit bi-annually.

8. The parties propose that Section H "Maintenance and Dissemination of Information" be updated to clarify that MPD and the City may maintain personal information and disseminate personal information about persons, provided that maintenance and dissemination is not for the purpose of First Amendment-Related Intelligence.

Section H would further be updated to include a provision permitting MPD's use of its camera and video recording systems, as long as the devices are not used for the purpose of First Amendment-Related intelligence. The original language of Section H arguably prohibits the City from using those devices, and the Court will hear proof from the City's expert and fact witnesses as to the importance of those devices in the prevention and investigations of crime.

The parties also agree that Section H should be updated to clarify that MPD's use of Body Worn Cameras is permissible, provided they are not used for the purpose of First Amendment-Related Intelligence.

## V. SECTION I "RESTRICTION ON JOINT OPERATIONS"

The parties agree that Section I should be updated, however, the extent to which it should be updated has not been resolved. The parties agree that the City may participate in the receiving and sharing of information from and with other law enforcement agencies, as long as the City does

not direct another law enforcement agency to do what it is not allowed to do under the Consent Decree. In other words, the City may not direct another agency to act as its surrogate to violate the Consent Decree.

The parties further agree that MPD may accept anonymous tips from CrimeStoppers and other anonymous tip reporting platforms, and the receipt of that information does not implicate the Consent Decree, as long as the MPD does not retain tips that have no criminal nexus and are solely related to First Amendment activity or First Amendment-Related Intelligence. Similarly, the parties agree that subject to provisions and requirements of Section G, MPD may view and store the live video feed from the State's interstate cameras as long as it does not use the footage for the purpose of First Amendment-Related Intelligence.

The City seeks an additional modification to Section I that permits it to participate in operations with joint task forces such as the Joint Terrorism Task Force and the Multi-Agency Gang Unit. The City's participation in these joint task forces necessarily implicates § I of the Consent Decree as currently worded. The structures of these joint task forces require open, free-flowing information among all the participating agencies, none other of whom are bound by the strictures of the Consent Decree, other than the City. The proof at trial will show the importance of the City's participation in these task forces, and the necessity of this modification to enable the City's continued participation in them.

The ACLU-TN and the City seem to agree in principle that the City may participate in these task forces, but they were unable to agree on specific language to memorialize it within Section I. The parties intend to continue to negotiate on Section I, and they are hopeful that they will come to an agreement on a proposed modified Section I by the time of trial.

VI. CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court implement the parties' proposed modifications to the Consent Decree and further clarify Section I.

Respectfully Submitted,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.

s/ Bruce McMullen
R. Mark Glover (#6807)
Bruce McMullen (#18126)
Mary Wu Tullis (#31339)
Jennie Vee Silk (#35319)
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
Telephone (901) 526-2000
E-mail: mglover@bakerdonelson.com
bmcmullen@bakerdonelson.com
mtullis@bakerdonelson.com
jsilk@bakerdonelson.com

*Attorneys for Defendant, The City of Memphis*

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of June 2020, a copy of the attached pleading was filed electronically. Notice of this filing will be served by operation of the Court's electronic filing system to all counsel of record.

Thomas H. Castelli
Stella Yarbrough
ACLU Tennessee, Inc.
P.O. Box 120160
Nashville, TN 37212
tcastelli@aclu-tn.org
syarbrough@aclu-tn.org

JVS 4841-9556-6783
2545600-000230

Mandy Strickland Floyd
Bone McAllester Norton PLLC
511 Union Street, Suite 1600
Nashville, Tennessee 37219
mfloyd@bonelaw.com
*Attorneys for Intervening Plaintiff*

                                                                      s/ Bruce McMullen
                                                                      Bruce McMullen