IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ACLU OF TENNESSEE, INC., ) | |
| ) | |
|     Intervening Plaintiff, ) | |
| ) | Case No. 2:17-cv-02120-JPM-jay |
| v. ) | |
| ) | |
| THE CITY OF MEMPHIS, ) | |
| ) | |
|     Defendant. ) | |

ORDER ON THE CITY'S NONCOMPLIANCE WITH SANCTION FIVE OF THE
OCTOBER 29, 2018 ORDER MEMORIALIZING SANCTIONS, AND
ORDER DENYING CITY'S MOTION TO SEAL

      This cause was before the Court on May 14, 2020 for a Video Hearing regarding the City of Memphis's asserted noncompliance with Sanction 5 of the Court's October 26, 2018 Order and Opinion (ECF No. 151) and October 29, 2018 Order Memorializing Sanctions (ECF No. 152).  The Hearing was held after the Independent Monitor informed the Court that the City has not complied with Sanction 5.  (See ECF No. 364.)  Before the Hearing, the City filed a Motion to Seal the documents submitted by the Monitor that detail the City's noncompliance with Sanction 5.  (ECF No. 296.)

      Present were counsel for the ACLU-TN and the City.  Also present were the Independent Monitor and members of the Monitoring Team, as well as counsel for the Memphis Police Department ("MPD") and the City.  The Court heard testimony from Major Darren Goods, Operations Commander for the Memphis Police Department's Multi-Agency Gang Unit ("MGU").

For the reasons set forth below, the Court finds that the City has not complied with Sanction 5. The Court also **DENIES** the City's Motion to Seal but will allow the City to refile its Motion within fourteen (14) days of the entry of this Order.

### I. The Court's Findings

Upon review of the Parties' briefing, the testimony of Major Goods, and the arguments presented by the City, the Monitor and the ACLU-TN at the Hearing, the Court finds that the City has not complied with Sanction 5. (See ECF No. 152.) Sanction 5 requires the City to "maintain a list of all search terms entered into social media collators or otherwise used by MPD officers collecting information on social media while on duty." (Id. at PageID 6289.) The Sanction is not limited to the MPD's use of social media collators, nor is it limited to a specific group, agency or department of the MPD. By failing to provide the search terms used by officers of the MGU, Organized Crime Unit ("OCU"), and Internet Crimes Against Children division, the City did not comply with the plain terms of Sanction 5.

The testimony of Major Goods demonstrates the importance of disclosing the social media search terms used by the MGU. Major Goods testified that the MGU makes significant use of social media in the course of investigating gang activity. (See Tr. of May 14, 2020 Hr'g, ECF No. 318 at PageID 9345:2-25, 9346:1-10.) Major Goods testified that MGU officers assist other agencies and other MPD divisions, especially when there is a "gang nexus" to the investigation. (Id. at PageID 9348:2-21, 9354:5-8.) The MGU "receive[s] and provide[s] search terms to other agencies" and MPD departments, and MGU officers use undercover social media accounts to conduct their investigations, many of which are under the names of the undercover officers' personas. (Id. at PageID 9353:2-12, 9355:4-25, 9356:1-6.)

These search terms are in some instances saved and preserved for later use in the investigation or for subsequent criminal prosecutions. (Id. at PageID 9354:5-8.)

The social media search terms used both by undercover and uniformed MGU officers must be disclosed to the Court under Sanction 5, regardless of the sensitivity of the information. The City shall supplement their filings to provide all undisclosed search terms used by officers of the MGU, OCU, Crimes Against Children division, or any other MPD department or division whose social media search terms have not been previously disclosed.

## II.     The City's Arguments

The City's arguments against disclosure of the social media search terms used by the MGU and other MPD divisions are not persuasive.[1] The Court will address each of the City's arguments in turn.

### A.     *The failure of the Monitor and the ACLU-TN to object to the undisclosed search terms does not justify the City's noncompliance.*

The City's first argument, which it advanced at the Hearing, is that it could not have known it was not complying with Sanction 5 because neither the Court, nor the Independent Monitor, nor the ACLU-TN objected to the non-disclosure of these terms in the lists of search terms submitted to the Court dating back to January 2019. (See, e.g., Tr., ECF No. 318 at PageID 9336:24-25, 9337:1-2, 10-14.) This argument is not persuasive. The Monitor and the ACLU-TN were unable to object to the non-disclosure of search terms because they were not made aware of the existence of such terms. The Monitor and the ACLU-TN therefore were

---

[1] The City asserts several arguments in support of its position in a letter responding to the Independent Monitor's inquiry regarding the City's compliance with Sanction 5, dated February 14, 2020 (ECF No. 364), in the City's Pre-Hearing Brief, filed on March 13, 2020 (ECF No. 297), and its Post-Hearing Brief, filed on March 21, 2020. (ECF No. 321.)

3

unable to object to the absence of this information and thus the City's potential violation of Sanction 5 at the time the City filed its list of search terms with the Court.

    B. *Requiring MPD officers to turn over lists of search terms used on their own personal social media accounts or their own personal phones does not violate the Fourth Amendment.*

The Fourth Amendment does not bar the City from requiring MPD officers to disclose search terms used on officers' social media accounts or their personal devices if the terms were used for official police business.

MPD officers have a reasonable expectation of privacy in their personal devices, and thus some of the information on their personal devices triggers Fourth Amendment protections and requires the MPD to obtain a warrant before searching officers' personal property. See City of Ontario v. Quon, 560 U.S. 746, 756 (2010) ("The Fourth Amendment applies as well when the Government acts in its capacity as an employer."); see also O'Connor v. Ortega, 480 U.S. 709, 717 (1987) ("Individuals do not lose Fourth Amendment rights merely because they work for the government instead of a private employer."). However, "the Supreme Court has recognized an exception for searches of a public employee's workplace under the special needs doctrine." James v. Hampton, 592 F. App'x 449, 454 (6th Cir. 2015) (citing O'Connor, 480 U.S. at 719–20). Imposing a "warrant requirement would be impracticable in the public employment context," as such a requirement "would seriously disrupt the routine business of the workplace." Id. (citing O'Connor, 480 U.S. at 722).

Although the Supreme Court has not settled the proper analytical framework used to determine the scope of a public employee's Fourth Amendment protections in the context of

employment-related searches, the Sixth Circuit in the unpublished opinion James v. Hampton discussed the O'Connor v. Ortega plurality's framework, which "recognized that government employees' expectation of privacy in their offices can be diminished by virtue of office practices and procedures or by legitimate regulation." James v. Hampton, 592 F. App'x 449, 455 (6th Cir. 2015); see also Zimmerman v. Knight, 421 F. Supp. 3d 514, 520–21 (S.D. Ohio Nov. 14, 2019) (noting that the Hampton decision is controlling with respect to O'Connor's application in the Sixth Circuit). "[G]overnment employees' expectation of privacy in the workplace can be reduced through . . . prior notice to employees that their workspaces were subject to search." Hampton, 592 F. App'x at 455.

Under the O'Connor plurality's approach, courts apply a two-step inquiry to determine "whether a public employee workplace search without a warrant would violate the Fourth Amendment." Hampton, 592 F. App'x at 454–55. First, the reviewing court considers "whether the employee has a reasonable expectation of privacy in the workplace." Id. at 455 (citing O'Connor, 480 U.S. at 711–12). Second, "if the employee does have an expectation of privacy," the courts must ensure that the search is "reasonable both at its inception and in its scope." Id. (citing O'Connor, 480 U.S. at 725–26). "A search is justified at its inception 'when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct, or that the search is necessary for a noninvestigatory work-related purpose such as to retrieve a needed file.'" Id. (quoting O'Connor, 480 U.S. at 726). "The search is reasonable in scope when it is 'reasonably related to the objectives of the search and not excessively intrusive in light of . . . the nature of the [misconduct].'" Id. (quoting O'Connor, 480 U.S. at 726).

MPD officers have a reduced expectation of privacy in their personal devices and social media accounts when used for official police purposes "by virtue of office practices and procedures or by legitimate regulation" put in place by the City and the MPD.  See Hampton, 592 F. App'x at 455.  A court order requiring all MPD personnel to provide social media search terms used for official police business qualifies as a "legitimate regulation," given the importance of the City's continued compliance with the Kendrick Consent Decree, and especially given that an MPD officer's impermissible use of social media was at the heart of the Court's finding that the City and the MPD violated the Kendrick Consent Decree.  Although MPD officers generally have a reasonable expectation of privacy in their personal cellphones and devices under Supreme Court and Sixth Circuit precedent, see Riley v. California, 573 U.S. 373, 386 (2013), see also Zimmerman v. Knight, 421 F. Supp. 3d 514, 520–21 (S.D. Ohio 2019), not everything on MPD officers' personal cellphones and devices is necessarily unrelated to official police business.  See Zimmerman, 421 F. Supp. 3d at 520–21 (quoting Hampton, 592 F. App'x at 457).  The search terms stored on MPD officers' and MGU officers' personal phones and used in criminal investigations qualify as "workplace items."  Therefore, social media accounts and search terms used for criminal investigative purposes on behalf of the MPD qualify as "items that are related to work" and should be "within the employer's control."  O'Connor, 480 U.S. at 715.

It is, however, both impracticable and inappropriate to require the MPD to obtain a warrant to retrieve social media search terms directly related to official police business from its officers' personal phones.  See id. at 725.  The MPD's collection of such search terms is reasonably related to the goal of ensuring compliance with the Kendrick Decree.  The Eastern District of California in Larios v. Lunardi directly addressed the issue of searches of officers'

personal cellphones and came to the same conclusion. See --- F. Supp. 3d ----, 2020 WL 1062049, at *7–8 (E.D. Cal. Mar. 5, 2020). The plaintiff in Larios "comingled his work life and personal life on a single device" and "used a personal device to engage in CHP-regulated communication." Id. at *7. The court found that a search of that device did not occur "pursuant to a criminal investigation" but was instead "an investigation of work-related misconduct" and thus was justified in its inception and reasonably related to the purpose of the search. Id.

The sworn testimony is that MPD officers comingle work-related searches with their own personal affairs on their personal social media accounts and electronic devices. See id. at *7. (See Aff. of Don Crowe, ECF No. 321-1 at PageID 9907–08, ¶¶ 12–15; see also Tr., ECF No. 318 at PageID 9355: 4-25, 9356:1-6.) Requiring officers to provide a list of social media search terms entered on their personal devices or on their personal social media accounts is "reasonably related to the objectives of the search and not excessively intrusive in light of the circumstances giving rise to the search." Quon, 560 U.S. at 761–62 (quoting O'Connor, 480 U.S. at 725–26). Any intrusion is limited since it only requires officers to disclose social media search terms entered on their personal devices for official police purposes. See Quon, 560 U.S. at 761–62 (finding reasonable a public employer's tailored review of employees' text messages in light of the circumstances); see also Larios, 2020 WL 1062049, at *7 (finding reasonable and justified at its inception employer's "limited" search of "a subset of messages" that were confined to the alleged misconduct committed by the public employee plaintiff).

7

The Court's requirement that the City collect search terms used by MPD officers on their personal devices and social media accounts for official police purposes therefore does not require a warrant and complies with the Fourth Amendment.

> C. *Although the requirement that all rank-and-file members of the MPD disclose their social media search terms may impose a burden on the MPD, that burden is outweighed by Sanction 5's important purpose, to ensure the City's continued compliance with the <u>Kendrick</u> Consent Decree.*

The City asserts that it would be impracticable or overly burdensome to require it to collect all social media search terms used by every MPD officer because these searches occur on their own personal Facebook and social media accounts and because these accounts are not connected with official MPD social media accounts. (<u>See</u> Post-Hr'g Br., ECF No. 321 at PageID 9897–9903.) The Court is aware that compliance with Sanction 5 may require expenditure of MPD personnel's time and resources to the extent that such officers' use of personal devices, etc. for police purposes is widespread.[2] But the fact that MPD officers are conducting social media searches on their own personal devices and using unmonitored social media accounts for police purposes underscores exactly why the City must disclose MPD officers' work related social media search terms. This activity comes close to replicating the behavior that led the City to violate the <u>Kendrick</u> Consent Decree in the first instance. To leave such use unmonitored would make a mockery of Sanction 5. The Court must of necessity make itself aware of MPD officers' use of social media for police investigative purposes to ensure the MPD's and the City's continued compliance with the <u>Kendrick</u> Consent Decree and the safeguards it imposes.

---

[2] If such use is not widespread, the burden on the Department should be minimal.

The City compares MPD officers' use of social media with the information gathering techniques used by officers while "walking the beat." (See id. at PageID 9903.) These two situations are not comparable. When a uniformed officer walks his or her beat, he or she is readily identifiable as a police officer, and citizens who engage with the officer know they are in contact with the MPD. When an officer searches social media to gather information on a subject, the subject is completely unaware of the search and has no idea that an officer, using a personal Facebook account unaffiliated with the MPD, is searching or investigating the citizen's profile for police purposes. While this is allowed, it is the type of intrusive activity that is appropriately subject to restriction and monitoring.

Finally, the Court notes that the City's objection to the disclosure of these terms over security concerns for sensitive ongoing investigations is insufficient to justify nondisclosure of these terms. (See ECF No. 297 at PageID 9117–18.) Filing the documents under seal and carefully restricting access to this information protects sensitive law enforcement information from inadvertent public disclosure while providing a formal mechanism to protect the individual liberty and the integrity of agreed upon restrictions in the Kendrick Decree.

### III.   The City's Motion to Seal

The City filed a Motion to Seal the documents submitted by the Monitor on March 3, 2020. (ECF No. 296.) The City did not provide a detailed, document-by-document analysis justifying why sealing the documents would be appropriate, nor did the City provide the Court with an alternative, redacted version of the documents. See Shane Grp., Inc. v. Blue Cross Blue Shield of Mich., 825 F.3d 299, 305–06 (6th Cir. 2016). The Court will therefore **DENY** the Motion. The documents, however, shall be temporarily filed under seal in light of their apparent sensitive nature. The Court will allow the City to refile its Motion to provide the

Court with a document-by-document analysis setting out in detail the factual basis supporting the sealing of each document as well as an alternative redacted version of each document Defendant wishes to have filed under seal.  Any renewed motion must be filed within **14 days of the entry of this Order**.  If no motion is filed, the documents will be unsealed.  The ACLU-TN may file a Response within **7 days of the City's filing its renewed Motion to Seal**.

IV. Conclusion

For the reasons set out above, the Court finds that the City has not complied with Sanction 5 of the Court's Order Memorializing Sanctions.  The City must disclose all work related social media search terms used by all MPD officers, including the search terms used by officers of the MGU, the OCU, and the Internet Crimes Against Children division for the reasons and in the manner set out in this Order.  The City shall supplement its previous filings with all work related search terms used since January 2019.

If the City desires to renew its Motion to Seal, said Motion shall be filed by no later than **Wednesday, September 2, 2020**.

**SO ORDERED**, this 19th day of August, 2020.

    /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE