# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ACLU OF TENNESSEE, INC., ) | |
| ) | |
| ) | |
| Intervening Plaintiff, ) | |
| ) | No. 2:17-cv-02120-JPM-jay |
| v. ) | |
| ) | |
| CITY OF MEMPHIS, TENNESSEE ) | |
| ) | |
| Defendant. ) | |

## 2022 FIRST QUARTER REPORT OF THE INDEPENDENT MONITOR

/s/ Edward L. Stanton III
Edward L. Stanton III (TN BPR # 18904)
BUTLER SNOW LLP
6075 Poplar Avenue, 5th Floor
Memphis, TN  38119
Telephone: (901) 680-7200
Facsimile: (901) 680-7201
Email: Edward.Stanton@butlersnow.com

*Independent Monitor*

**TABLE OF CONTENTS**

I. INTRODUCTION & EXECUTIVE SUMMARY ................................................................ 1

II. OVERVIEW OF THE MONITORING TEAM'S ACTIVITIES ....................................... 2

III. DISCRETE TASKS AND COMMUNITY ENGAGEMENT .......................................... 2

    A. Social Media Policy ................................................................................................2

    B. Community Engagement ........................................................................................ 3

IV. AUDITING & COMPLIANCE PROTOCOLS ................................................................ 5

    A. Search Term Reporting ........................................................................................... 5

    B. Training ................................................................................................................... 9

    C. Compliance with the Modified *Kendrick* Decree: Bi-Annual Audits ................... 11

    D. Requests for Authorization Under Section G ....................................................... 13

V. CONCLUSION ................................................................................................................ 13

APPENDIX OF DOCUMENTS REFERENCED IN THIS REPORT ........................................ 15

## I. INTRODUCTION & EXECUTIVE SUMMARY

This First Quarter 2022 ("Q1 2022") Report ("Report") covers the period from January 1, 2022, through March 31, 2022, and follows eight prior reports by the Monitoring Team:

- Interim Report (ECF No. 197);

- 2019 First Quarter (Q1) Report (ECF No. 205);

- 2019 Second Quarter (Q2) Report (ECF No. 219);

- 2019 Q2 Supplemental Report (Undocketed);

- 2019 Third Quarter (Q3) Report (ECF No. 256, docketed without submitted exhibits);

- 2020 First Quarter (Q1) Report (ECF No. 319);

- Pretrial Report (ECF No. 330); and

- 2021 End of Year Report (ECF No. 416).

This Report fulfills three goals. ***First***, this Report provides an overview of the Monitoring Team's activities. ***Second,*** this Report discusses the Monitoring Team's community engagement efforts and other discrete tasks that the Monitoring Team and the City have undergone to ensure compliance with the Modified *Kendrick* Decree. ***Third,*** this Report provides an update on the Monitoring Team's and the City's collaborative efforts to improve auditing and compliance protocols. It is important to note that this Report, unlike its predecessor reports, does not cover Requests for Authorization ("RFAs") in depth because there have been no RFAs submitted during Q1 2022. Additionally, no matters were brought before the Court for consideration during this timeframe.

## II. <u>OVERVIEW OF THE MONITORING TEAM'S ACTIVITIES</u>

Since January 1, 2022, the Monitoring Team has done the following:

- Exchanged more than 100 internal and external emails;

- Conducted approximately six Monitoring Team conference calls, virtual meetings, or additional ad hoc calls as necessary;

- Participated in approximately five weekly and additional ad hoc calls with the City;

- Conferred via email, telephone, and www.memphispdmonitor.com with community members;

- Observed Memphis Police Department ("MPD") in-service training on the Modified *Kendrick* Decree each week since January 20, 2022; and

- Reviewed more than 3,200 unique search terms for compliance with the Modified *Kendrick* Decree.

The Monitoring Team's ongoing activities are described in greater detail where relevant to discrete tasks, community engagement, and compliance protocols.

## III.    <u>DISCRETE TASKS AND COMMUNITY ENGAGEMENT</u>

The Court has identified specific tasks for the Monitoring Team to complete. Additionally, the Monitoring Team continually assumes additional tasks to engage and inform the community.

### A.    **Social Media Policy**

One such task that the Court has identified includes the submission of the City's proposed social media policy for the Court's review. In October 2018, the Court ordered the City to develop written guidelines for the City's use of social media.[1] Throughout 2019, the Monitoring Team and the City, along with the Intervening Plaintiff, ACLU-TN, worked together to draft a social media policy. The City and the Monitoring Team submitted draft policies on December 20, 2019, January

---

[1]    (*See* Opinion and Order, ECF No. 151, at PageID 6274-75).

9, 2020, and February 5, 2020. On June 2, 2020, the Court held its decision on the City's proposed social media policy in abeyance in light of the Modification Hearing, which was set for June 17, 2020.[2]

Following the Modification Hearing, the Court indicated that the "Monitoring Team's primary role going forward is to craft the City of Memphis's social media investigative guidelines . . . ."[3] As such, the Monitoring Team continues to work with the City to finalize its social media policy. The Monitoring Team anticipates receiving and reviewing the City's policy in the coming months. During this interim period, the Modified *Kendrick* Decree currently governs and will continue to govern the City's social media activities.

### B. Community Engagement

The Monitoring Team continues to engage the community by improving its website, www.memphispdmonitor.com, and reinstating quarterly reporting.

Through its website, the Monitoring Team continues to update the community on information related to the Modified *Kendrick* Decree by providing links to most docketed filings, Court Orders, unsealed reports, upcoming events, and inviting the public to contact the Monitoring Team.

The Monitoring Team has improved the website's accessibility in numerous ways. First, updated filings are regularly provided on the "Full Court Docket" page. Second, the Monitoring Team posts responses to questions asked during Community Forums, the most recent of which

---

[2] (*See* Order Holding in Abeyance Decision on the City of Memphis's Proposed Social Media Policy, ECF No. 322, at PageID 9915).

[3] (*See* Opinion and Order, ECF No. 378, at PageID 12549).

was held on December 9, 2021.[4] A video capturing the December 9 Community Forum is also available on the Monitoring Team's website.[5] Third, the Monitoring Team added an anonymous survey for public comment, as well as a frequently asked questions ("FAQ") page. As discussed in the Monitoring Team's 2021 Annual Report,[6] the anonymous survey allows community members to raise any questions or concerns with the Monitoring Team without sharing any contact information. Additionally, the FAQs answer common questions on the basics of the Modified *Kendrick* Decree, community engagement, and pertinent MPD policies.

Fourth, in response to the community's request for more frequent updates, the Monitoring Team has reinstated quarterly reports. During the December 9 Community Forum, a community member inquired as to whether the Monitoring Team could publish and send occasional updates. Prior to the Modification Hearing, the Monitoring Team published quarterly reports to update the Court and the community. Because activity following the trial slowed, however, the Monitoring Team ceased quarterly reports. Based on the community inquiries and its own obligation to track the City's progress in compliance with the Decree, the Monitoring Team has reinstated quarterly reporting by way of this Report to better serve the community's needs.

Lastly, the Monitoring Team received an inquiry from a community member on January 11, 2022, regarding community access to the Modified *Kendrick* Decree training materials used by the MPD.[7] The community member claimed that he requested access to the video from the City

---

[4] *See* Q&A From Community Forums, found on the Monitoring Team's website at the following link: https://www.memphispdmonitor.com/q-a-from-2021.

[5] *See* December 9, 2021 Monitoring Team Public Forum, found on the Monitoring Team's website at the following link: https://butlersnowlaw.wistia.com/medias/lxn11d78h9.

[6] (*See* End of Year Report of the Independent Monitor, ECF No. 416, at PageID 14129-30).

[7] A copy of the inquiry, as well as the Monitoring Team's response, is attached hereto as **Exhibit A**.

4

but was denied based on attorney-client privilege. On January 14, 2022, the Monitoring Team responded, indicating that this is not a matter that falls within the Monitoring Team's purview.[8]

### IV. AUDITING & COMPLIANCE PROTOCOLS

This section of the Report explores the Monitoring Team's current efforts to engage with the City to craft social media investigative guidelines and provide effective auditing and training protocols.

#### A. Search Term Reporting

As required by Sanction Five,[9] the City reports search terms used by MPD officers quarterly.[10] During this reporting period, the Monitoring Team reviewed search terms that MPD collected during 4th Quarter, 2021 (hereinafter "Q4 2021"). This collection period is the first under the City's new reporting protocol.[11]

The Monitoring Team and the City worked together throughout the summer of 2021 to develop a protocol that ensures proper reporting and prevents potential abuses.[12] The following are components of the new search term policy:

- Record all social media searches contemporaneously;

---

[8]   (*See* Ex. A).

[9]   (*See* Opinion and Order, ECF No. 151, at PageID 6275).

[10]   The Court previously ruled, following the City's unopposed motion, that these terms are highly sensitive documents ("HSDs"). (*See generally* Order, ECF No. 400, at PageID 13949). Accordingly, the City collects and reports search terms in a more secure fashion than through the Case Management/Electronic Case Filing system (CM/ECF).

[11]   (See ECF No. 416 at PageID 14120-23 for an explanation of modifications to the previous reporting protocol).

[12]   (*See* ECF No. 416, Exs. 3, 4).

5

- Refrain from deleting any searches or histories before reporting;

- Identify the social media platform on which the search term was used, even if using the term on multiple platforms; and

- Report searches using Google as an initial access point to social media platforms where applicable.

The City created and launched an internal, electronic platform that most officers[13] use to report their search terms on or about October 20, 2021.[14]

To date, the Monitoring Team has received five quarterly search term reports, capturing more than 7,650 unique search terms, including personal names (including pseudonyms), entities (private and government), phrases/terms, places, telephone numbers, and Facebook identifiers.

---

[13] Officers in traditional investigative units (e.g. homicide) also began using the electronic platform to report their terms, while officers in investigative units previously identified as having "highly sensitive" search terms continue to manually record their search terms on a certification page, but were instructed to do so daily and provide them weekly instead of quarterly. (*See* ECF No. 416 at PageID 14123).

[14] MPD trains its officers on search term reporting protocols via video and written Information Bulletin. The video is played at roll call in all precincts and is accessible to all officers via the internal network. The Information Bulletin is also accessible via the internal network and is posted on the kiosk where the Modified *Kendrick* Decree is located. (*See id.*).

Chart 1 below shows the number of search terms reported by the City by quarter[15]:



Charts 2 and 3 compare the categories of terms reported overall and for Q4 2021:





Chart 4 below compares the platforms searched in Q4 2021:



As indicated by Chart 1 above, more search terms were reported in Q4 2021 than any other quarter. This is likely due to the changes in MPD's search term reporting protocol—which has

8

been modified to ensure comprehensive reporting—rather than any specific event that would cause officers to conduct more searches than before. The fact that more searches were captured following updates to the reporting protocol confirms that as social media capabilities evolve, policies, protocols, and procedures must also evolve to ensure all searches are properly reported. According to Charts 2 and 3 regarding search term categories, personal names (and pseudonyms) are searched far more frequently than any other type of search term, which has been the case for at least the two preceding quarters.

Additionally, as seen by Chart 4 labeled "Platforms Searched in Q4 2021," Facebook is the most commonly searched platform. The new protocol requires officers to report the platforms searched and, as a result, it better captures which platforms are monitored. Under the new reporting protocol, only 12% of search term platforms were unknown in Q4 2021. This indicates improved reporting as compared to previous quarters: in Q4 2020, 90% of search platforms unknown; in Q1 2021, 80% of search platforms unknown; in Q2 2021, 85% of search platforms unknown; and in Q3 2021, 36% of search platforms unknown.

### B. Training

The Monitoring Team is also charged with evaluating "MPD training protocols to implement these guidelines."[16] MPD provides annual in-service training, which includes instruction designed to educate officers on (1) what the Modified *Kendrick* Decree is, (2) why the Modified *Kendrick* Decree exists, and (3) what types of conduct are prohibited by the Modified *Kendrick* Decree. MPD Legal Advisor Zayid A. Saleem ("Mr. Saleem") conducts the training. MPD continues to conduct the training virtually in response to the COVID-19 pandemic.

---

[16]  (ECF No. 378 at PageID 12549).

However, MPD has recently instituted a live virtual training program. Previously, MPD played a PowerPoint presentation video narrated by Mr. Saleem. Although the Monitoring Team found the training materials comprehensive, the recording was not as effective because it was not interactive, and trainees could not ask real-time questions.[17] When the Monitoring Team shared these concerns, the City was receptive to improvement, expressing a commitment to refresh the virtual training program for calendar year 2022.

On January 20, 2022, the City began training on the Modified *Kendrick* Decree with a new, virtual interactive format hosted via secure online communications platform Microsoft Teams. Once a week, Mr. Saleem presents a live virtual presentation and lecture,[18] which allows officers to engage and ask questions more efficiently than the previous format allowed.[19] Moreover, MPD intends to continue using this method to train its officers by rank, in the following order:

- Command Staff in January;
- Lieutenants in February;
- Sergeants in March; and
- Uniform Patrol training beginning in April and continuing through October.

Though the core of the presentation remains the same throughout each training session, MPD may alter content depending on the audience. For example, Mr. Saleem may choose to instruct Command Staff on how to address questions from Uniform Patrol officers about the Modified *Kendrick* Decree, or he may provide additional instruction to Uniform Patrol officers on how to submit their search terms. This type of dynamic training is encouraged by the Monitoring

---

[17] (*See* ECF No. 416 at PageID 14124-25).

[18] (*See* In-Service Presentation, attached as **Exhibit B**).

[19] (*See* ECF No. 416 at PageID 14124-25).

Team and will help ensure officers understand their obligations under the Modified *Kendrick* Decree.

After a group of trainees completes the virtual training, MPD then tests officer understanding by administering a 20-question, multiple-choice exam on the Modified *Kendrick* Decree and its application.[20] MPD records officer answers via Scantron. An officer passes by correctly answering 13 of the 20 questions. Passage is mandatory, and officers are allowed multiple chances to retrain and retake the exam. As of the date of this Report, all who have undergone the Modified *Kendrick* Decree training have passed, with 88% of officers getting at least 18 out of 20 questions correct.[21]

The Monitoring Team remains involved and encouraged by the new training program and testing. The City invites Monitoring Team members to attend each session, where members are generally pleased with the information discussed between Mr. Saleem and the officers. Furthermore, the City's overall positive test results demonstrate the effectiveness of this new training format. Thus far, the new program is a positive step forward, and the Monitoring Team will continue to work with the City to refine and improve this program.

### C. Compliance with the Modified *Kendrick* Decree: Bi-Annual Audits

Section G.8 of the Modified *Kendrick* Decree requires the Police Chief and/or her designees to bi-annually audit investigations of crimes occurring exclusively on the internet.[22]

---

[20] (*See* Post-Training Officer Exam on Modified *Kendrick* Decree, attached as **Exhibit** C).

[21] (*See* Modified *Kendrick* Decree Exam Statistics, attached as **Exhibit D).**

[22] (*See* Am. J. and Decree, ECF No. 379, at PageID 12588).

11

These audits help determine whether such investigations are conducted in compliance with the Modified *Kendrick* Decree.

The City initially planned to conduct an audit in December 2021 or January 2022. However, the City pushed back its first audit to March 2022, which allowed the City time to improve its auditing procedures.[23] Going forward, these audits will take place each June and December.[24] Under the auditing protocol, Deputy Chief Michael Shearin[25] audits randomly-selected cases from the Economic Crimes Bureau and the International Crimes Against Children ("ICAC") Division.[26]

The Monitoring Team and the City continue to work together to ensure the thoroughness of the auditing protocol and that the audits cover a proper sample of investigations. The initial protocol allowed an audit of 10 files total from the ICAC and the Economic Crimes Bureau.[27] However, the Monitoring Team proposed auditing a percentage of the files instead of a number certain to ensure a representative sample of cases are reviewed.[28] In turn, the City proposed, and the Monitoring Team approved, auditing 5 files from ICAC and 25 files from the Economic Crimes

---

[23] (*See* Modified *Kendrick* Decree Audit Form - Crimes that Occur Exclusively on the Internet, dated March 25, 2022, attached as **Exhibit E**).

[24] (*See id.*).

[25] Deputy Chief Shearin is one of Chief CJ Davis's designees.

[26] (*See* Modified *Kendrick* Decree Audit Procedures - Crimes that Occur Exclusively on the Internet, dated April 2022, attached as **Exhibit F**).

[27] (*See* Modified *Kendrick* Decree Audit Procedures - Crimes that Occur Exclusively on the Internet, dated January 2022, attached as **Exhibit G**).

[28] (*See* E-mail from K. Carter to B. McMullen of January 14, 2022 re: audit form and procedure, attached hereto as **Exhibit H**).

Bureau, which would average close to 10% of the total files from each category.[29] As such, the audits going forward shall include "at least five (5) investigative files from the Internet Crimes Against Children and twenty-five (25) investigative files from the Economic Crimes units biannually."[30]

### D. Requests for Authorization Under Section G

The Court has expressly authorized the Independent Monitor to authorize or prohibit specific action by the MPD, such as investigations that may incidentally result in the collection of information related to the exercise of First Amendment Rights. Earlier in the Independent Monitor's tenure, the City frequently submitted Requests for Authorization ("RFAs") to the Independent Monitor for approval. However, as the City has undertaken even more efforts to ensure compliance with the Modified *Kendrick* Decree, the number of RFAs submitted has decreased drastically, going from 25 RFAs in the period covering May 2019 to June 2020, to none for this quarter. The Independent Monitor stands ready to assist in this regard when needed.

## V. CONCLUSION

The Independent Monitor and the Monitoring Team look forward to discussing this Report and any subsequent developments at any time that the Court deems appropriate.

RESPECTFULLY SUBMITTED, this 13th day of May 2022.

---

[29] (*See* E-mail from J. Sink to K. Carter of January 27, 2022 re: audit form and procedure, attached hereto as **Exhibit I**). According to Ms. Sink, "ICAC averages 30 open cases a month and Economic Crimes averages 320 open files a month, which includes both investigations and memos . . . ." (*Id.*).

[30] (*See* Ex. F).

13

        /s/ Edward L. Stanton III
        Edward L. Stanton III (TN BPR #18904)
        BUTLER SNOW LLP
        6075 Poplar Avenue, 5th Floor
        Memphis, TN  38119
        Telephone: (901) 680-7200
        Facsimile: (901) 680-7201
        Email: Edward.Stanton@butlersnow.com

***Independent Monitor***

## APPENDIX OF DOCUMENTS REFERENCED IN THIS REPORT

| Doc. | Description | Page(s) |
|---|---|---|
| A | January 2022 Inquiry from Community Member | 5 |
| B | In-Service Presentation | 10 |
| C | Post-Training Officer Exam on Modified *Kendrick* Decree | 11 |
| D | Modified *Kendrick* Decree Exam Statistics | 11 |
| E | Modified *Kendrick* Decree Audit Form Crimes that Occur Exclusively on the Internet, dated March 25, 2022 | 12 |
| F | Modified *Kendrick* Decree Audit Procedures Crimes that Occur Exclusively on the Internet, dated April 2022 | 12 |
| G | Modified *Kendrick* Decree Audit Procedures - Crimes that Occur Exclusively on the Internet, dated January 2022 | 12 |
| H | January 14, 2022 E-mail from K. Carter to B. McMullen, Audit Form and Procedure | 12 |
| I | January 27, 2022 E-mail from J. Sink to K. Carter, Audit Form and Procedure | 13 |
| ECF No. 151 | Opinion and Order | 2, 5 |
| ECF No. 197 | Interim Report | 1 |
| ECF No. 205 | 2019 First Quarter (Q1) Report | 1 |

| Doc. | Description | Page(s) |
|---|---|---|
| **ECF No. 219** | 2019 Second Quarter (Q2) Report | 1 |
| **ECF No. 256** | 2019 Third Quarter (Q3) Report | 1 |
| **ECF No. 319** | 2020 First Quarter (Q1) Report | 1 |
| **ECF No. 322** | Order Holding in Abeyance Decision on the City of Memphis's Proposed Social Media Policy | 3 |
| **ECF No. 330** | Pretrial Report | 1 |
| **ECF No. 378** | Opinion and Order | 3, 9 |
| **ECF No. 379** | Amended Judgment and Decree, "Modified Kendrick Decree" | 11 |
| **ECF No. 400** | Order Granting the City's Unopposed Motion to Have its Quarterly Search Term Submissions Treated as "Highly Sensitive Documents" and Removed from the CM/ECF System | 5 |
| **ECF No. 416** | 2021 End of Year Report of the Independent Monitor | *passim* |
| **Undocketed** | Q2 Supplemental Report | 1 |

64340396.v1