IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ACLU OF TENNESSEE, Inc. | ) |
| | ) |
|     Intervening Plaintiff, | ) |
| v. | )   No. 2:17-cv-02120-jpm-DKV |
| | ) |
| THE CITY OF MEMPHIS, | ) |
| | ) |
|     Defendant. | ) |

**JOINT SUSTAINMENT PROPOSAL**

    Defendant, the City of Memphis (the "City") together with Intervening Plaintiff, ACLU of Tennessee, Inc. ("ACLU-TN") (collectively, the "Parties"), respectfully submit this Joint Sustainment Proposal, as requested by the Court at the August 13, 2024 status conference. This proposal outlines the proposed phased transition of oversight of the Memphis Police Department's compliance with the Modified *Kendrick* Consent Decree ("Consent Decree") from the Independent Monitor to the City and ACLU-TN.

**I.    PHASE ONE: TRANSITION PERIOD**

    **A.  Scope of the Transition Period**

    The "Transition Period" will begin immediately upon this Court's approval of a sustainment plan. This period will serve to wind down the operations and guidance of the Independent Monitor Team (the "Independent Monitor" or "Monitor Team") and prepare for the Sustainment Period, as discussed further below. The Transition Period, during which time the Independent Monitor will remain in place, should not extend past July 1, 2025.

    During this Transition Period, the City will designate at least two employees to serve as Consent Decree Compliance Officers. The specific requirements and job responsibilities for the Compliance Officers are detailed below. The City intends to have the Compliance Officers

1

designated by the next scheduled in-person meeting between the Parties and the Monitor Team, set to take place on November 19, 2024.

In addition, the Parties will also work together to identify two subject matter experts (SME) to provide oversight and guidance to the dedicated Compliance Officers throughout the Sustainment Period. One SME will serve as the Social Media and Public Policy Expert, and the other SME will serve as the Compliance, Auditing, and Training expert. These individuals will be identified no later than March 1, 2025, and they will be fully trained for their roles by the end of the Transition Period, no later than July 1, 2025. The Independent Monitor's appointment will end with the Transition Period.

### B. Requirements and Responsibilities of Compliance Officers

The duties of the Compliance Officers include but are not limited to the following:

- **ENGAGEMENT WITH THE PUBLIC:** Compliance Officer will continue the work of the Independent Monitor in educating community members as to the terms of the Consent Decree and soliciting feedback.
    - Host annual public meeting in each police precinct;
    - Create and maintain website with complaint form, publicly available reports and audits, and information regarding the Consent Decree;
    - Publicize quarterly the website and scheduled meetings;
    - Respond to public requests or other public inquiries as to the Consent Decree and City's compliance; and
    - Engage experts for continued public engagement and study thereof.

- **CONDUCT AND OVERSEE REQUIRED AUDITS AND FORMS:**
  Compliance Officer will assist in and oversee bi-annual audits as required by the Consent Decree.
    - Conduct additional internal audits of search forms generated by Social Media Compliance Team ("SMCT");
    - Obtain designee status for purposes of authorizing Section G forms; and
    - Collect and publish, to the extent possible, routine audits and forms generated.

- **CONDUCT OFFICER TRAINING:** Compliance Officer will either conduct trainings or supervise a trainer performing required officer trainings and assessments on the Consent Decree.
    - Regularly review training and assessment materials;
    - Hire and evaluate trainer(s), as needed; and
    - Report on compliance (how many officers are current in their training, etc.).

- **ROUTINE SUPERVISION**: Compliance Officer will conduct random reviews and assessments of compliance with the Consent Decree.
  - Collect and review, as needed, policies concerning use of surveillance equipment, electronic data collection, and social media;
  - Conduct random audits of retained data, case files, and searches conduct by SMCT for compliance; and
  - Review Joint Information Briefs and other collaborative information exchanges for compliance.

- **INVESTIGATE ALLEGATIONS OF NON-COMPLIANCE**: Compliance Officer will investigate allegations of non-compliance, including those received through the public website, and report to City legal counsel and ACLU-TN any results of such investigation.

- **ENGAGEMENT WITH SUBJECT MATTER EXPERTS AND ACLU-TN:** Compliance Officer will engage, as required, with the SMEs and ACLU-TN to review and assess City and MPD's compliance with the Consent Decree.

The Parties agree that the Compliance Officers should have law degrees. The Parties further agree that the Compliance Officers should report directly to the Chief of Police, as explained further below. In view of these requirements, the Parties propose attorneys Rosalyn Dobbins, Legal Advisor to the Memphis Police Department, and James Thomas, Senior Legal Advisor to the Memphis Police Department, as the Compliance Officers during the Transition Period and Sustainment Period. Ms. Dobbins and Mr. Thomas are already very knowledgeable about the Consent Decree, have conducted training on the Consent Decree, and they report directly to the Chief of Police. Additionally, the Chief of Police has authorized the designation of an additional member to assist the Compliance Officers. The ideal candidate for this position is a current MPD officer with a law degree who will serve at the direction of Ms. Dobbins and Mr. Thomas.

While the Parties initially contemplated having one or more employees dedicated entirely to the role of Compliance Officer, the Parties now believe that the duties and responsibilities of the Compliance Officer are not enough to fill the plate of a full-time employee. Instead, the City proposes that the Compliance Officers not be restricted to the role of Compliance Officer, but that those tasks become part of their job responsibilities.

Further, while the City initially imagined the Compliance Officers would be housed within MPD's Internal Affairs division, after consultation with the Monitor Team, the City agrees with Dr. Theron Bowman that the Compliance Officers should report directly to the Chief of Police.

### C. The Requirements and Responsibilities of the Subject Matter Experts

#### 1. Social Media and Public Policy SME

The Social Media and Public Policy SME ("Social Media SME") should have extensive experience in legal issues surrounding social media monitoring by law enforcement, law enforcement surveillance methods and technologies, privacy, and First Amendment rights. The Social Media SME's experience should reflect continuing education and training on best practices in these areas. This SME's duties will generally include the following:

- Conduct quarterly reviews of the SMCT to ensure Consent Decree compliance, and conduct additional investigation as needed;

- Conduct quarterly audits of search terms submissions and request forms of the SMCT, social media account activity of the SMCT, and conduct additional investigation as needed; and

- Provide guidance and information to the Compliance Officers related to best practices of social media use by law enforcement agencies (LEAs), including any updates in best practices or applicable laws relevant to the same.

The Parties understand that the Monitor Team's current Social Media and Public Policy expert, Ms. Rachael Levinson-Waldman, might be available to continue her services as the Social Media SME during the Sustainment Period. Ms. Levinson-Waldman's familiarity with the Consent Decree and MPD's compliance efforts make her uniquely qualified to serve as the Social Media SME during the Sustainment Period.  If Ms. Levinson-Waldman is not available, the parties will search for someone with similar expertise to serve in that role.

### 2. Auditing, Compliance, and Training SME

The Auditing, Compliance, and Training SME ("ACT SME") should have experience serving in law enforcement and in training law enforcement officers. The ACT SME should also have knowledge of best practices for law enforcement, conducting independent oversight of LEAs, and an understanding of First Amendment rights. The ACT SME's experience should reflect continuing education and training on best practices in these areas. The ACT SME's duties will generally include the following:

- Conduct annual audits and reporting of commissioned officers' training and testing, including test result data;

- Conduct quarterly review and analysis of Consent Decree exam questions and exam statistics, providing feedback as necessary;

- Review Internet Crimes Against Children (ICAC) and Economic Crimes bi-annual audits to ensure Consent Decree compliance, conducting additional investigation as needed;

- Conduct bi-annual inquiry and analysis of Organized Crime Unit (OCU) undercover and alias accounts to ensure compliance, conducting additional investigation as needed; and

- Provide guidance and information to the Compliance Officers regarding Consent Decree training materials and LEA accountability practices, including any updates in best practices or applicable laws relevant to the same.

The Parties prefer someone local to the Memphis area to serve as the ACT SME, and the Parties propose David McGriff. Currently, Mr. McGriff serves as the Monitor Team's expert on Auditing and Compliance. Not only does Mr. McGriff have extensive law enforcement experience in a range of agencies; but in his role as the Auditing and Compliance expert, Mr. McGriff has also regularly observed MPD's Consent Decree training sessions. Moreover, the Parties note that Mr. McGriff's prior service as an expert for the Monitor Team makes him uniquely qualified to continue his role as the ACT SME during the Sustainment Period because he would enter the role with a strong background knowledge of the scope and nuances of the Consent Decree.

## II. PHASE TWO: SUSTAINMENT PERIOD

The Independent Monitor's appointment will end at the conclusion of the Transition Period, no later than July 1, 2025. At that time, the Sustainment Period will begin. The duration of the Sustainment Period will be no less than twelve months and no more than twenty-four months. During the Sustainment Period, the dedicated Compliance Officers, ACLU-TN, and the SMEs will work together to ensure continued compliance with the Consent Decree. The Compliance Officers will serve as ACLU-TN's and the SMEs' primary contacts with the City, and the Compliance Officers will facilitate the SMEs' oversight and review of each expert's respective areas of compliance by regularly coordinating with the SMEs. The Compliance Officers' duties during the Sustainment Period will remain the same as outlined in the Transition Period.

The initial duration of the Sustainment Period will be set for eighteen months. However, the City will have the option to petition the Court for an early release from Sustainment Period. If the Court is satisfied that the City has substantially complied with the requirements for the Sustainment Period and appears fully prepared for the next phase (detailed below), the Court may reduce the Sustainment Period to twelve months. Similarly, the ACLU-TN will have the option to petition the Court for a six-month extension of the Sustainment Period beyond the initial eighteen-month term for reasonably articulated issues that are subject to examination by the Court during a hearing.

## III. PHASE THREE: SELF-CONTAINMENT WITH OVERSIGHT BY ACLU-TN

At the conclusion of the Sustainment Period, the City's continued compliance with the Consent Decree will become largely self-contained, with the ACLU-TN providing oversight, as described further below. The dedicated Compliance Officers will continue performing their same roles as outlined above, and the services of the SMEs will no longer be needed.

The Parties recognize the importance of maintaining an outside oversight mechanism, even during the Self-Containment Period. While the Court has previously suggested a multi-person advisory board comprised of community leaders from various organizations, the Parties agree that such an idea poses several problems. First, understanding the intricacies and nuances of the Consent Decree—especially to the degree that would be required to monitor compliance therewith—poses a sizeable learning curve. Second, the Parties have concerns regarding compensation for those serving on such a board. The Parties are further concerned about potential conflicts between an outside organization and the City of Memphis. Finally, the City's previous outreach to several organizations to gauge interest was met with lackluster response, which raises concerns over the sustainability and consistency of maintaining such a board.

As previewed at the August 13, 2024 status conference, the Parties propose that the ACLU-TN serve as this external oversight mechanism for the City. To facilitate this oversight, the Compliance Officers would submit a quarterly report to the ACLU-TN of all search terms and Section G authorizations. After reviewing the quarterly report, the ACLU-TN would have the opportunity to follow-up with the Compliance Officers to raise any concerns, request additional information, or investigate further as needed. In addition, the ACLU-TN would have access to inspect those MPD units who collect, but do not report, their social media activity, such as OCU or ICAC, at any time upon 48-hours' notice of the request for inspection. ACLU-TN would also have access to any citizen activity on the Consent Decree compliance website, including access to any complaints filed or other public inquiries or requests. As with the quarterly reports, ACLU-TN would have the ability to follow-up with the Compliance Officers to raise any concerns, request additional information, or investigate further as needed. Finally, ACLU-TN would retain the ability to review, and investigate further as needed, the Compliance Officers' (1) public engagement efforts; (2) audits and random compliance reviews; and (3)

officer training as outlined in the Compliance Officers' duties above.

The Parties agree that having ACLU-TN as the oversight entity makes the most sense. ACLU-TN is already uniquely familiar with the Consent Decree and with the policies and procedures implemented by MPD in response to the Court's rulings regarding the Consent Decree. Second, ACLU-TN would not require payment to perform the oversight function. Finally, and most importantly, ACLU-TN is arguably the only party with standing to bring a contempt action for violation of the Consent Decree. For these reasons, the Parties propose ACLU-TN as the oversight mechanism during the Self-Containment Phase.

## CONCLUSION

The Parties respectfully submit this Joint Consent Decree Sustainment Proposal to the Court for consideration.

Dated: September 13, 2024

Respectfully submitted,

|  | BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C. |
|---|---|
|  | */s/ Bruce McMullen* |
| */s/ Stella Yarbrough* | Bruce McMullen (#18126) |
| Stella Yarbrough (#033637) | Jennie Vee Silk (#35319) |
| American Civil Liberties Union | 165 Madison Avenue, Suite 2000 |
| Foundation of Tennessee, Inc. | Memphis, Tennessee 38103 |
| P.O. Box 120160 | Telephone (901) 526-2000 |
| Nashville, TN 37212 | E-mail: bmcmullen@bakerdonelson.com |
| Syarbrough@aclu-tn.org | jsilk@bakerdonelson.com |
| *Attorney for Intervenor Plaintiff* | *Attorneys for Defendant, The City of Memphis* |

8

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system.

                                            */s/ Bruce McMullen*
                                            Bruce McMullen