# Exhibit 2



# BAKER DONELSON
## BEARMAN, CALDWELL & BERKOWITZ, PC

2000 FIRST HORIZON BUILDING
165 MADISON AVENUE
MEMPHIS, TENNESSEE 38103

PHONE:   901.526.2000
FAX:       901.577.2303

www.bakerdonelson.com

BRUCE ANTHONY MCMULLEN, SHAREHOLDER
**Direct Dial**: 901-577-2356
**E-Mail Address**: bmcmullen@bakerdonelson.com

April 15, 2026

**VIA EMAIL**

Mr. Lucas Cameron-Vaughn
ACLU-TN
Lucas@aclu-tn.org

Mr. Tim Cook
Mr. Timothy Perla
Wilmer Hale
Tim.Cook@wilmerhale.com
timothy.perla@wilmerhale.com

> Re:    The City of Memphis's Preliminary Response to Formal Demand for
> Investigation regarding the "No Kings Memphis" march that occurred on March
> 28, 2026

Messrs. Cameron-Vaugh, Cook, and Perla,

The City of Memphis ("the City") is in receipt of your April 1, 2026 demand letter regarding Memphis Police Department's ("MPD") conduct related to the "No Kings Memphis" march held on March 28, 2026. I will respond to each of your enumerated demands separately.

1. **Open an immediate formal investigation into MPD's conduct on March 28, 2026, including the chain-of-command decisions that led to the use of force against peaceful participants and safety marshals as the march approached its conclusion.**

The City opened an Internal Services Bureau investigation immediately into the actions of the officers involved in the No Kings Memphis march. That investigation is ongoing. The lead investigator is currently reviewing all the video footage from the incident. For context, there are

4929-6697-5906

ALABAMA • FLORIDA • GEORGIA • LOUISIANA • MARYLAND • MISSISSIPPI • NEW JERSEY • NORTH CAROLINA •

SOUTH CAROLINA • TENNESSEE • TEXAS • VIRGINIA • WASHINGTON, D.C.

ACLU-TN Response to No Kings Memphis Demand
April 15, 2026
Page 2

112 different body worn camera videos that must be thoroughly reviewed as part of the investigation.

Once that process is complete, the investigator will begin witness interviews. There are at least twelve officer-witnesses that must be interviewed, and possibly up to thirty officer-witnesses that will be interviewed as part of the investigation.

Following the witness interviews, the four officers directly involved in the incident will be interviewed. Then, ISB will determine if there were any policy violations. That process is estimated to be complete by June 15, 2026. MPD is working as quickly as possible to complete the investigation, but it is in everyone's best interest—MPD's, ACLU-TN's, the public's, and the officers'—that the investigation be thorough and complete.

If ISB finds that any officer violated MPD policy, the officer will be administratively charged, and an administrative hearing will be scheduled.

Additionally, the City relieved the four involved officers from duty immediately following the event. The four officers remain on leave as of the date of this letter.

There is also a concurrent ongoing criminal prosecution against three of the individuals involved in the protest. The three individuals were arrested and charged. The status of the criminal prosecution is unknown at this time.

2. **Compel MPD to preserve and produce all body-worn camera footage, dash camera footage, surveillance footage, aerial footage, radio communications, command logs, operational plans, and any written or electronic directives related to MPD's response to the march.**

All video footage and documentation regarding this event has been preserved. Due to the ongoing criminal prosecution, the City is not releasing this information at this time. If the ACLU-TN (a current litigant against the City in the *Blanchard* case) would like to view the footage and other documentation, we will schedule a meeting to facilitate that inspection. Please let us know if that works for you.

3. **Determine whether the Director of Police, or a designee, issued the written authorization required by Section G before any enforcement action was taken against march participants, and if so, require production of those written findings and assess whether they satisfy the Decree's requirements.**

There was no Section G authorization obtained prior to this event, nor was one required. Section G governs "investigations which may interfere with the exercise of First Amendment rights." Specifically, Section G provides:

4929-6697-5906

ACLU-TN Response to No Kings Memphis Demand
April 15, 2026
Page 3

3. Certain criminal investigations prompted by or based upon the content of a person's speech or other expression, whether written or oral, are permitted provided that there is a legitimate law enforcement purpose for doing so. If an investigation is prompted by or based upon a person's speech or other expression for a legitimate law enforcement purpose, the investigation is permissible but always requires authorization as outlined in this section.

4. Any police officer conducting or supervising a lawful investigation of criminal conduct, which investigation is reasonably likely to result in the collection of information about the exercise of First Amendment rights or interfere in any way with the exercise of such First Amendment rights, must immediately bring such investigation to the attention of the Memphis Director of Police or a designee of the Director of Police for review and authorization.

*See* Amended Consent Decree, § G (emphasis added), attached as Exhibit 1.

Here, MPD was not investigating criminal activity prompted by or based upon the content of a person's speech. MPD was simply present and providing safety to the protestors and the public in response to the Special Event Permit that was filed by ▓▓▓▓ on February 24, 2026. *See* Permit, attached as Exhibit 2.

Notably, the Permit, which was approved by the City, represented that the event would be a "community building rally and resource fair," and the location of the event would be Robert Church Park. It further approximated the total attendance at the permitted event to be 50 people. The Permit did not disclose that the attendees intended to march on any public street, nor did it indicate that the attendees intended to block a public street.

Critically, the only "investigation" that occurred prior to the protest was a conversation between the commander of the North Main Precinct, and the event organizer. The commander called the event organizer to let her know that police would be in the area of her permitted event for the attendees' safety and the safety of the public. During that call, the event organizer did not indicate that the attendees intended to leave Robert Church Park, march on public thoroughfares, or block public streets.

4. **Assess whether the use of physical force, chemical agents, and detention against safety marshals and other participants constitutes harassment and intimidation prohibited by Section F.**

As noted above, the internal investigation is ongoing. We will update you once the investigation is complete.

4929-6697-5906

ACLU-TN Response to No Kings Memphis Demand
April 15, 2026
Page 4

5. **Determine whether any First Amendment-related intelligence—including photographs, video, or personal information about march attendees, organizers, or elected officials present—was gathered, retained, catalogued, or shared in violation of Section H.**

No First Amendment-related intelligence was gathered, retained, catalogued, or shared in violation of Section H.

6. **Issue a public report of findings promptly and, if violations are confirmed, recommend appropriate remedial measures and sanctions to the Court—including, if warranted, referral for contempt proceedings.**

As noted above, the internal investigation is ongoing. We will update you once the investigation is complete.

Best regards,

BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC

Bruce Anthony McMullen

cc:  Tannera Gibson
Odell Horton, Jr.
Jimmy Thomas
Edward L. Stanton III
Keenan Carter
Will Perry
Rachel Levinson-Waldman
Dr. James F. Pastor
Daniel J. Brown
Jennie Vee Silk
Kelsey W. McKinney

4929-6697-5906

**EXHIBIT**

**1**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| ACLU OF TENNESSEE, INC., | ) | |
| | ) | |
| Intervening Plaintiff, | ) | |
| | ) | Case No. 2:17-cv-02120-JPM-jay |
| v. | ) | Case No. 2:76-cv-00449 |
| | ) | |
| THE CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED JUDGMENT AND DECREE
"MODIFIED KENDRICK DECREE"**

**Preface**

Pursuant to the Court's Opinion and Order of September 21, 2020, the original

Kendrick Consent Decree (see Case No. 2:76-cv-00449, ECF No. 37), by consent of the

Parties as to all sections except as to §§ I and H, is hereby Amended and Restated in its

entirety as follows:

Plaintiffs, Chan Kendrick, Mike Honey, and the American Civil Liberties Union in

West Tennessee, Inc., commenced an action on or about September 14, 1976, against

defendants, Wyeth Chandler, Mayor of the City of Memphis, W. O. Crumby, Chief of Police

and Acting Director of Police of the City of Memphis, P. T. Ryan, Captain of the Intelligence

Section of the Memphis Police Department, and George W. Hutchison, Chief of Operations of

the Memphis Police Department, individually and in their official capacities.  On September

14, 1978, with consent of the defendants, an Order, Judgment and Decree ("Consent Decree")

was entered in Case No. 2:76-cv-00449.

On March 3, 2017, the ACLU of Tennessee, Inc. ("ACLU-TN") filed the instant intervening Complaint, which challenged the City's compliance with the Consent Decree. On August 10, 2018, the Court entered summary judgment in favor of ACLU-TN on certain claims in the litigation (see ECF No. 120), while reserving ruling on the other issues identified in that Order. On October 26, 2018, the Court entered an Order as to all remaining issues. (ECF No. 151.) The Court also found the City in contempt of the Decree in several respects and issued sanctions. (Id.) The Court ordered the appointment of an independent monitor to oversee the City's compliance with the Decree. (Id.; ECF No. 176.)

The parties engaged in mediation and agreed that modifications to the Consent Decree are reasonable given the changing technologies available to law enforcement, the advent of and pervasive use of social media in today's world, and the continuing responsibility of law enforcement agencies to guard against infringement of the First Amendment rights of citizens, which was the basis for entry of the Consent Decree in the first place. Effective upon execution of this Order, with respect to any affirmative obligations imposed on Defendant City of Memphis and its Police Division, the Consent Decree shall be superseded and replaced for all purposes with this Modified and Amended Consent Decree as follows:

**Amended Judgment and Decree**
**"Modified Kendrick Decree"**

A. **Statement of General Principles**

The defendants herein deny that they have acted illegally in any manner but agree to the terms hereinafter set out in order to dispose of the controversy between the parties.

2

The provisions of this Decree prohibit the defendants and the City of Memphis from engaging in law enforcement activities which interfere with any person's rights protected by the First Amendment to the United States Constitution including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish and to associate privately and publicly for any lawful purpose.

Furthermore, even in connection with the investigation of criminal conduct, the defendants and the City of Memphis must appropriately limit all law enforcement activities so as not to infringe on any person's First Amendment rights.

**B.** **Definitions**

1. "First Amendment rights" means rights protected by the First Amendment to the Constitution of the United States, including, but not limited to, the rights to communicate an idea or belief, to speak and dissent freely, to write and to publish, and to associate privately and publicly for any lawful purpose.

2. The "City of Memphis" means all present and future officials, employees and any other agents, and all departments, divisions and any other agencies, of the City of Memphis, Tennessee.

3. "Legitimate Law Enforcement Purpose" means an activity conducted for the purpose of furthering the prevention of crime and/or ensuring the safety of the public and law enforcement personnel, while adhering to law and agency policy designed to protect the privacy, free speech, association, and other civil rights and civil liberties of all people.

4. "Person" means any individual, group or organization.

5.      "First Amendment-related intelligence" is the gathering, indexing, filing, maintenance, storage, or dissemination of information or any other investigative activity which is undertaken due to or on the basis of a person's beliefs, opinions, associations or the content of the speech or expression protected by the First Amendment.

6.      "Defendants" means defendants Chandler, Crumby, Ryan and Hutchinson and their successors in office.

7.      "Social Media" means forms of electronic communication such as websites for social networking and microblogging through which users create online communities to share information, ideas, personal messages, and other content such as photos and videos.

8.      "Undercover Account" means an online alias to search or engage in interactions with a person via social media sites that may or may not be in the public domain.

**C.      First Amendment-Related Intelligence**

1.      The defendants and the City of Memphis shall not engage in First Amendment-related intelligence, except as otherwise provided for by Section G below.

2.      The defendants and the City of Memphis shall not operate or maintain any office, division, bureau or any other unit for the purpose of engaging in First Amendment-related intelligence.

**D.** **Prohibition Against Electronic Surveillance for First Amendment-Related Intelligence**

1.      The defendants and the City of Memphis shall not intercept, record, transcribe or otherwise interfere with any communication by means of electronic surveillance for the purpose of First Amendment-related intelligence.

2.      The Memphis Police Department may view information posted to social media for legitimate law enforcement purposes, so long as it does not improperly catalog and disseminate that information pursuant to Section H.  This viewing of information posted to social media includes conducting threat assessments.  There are further situations where the Memphis Police Department may inadvertently discover information related to the exercise of First Amendment rights as defined by the Consent Decree because of the very nature of social media.  The Memphis Police Department may not, however, surveil groups or persons involved in the exercise of their First Amendment rights for the purpose of First Amendment-related intelligence except as provided in subsection G of this Decree.

3.      If the Memphis Police Department gathers First Amendment-related intelligence concerning an upcoming event on social media or otherwise, and if there is no Legitimate Law Enforcement Purpose to retain the intelligence, once the event has passed, the information gathered shall be destroyed or removed.

**E.** **Prohibition Against Covert Surveillance for First Amendment-Related Intelligence**

1.      The defendants and the City of Memphis shall not recruit, solicit, place, maintain or employ an informant for the purpose of First Amendment-related intelligence; nor shall any officer, employee or agent of the City of Memphis, for the purpose of First

5

Amendment-related intelligence, infiltrate or pose as a member of any group or organization exercising First Amendment rights.

2.      The Memphis Police Department may employ "undercover accounts" on social media when investigating criminal activity.  The Memphis Police Department may not, however, create social media accounts for the purpose of First Amendment-related intelligence.

      a.  If First Amendment-protected information is gathered through the use of an undercover social media account, such information shall not be retained unless necessary to further a criminal investigation.

      b.  The Memphis Police Department will implement supervisory controls to ensure all undercover social media accounts are not being used or created to violate this Consent Decree or otherwise infiltrate or identify groups expressing their First Amendment rights.

### F.      **Harassment and Intimidation Prohibited**

1.      The defendants and the City of Memphis shall not disrupt, discredit, interfere with or otherwise harass any person exercising First Amendment rights.  Among other things, the City of Memphis shall not disseminate damaging, derogatory, false or anonymous information about any person for the purpose of First Amendment-related intelligence, or attempt to provoke disagreement, dissention or violence between persons.

2.      The defendants and the City of Memphis shall not engage in any action for the purpose of, or reasonably having the effect of, deterring any person from exercising First Amendment rights.  As an example, the City of Memphis shall not, at any lawful meeting or

demonstration, for the purpose of chilling the exercise of First Amendment rights or for the purpose of maintaining a record of persons exercising their First Amendment rights, record the name of or photograph any person in attendance, or record the automobile license plate numbers of any person in attendance.

3.      The Memphis Police Department may have officers present at gatherings of persons engaged in First Amendment activity for the purpose of ensuring public safety, as long as the Memphis Police Department's presence is not for the purpose of, nor may reasonably have the effect of, harassment or intimidation.

4.      Nothing in this provision prohibits the City from implementing reasonable time, place, and manner restrictions on First Amendment activities.

**G.      <u>Investigations Which May Interfere with the Exercise of First Amendment Rights</u>**

1.      Investigations and intelligence-gathering which are reasonably unlikely to result in the collection of information about the exercise of First Amendment rights, or interfere in any way with the exercise of such First Amendment rights are permissible and require no special authorization under Section G.  If, for example, an investigation or gathering of intelligence is based on an articulable suspicion of criminal activity, such as illegal drug dealing or the unlawful use of weapons, this directive does not require special authorization for that investigation/intelligence gathering unless and until the investigation is reasonably likely to result in the collection of information about the exercise of First Amendment rights, or interfere in any way with the exercise of such First Amendment rights.

7

2.      The Consent Decree does not require Director authorization under § G to begin investigations on social media, only those that are reasonably likely to result in the collection of information about the exercise of First Amendment rights or interfere in any way with the exercise of such First Amendment rights.  Where a social media investigation is based on the content of the speech or other expression, however, authorization is always required as outlined below.

3.      Certain criminal investigations prompted by or based upon the content of a person's speech or other expression, whether written or oral, are permitted provided that there is a legitimate law enforcement purpose for doing so.  If an investigation is prompted by or based upon a person's speech or other expression for a legitimate law enforcement purpose, the investigation is permissible but always requires authorization as outlined in this section.

4.      Any police officer conducting or supervising a lawful investigation of criminal conduct, which investigation is reasonably likely to result in the collection of information about the exercise of First Amendment rights or interfere in any way with the exercise of such First Amendment rights, must immediately bring such investigation to the attention of the Memphis Director of Police or a designee of the Director of Police for review and authorization.

5.      The Director of Police may appoint designees to authorize investigations under § G so long as they receive regular training on the Consent Decree and the Director of Police exercises periodic review and oversight of the designees.

6.      When an authorization is required under this Section, the Director of Police or his/her designee shall review the factual basis for the investigation and the investigative

techniques to be employed.  The Director of Police or his/her designee shall issue a written authorization for an investigation for a period not to exceed ninety (90) days only if the Director of Police makes written findings that:

    a.  The investigation does not violate the provisions of this Decree; and

    b.  The expected collection of information about, or interference with, First Amendment rights is unavoidably necessary for the proper conduct of the investigation; and

    c.  Every reasonable precaution has been employed to minimize the collection of information about, or interference with, First Amendment rights; and

    d.  The investigation employs the least intrusive technique necessary to obtain the information.

7.    The Director of Police or his/her designee may authorize an extension of such investigation for an additional period specified by the Director of Police or his/her designee not to exceed ninety (90) days.  The Director of Police or his/her designee shall authorize each such extension only if the Director of Police or his/her designee reevaluates the factual basis for the investigation and the investigative techniques to be employed, and makes current written findings as required in Paragraph 2, above.

8.    There are certain types of crimes that occur exclusively on the Internet that are purely criminal.  While these crimes may in some instances tangentially implicate the First Amendment, Director authorization under § G is not required to investigate those crimes. Examples of such cybercrimes are, including but not limited to, child pornography; identity theft; unauthorized intrusions into private networks; deployment of computer viruses; and cyberbullying.  Such investigations will be subject to Director/Designee audit bi-annually.  In

9

the event that an investigation directly implicates First Amendment activity or may result in the gathering of First Amendment-related intelligence, Section G would apply.

### H.      **Maintenance and Dissemination of Information**

1.      The defendants and the City of Memphis shall not maintain personal information about any person for the purpose of First Amendment-related intelligence unless it is collected in the course of a lawful investigation of criminal conduct and is relevant to such investigation.  Information which has been collected in violation of this Decree shall be destroyed.

2.      The defendants and the City of Memphis shall not disseminate personal information for the purpose of First Amendment-related intelligence about any person collected in the course of a lawful investigation of criminal conduct to any other person, except that such information may be disseminated to another government law enforcement agency then engaged in a lawful investigation of criminal conduct.

3.      The City of Memphis may record photos and videos with City-owned recording and photographic devices as long as the devices are not used for the purpose of First Amendment-related intelligence.

     a.   The City of Memphis may use the "pan/tilt/zoom" functions on its cameras and recording devices.

     b.   The City of Memphis may not, however, intentionally save and catalog video or images that would constitute First Amendment-related intelligence unless otherwise authorized by this Decree.

c.  The City of Memphis may continue its current practice of storing video from its video recording devices on the devices' internal storage as long as the footage automatically deletes as new footage is recorded.

d.  The City will implement a written retention policy for all camera footage that is downloaded from the cameras.

4.  The Memphis Police Department may use Body Worn Cameras as long as they are not used for the purpose of First Amendment-related intelligence.  Additionally,

a.  The use of Body Worn Cameras at First Amendment activity is subject to the Memphis Police Department's standard policy and procedures for the use of Body Worn Cameras;

b.  The Memphis Police Department may not retain body worn camera footage of such protests or assemblies unless it contains evidence of criminal activity or officer misconduct.

**I.     Restriction on Joint Operations**

The defendants and the City of Memphis shall not encourage, cooperate with, delegate, employ or contract with, or act at the behest of, any local, state, federal or private agency, or any person, to plan or conduct any investigation, activity or conduct prohibited by this Decree.

**J.     Dissemination and Posting of this Decree**

The defendants and the City of Memphis shall familiarize each of its law enforcement personnel with the contents of this Decree in the same manner in which those personnel are instructed about other rules of conduct governing such personnel.  In addition, defendants and

11

the City of Memphis shall disseminate and make known the contents of this Decree through publication, public posting and other means.

### K.   Effective Date

This Decree shall be effective when approved and entered by the Court as fair, reasonable and adequate.

### L.   Binding Effect

This Decree, providing prospective relief only, constitutes a full and final adjudication of all the named plaintiffs' claims for injunctive and affirmative relief as stated in the Complaint.  However, it shall have no binding effect upon any claims for damages that have been, might have been, or might in the future, be asserted by any other individual. any statutes of limitations that apply to any such claims are hereby tolled from September 14, 1976 to the date of this Decree.

### M.   Retention of Jurisdiction

The Court will retain jurisdiction of this action, including any issue which might arise regarding payment of attorneys' fees to counsel for plaintiffs, pending disposition of all matters contained in this Decree and for the purpose of issuing any additional orders required to effectuate this decree.

**SO ORDERED**, with consent of the Parties as to all sections either originally (see

Case No. 2:76-cv-00449, ECF No. 37) or in this agreed upon Modified Decree, this 21st day

of September, 2020.


   /s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

**EXHIBIT**

**2**



PAUL A. YOUNG
**MAYOR**

**CITY ATTORNEY**

**Permits Office**

## SPECIAL EVENT COVERSHEET
### MEMPHIS POLICE DEPARTMENT SPECIAL OPERATIONS REVIEW

| ☐ **SPEV RUN/WALK** | ☒ **PUBLIC ASSEMBLY** | ☐ **SPEV PARADE** |
|---|---|---|

| NAME OF EVENT | No Kings Memphis |
|---|---|
| ADDRESS OF EVENT | - Robert Church Park |
| CITY/STATE/ZIP | Memphis, TN 38103 |
| DAY(S)/DATE(S) | Saturday, March 28, 2026 |
| ASSEMBLY TIME | 12:00 p.m.    Start/End Times 2:00 p.m. - 6:00 p.m. |
| PURPOSE OF EVENT | Community building rally & resource fair |
| APPLICANT/REPRESENTATIVE | ██████████ |
| APPLICANT/REPRESENTATIVE PHONE # | ██████████ |
| EMAIL ADDRESS | ██████████████ |
| SPONSORING ORGANIZATION | Indivisible Memphis |
| PERMIT COMMENTS | T36615 |

**MPD:**

**THE FOLLOWING INFORMATION IS FOR INTERNAL PURPOSES ONLY:**

ESTIMATED MPD OVERTIME COSTS/
ESTIMATED NUMBER OF POLICE NEEDED  _____

LIST ANY PRIOR OUTSTANDING BALANCES
FOR THIS SPONSOR? (Year/Amount)  _____
**Reviewed by:**

_____
MPD-SPECIAL EVENTS OFFICER          DATE

_____
DEPUTY CHIEF-SPECIAL OPERATIONS     DATE

1st Floor - Suite 100 - 2714 Union Avenue Extended - Memphis,TN 38112 - (901) 636-6711       02/25/2026 08:28

PAUL A. YOUNG
MAYOR



CITY ATTORNEY

Permits Office

## Public Assembly
## Permit

**City of Memphis Permit Office**
**2714 Union Ave. Extended, Ste. 100**
**Memphis, TN 38112**

**The undersigned applicant has applied for a City of Memphis permit
in the name of:** Indivisible Memphis

**Name of Event:** No Kings Memphis

**Applicant/Representative:** ███████████

**Sponsoring Organization:** Indivisible Memphis
████████████████

**Day/Date of Event:** Saturday, March 28, 2026

**Assembly Time:** 12:00 p.m.   **Event Time:** 2:00 p.m. - 6:00 p.m.
**Rain Date:** N/A

**Contact Person:** ████████████

**Telephone Number:** ████████████

**Location of Event:** The event will be held at Robert Church Park.

**Special Conditions:** None

**Purpose of Event:** This is a community building rally and resource fair.

**Approximate number of units, people, animals and vehicles that will
participate:** 50 participants, 200 spectators

**Application Date:** 2/24/2026

**Any temporary structure(s) erected in the street or sidewalk:** None

**Total number of police required for traffic control:** Not Yet Determined

Outlook

## Approved Permits

**From** Mosby, Lt. Marcus ████████████████

**Date** Tue 3/3/2026 1:32 PM

**To** Permits Folder Distribution - DL ████████████████

**Cc** Mathena, Colonel Willie ████████████████ Cage, Major Constance ████████████████ Phillips, Major Richard ████████████████ Smith, Sgt. Corey ████████████████

CoM Public

1. NO KINGS MEMPHIS, ROBERT CHURCH PARK, 3/28/26, BEGINNING AT 2PM (**NO MPD INVOLVEMENT**)
2. MRTC MORE 5K, MADISON AVENUE, 4/11/26, BEGINNING AT 9AM (**MPD INVOLVEMENT**)
3. MIMOSA FESTIVAL, RIVERSIDE DRIVE/GEORGIA & BEALE, 4/12/26, BEGINNING AT 11AM (**NO MPD INVOLVEMENT**)
4. EAST BUNTYN ARTWALK, 461 PRESCOTT STREET, 4/25/26, BEGINNING AT 11AM (**NO MPD INVOLVEMENT**)
5. INTERNATIONAL COUNCIL OF CORVETTE CLUBS 21ST CAR SHOW, BEALE STREET, 4/25/26, BEGINNING AT 6AM (**NO MPD INVOLVEMENT**)
6. THE WHITEHAVEN COMMUNITY FESTIVAL, WHITEHAVEN PLAZA, 5/9/26, BEGINNING AT 11AM (**NO MPD INVOLVEMENT**)
7. STROWDER/LEONARD FAMILY DAY, AUDUBON PARK, 5/23/26, BEGINNING AT 11AM (**NO MPD INVOLVEMENT**)

Lieutenant Marcus Mosby
Special Events - Traffic
3430 Austin Peay Hwy
████████████████

Working hand-in-hand with our community and using innovative technology, we strive to prevent crime, support victims, protect our community members, and build a Stronger, Safer Memphis for every neighborhood and family.



PAUL A. YOUNG
**MAYOR**

**CITY ATTORNEY**

**PERMITS & LICENSES**

## PUBLIC ASSEMBLY APPLICATION
(Pursuant to City of Memphis Ordinances 5675)
(The List of Required Information is Attached)
(Please print or type)



136615

**APPLICATION FEES**
➤ APPLICATION FEES ARE NON-REFUNDABLE
➤ PUBLIC ASSEMBLY APPLICATION FEE – $50
➤ EVENTS WITH A PARTIAL/FULL STREET CLOSURE OF ANY PUBLIC STREET, SIDEWALK, RIGHT-OF-WAY OR DIVERSION
  OF THE NORMAL FLOW OF VEHICULAR AND/OR PEDESTRIAN TRAFFIC – AN ADDITIONAL FEE OF $100.00 IS REQUIRED

**PUBLIC ASSEMBLY APPLICATIONS MUST BE FILED WITH THE PERMITS OFFICE AT LEAST 14 BUSINESS DAYS BEFORE PUBLIC ASSEMBLY IS PROPOSED TO COMMENCE UNLESS THE EVENT MEETS THE FOLLOWING CRITERIA:**

SPONTANEOUS EVENT: "Spontaneous events occasioned by news or affairs coming into public knowledge within seven (7) days of such public assembly, provided that the organizer thereof gives written notice to the Permits Office at least forty-eight (48) hours prior to such parade or public assembly."

*The Permits Office, in consultation with the director of police, may waive the minimum filing period and accept an application filed within a shorter period if, after due consideration of the date, time, place and nature of the event the anticipated number of participants, and the city services in connection with the event, he or she determines that the waiver will not present a hazard to public safety, health, and/or welfare.*

*PRIVATE PROPERTY:  The Permits Office does not issue permits for events that are scheduled on private property.*

1. Filing Date: 2|24|2026

2. Will the event take place on private property? _____Yes _X_ No

3. Is the proposed date of the event at least 14 business days prior to the event? _X_ Yes _____No

   If no, is the event in response to a spontaneous event as defined above? _____Yes _X_ No

   If yes, please complete a Spontaneous Event application.

4. Name of Event: No Kings Memphis
   Purpose of the Event: community building rally 3 resource fair

5. Individual Submitting Application:

   Name: ███████████        Address: ███████████

   Tele#: ███████████        Email Address: ███████████

6. Is the Person seeking to conduct this event a resident of Shelby County? _____Yes _∧_ No

   If no, the Person conducting the event shall place a surety bond and deposit equal to 50% of the total cost as deemed

   applicable by the Director of Police once the cost is determined prior to a permit being issued.

7. If an organization is sponsoring the event provide:

8. Organization Name: Indivisible Memphis

   Address: ███████████████████████████████████████████

   Tele#: ████████████████████   Email Address: ███████████████████████

   List authorized/responsible heads of the organization: ████████████████████████████

9. Please provide:

   a. Date of Event: 3/28/24   Rain Date: N/A

      Assembly Time: 12:00 pm   Start Time: 2:00 pm   End Time: 4:00 pm

   b. Portions of streets that may be occupied by the public assembly: N/A

   c. Such other information as either the Permits Office or the Police Director shall find necessary to the enforcement of this permit (attach any such information).

10. What is the street address/assembly areas for this event? 191 Beale Street

11. Where is the specific location of this event? Robert Church Park

12. The approximate number of participants (spectators are by definition not participants):

    (a) persons 50   (b) animals N/A   (c) vehicles N/A

    (d) If vehicles, please describe the type _____ N/A _____

13. Please provide the approximate number of spectators: 200

14. Designate any public facilities or equipment to be utilized: park area

15. Provide a description of any recording equipment, sound amplification equipment, banners, signs and/or other attention getting devices to be used in connection with the event: basic PA that cannot be heard 100 yards away

16. When the use of drones, in association with the event is used by the applicant, the applicant must provide Drone Liability Coverage at the time of filing the application which lists the City of Memphis as an additional insured. The minimum liability coverage is $1,000,000 for personally used drones and $3,000,000 for commercially used drones. Further, Civil/Non-Government Entities, and entrepreneurs flying for business pursuit will need to possess a current FAA Part 107 license. Non-commercial pilots must have completed FAA TRUST training per FAA regulations. A copy of the Part 107 license and/or TRUST certificate must be attached to the permit application. In addition to the Part 107 and TRUST requirements, all flights in controlled airspace must be authorized by LAANC and the authorization number must be included with the permit application. All drones used must be registered with the FAA and a copy of the registration attached to the permit application. Use of UA or drone flights must be compliant with all federal, state, and local laws and ordinances.

17. Please select the type of Drone usage associated with this application, if any, by checking the appropriate box:

    N/A Personal  N/A Commercial  X N/A

18. LAANC authorization number (if required): N/A

19. Will a street closure or lane closure be required for this event? ____ Yes  X No

    a. Please specify the location of the proposed closure: _____

    _____   N/A

20. Please specify how traffic control for the street/lane closure will be managed: N/A

Rev.6/3/2024                    Page 2

a.  MPD Officers will be present to address street/lane closures. _____Yes __X__No ___N/A

OR

b.  Applicant will provide required traffic control. _____Yes _____No _____N/A
Applicant is required to coordinate with Traffic Engineering on a suitable traffic control plan for this event, which includes providing the proper signage and traffic control devices for closing roadway or any lanes. *Please contact Traffic Engineering at 901-636-6710*.

21. For applicants requesting street closures and/or barricades, explain why they are needed:___N|A_____

_____

a.  If barricades are to be used, describe the type:_____

b.  Provide placement time(s):_____ Removal time(s):_____

c.  Identify the individual responsible for placement and removal of any barricades.

_____          _____
(Name)                                (Telephone #)

22. Will alcoholic beverages be served at the event either gratis or for sale? _____Yes __X__No

(If alcoholic beverages are to be sold, attach a copy of a permit and/or license for the sale of alcoholic beverages and/or a copy of any application filed and/or to be filed.)

23. Submit a copy of any other required approvals, i.e., Park Commission, Riverfront Development Corporation, etc.

## REPRESENTATIONS/ACKNOWLEDGMENTS

The Applicant, represented by (sponsoring organization, if any)__Indivisible Memphis__, agrees to comply with all of the requirements of the Permits Office of the City of Memphis (City) and conditions as set forth above in connection with the event,__No Kings Memphis__, scheduled for __March 28, 2026__. The Applicant understands that the Memphis Police Department (MPD) may, in its discretion electronically monitor the event for the purpose of protecting life and property, providing security and control of event activities, and preserving the peace of the City through its law enforcement responsibilities. Any activity of the Applicant arising out of the event resulting in injury, damage or loss to the City is the responsibility of the Applicant. Any overtime costs incurred by the MPD in the exercise of its duties and responsibilities relating to the event are the responsibilities of the Applicant. City of Memphis ordinances require the Director of Police to ensure public safety and to inform an applicant of any estimated additional costs of providing such services for the event to the applicant in advance of the event. However, the additional charges, by mutual agreement of the applicant and the City, may be adjusted based on the comparative economic, cultural, social and regional impact of the event on the community-at-large but in no event payment by the Applicant shall exceed twenty-five percent of the estimated additional costs when the impact is substantiated; and if applicant is not a resident of Shelby County, the applicant shall place a surety bond and deposit equal to 50 percent of the total cost as deemed applicable by the Director of Police. All supportive information must be presented to the City at least sixty days after the event. Where an Applicant has multiple events during a calendar year, the statement shall be valid for twelve months from the initial adjustment approval and apply to all said events of the Applicant. Further, the Applicant hereby indemnifies and hold harmless the City of Memphis from any claim, demand, action, suit of any type whatsoever, directly or indirectly, resulting or alleged to have resulted from the event for which this permit is granted and I, ██████████████████████, the

Rev.6/3/2024                          Page 3

Applicant, makes oath that the information contained herein is true and accurate, to the best of my knowledge, and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to all terms and conditions herein set forth.

By: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮    2/24/26

(Date)

* Disclaimer: Permits which are inadvertently issued for events scheduled on private property will be deemed void.

---

**NOTARY**

COUNTY OF __Shelby__

STATE OF __TN__

Before me appeared, after having provided proof of identification who affixed their signature to the above statement on this __24th__ day of __February__, 20 __26__.

__Liza M. Seals__
(Notary Public)

(My Commission Expires)

Rev.6/3/2024                                    Page 4



Memphis Parks: Facility Reservation Certificate

MemberName]
**02932835**
**Robert Church Park**
Beale Street @ Fourth Street

Park hours of operation are 6:00 a.m. to 8:00 p.m. during the Spring/Summer and 6:00 a.m. to 6:00 p.m. during the Fall/Winter.

We recommend you contact the City of Memphis Permits Office in-person at 2714 Union Avenue Extended, Suite 100 or call (901) 636-6711 at least 14 days prior to your event to obtain a Special Event permit required for gatherings of more than 25 persons.

Memphis Parks facility use requires approval of all necessary permits, licenses, and insurance. Non-compliance may lead to rental termination.

We appreciate your business and look forward to serving you in the future.

Reservation:

1. **Robert Church Park – 3/28/2026  2:00 PM – 3/28/2026  6:00 PM**
    Line Description: **Community Rally & Resource Fair**
    Group Size: **250**
    Add Ons:
    • **Special Event 201-349 ppl (1 x $250.00) – $250.00**
    Facility Fee: **$0.00**
    Total: **$250.00**

Amount Paid:
**250.00**

Facility Reservation Permit Print Date/Time:
**2/24/2026**
**12:57 PM**