# Exhibit 4

**WILMERHALE**

April 23, 2026

**Timothy A. Cook**

+1 617 526 6005 (t)
+1 617 526 5000 (f)
tim.cook@wilmerhale.com

***By Electronic Mail***

Edward L. Stanton III
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
Edward.Stanton@butlersnow.com

Bruce A. McMullen
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
2000 First Horizon Building
165 Madison Avenue
Memphis, TN 38103
bmcmullen@bakerdonelson.com

> **Re:  The Memphis Police Department's Conduct at the March 28, 2026 "No Kings" Event**

Dear Monitor Stanton and Mr. McMullen:

We write on behalf of the American Civil Liberties Union of Tennessee ("ACLU-TN") in response to the City of Memphis's April 15, 2026 letter.[1]  ACLU-TN appreciates the City's commitment to complete an investigation of the Memphis Police Department's actions at the No Kings event by June 15, 2026.  That is a good first step, but the City must do more to determine what went wrong and to prevent future Consent Decree violations.[2]  ACLU-TN has three main concerns: the investigation's adequacy and transparency, the adequacy of the MPD's systemic reforms to prevent Decree violations, and the City's unduly narrow interpretation of the Decree's requirements in the political-protest context.  We will address each below.

First, however, we must correct a misconception.  The MPD and the City have publicly suggested that the MPD's actions may be partly excused because "the permit" for the No Kings

---

[1] Letter from B. McMullen to L. Cameron-Vaughn et al. (Apr. 15, 2026) ("City Ltr.").

[2] Amended Judgment & Decree, "Modified *Kendrick* Decree," Dkt. No. 379, *ACLU of Tenn., Inc. v. City of Memphis*, No. 2:17-cv-2120-MSN-jay (Sept. 21, 2020) (the "Decree").

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
April 23, 2026

event "did not include a march."[3]  The City's letter echoes this.[4]  But the law is clear:  People taking part in a political march enjoy substantial First Amendment protections even if the march has no permit.  City "streets and parks" are "quintessential public forums," where First Amendment protections are at their apex.[5]  As the U.S. Court of Appeals for the Sixth Circuit has explained, "parades and processions are a unique and cherished form of political expression, serving as a symbol of our democratic tradition," and "[t]here is scarcely a more powerful form of expression than the political march."[6]  "Requiring potential march participants to seek authorization from city officials before joining a public procession or risk being jailed," the Court explained, "is antithetical to our traditions, and constitutes a burden on free expression that is more than the First Amendment can bear."[7]  If the City is suggesting that using force against political protesters was acceptable ***only*** because the City had not issued a march permit, that fundamentally contradicts the First Amendment.[8]

The City's attempt to justify the MPD's actions by claiming surprise fares no better. Indivisible Memphis, which organized the event, widely publicized its plan for a march beginning around 4:20 PM.[9]  The event received so much attention that a local news station ran a

---

[3] Memphis Police Dep't, Statement on March 28th "No Kings Rally" Incident (Mar. 29, 2026), https://tinyurl.com/5n7avsc6; *see also* Mayor Paul A. Young, Building Together: City of Memphis Weekly Newsletter (Apr. 3, 2026, 4:15 PM CDT), https://tinyurl.com/4ja5s35t ("Important details to note: That permit did not include a parade route, a march through downtown, or any street closures."); *id.* ("If this rally was intended to include a march, which now appears to be the case as they had outfitted parade marshals, the organizers should have filed a parade permit.").

[4] City Ltr. at 3 & Ex. 2 (attaching permit and including two paragraphs discussing its scope).

[5] *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983).

[6] *American-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 611-12 (6th Cir. 2005) (finding strict liability offense for taking part in an unpermitted march unconstitutional).

[7] *Id.* at 612.

[8] *See, e.g.*, *Vodak v. City of Chicago*, 639 F.3d 738, 746 (7th Cir. 2011) (requiring that police determine that individual marchers in an unpermitted march had reason to believe that they were violating the law based on clear dispersal order before finding probable cause for arrest).

[9] *See, e.g.*, Image posted by Indivisible Memphis, FACEBOOK (Mar. 26, 2026, 8:32 AM), https://tinyurl.com/yfwr835x.

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
April 23, 2026

segment that showed the event's agenda, ***including the planned march***, the day before it happened: [10]



As the chyron shows, the segment focused on the MPD's plans for an increased police presence in Downtown Memphis because of "big crowds."  It also included comments from the MPD. The MPD was (or should have been) aware that the protesters would march. [11]

ACLU-TN is concerned that the City's focus on permitting—which is not the relevant issue—may reflect a misunderstanding of the Decree's requirements in the protest context.  This underscores the need for a robust and transparent investigation and, if proper, remedial measures.

---

[10] Kaitlyn Miller & Garner Montgomery, *MPD Increasing Patrol and Adding Specialized Units Ahead of Busy Weekend Downtown*, Action News 5 (Mar. 27, 2026, posted online at 7:34 PM EDT), https://tinyurl.com/yv8r7ua3 (agenda aired at 1:29 into the video, with voiceover that "the protest will feature … a march that will start at 4:20pm").

[11] The segment also contradicts the City's suggestion that it was surprised by the size of the event. *Compare id.* (news article estimating the expected turnout at "roughly 11,000 people" and, in video at 0:32, reporting that "with thousands of people expected down here this weekend, MPD says they are adding more boots on the ground, including specialized units in preparation of these big crowds"), *with* City Ltr. at 3 (noting that the permit "approximated the total attendance at the permitted event to be 50 people").

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
April 23, 2026

## I.     The City's Investigation Must Be Comprehensive and Public.

ACLU-TN is pleased to learn that the City has begun investigating "the actions of the officers involved" in the No Kings event.  City Ltr. at 1.  The investigation described in the City's letter is a necessary and proper step.  The City should regularly update ACLU-TN on the investigation's status before the June 15, 2026 completion date.

That said, the City's planned investigation appears to be insufficient in several respects:

- **The investigation should assess Decree violations, not just "policy violations."**  As ACLU-TN's April 1, 2026 letter explains, ample evidence suggests that the MPD violated the Decree through its excessive use of force against political protesters.  While ACLU-TN supports the City's investigation of "policy violations" by individual officers, City Ltr. at 2, ACLU-TN's larger concern is whether the ***MPD*** violated the ***Decree***.  If the City and MPD had put proper procedures in place, it is hard to see how this excessive response could have happened.  The investigation should therefore extend beyond the individual officers who used force.  It should include at least the chain-of-command decisions that led to officers using force, whether the Director of Police or her designee authorized force, and how the MPD trained the officers on the scene and their supervisors on the Decree.  Investigating whether four officers used excessive force and violated MPD policies is worthwhile, but it is a narrower question than whether the MPD violated the Decree.

- **The Monitoring Team and ACLU-TN should have a meaningful opportunity to participate in the investigation.**  The Monitoring Team is charged with ensuring compliance with the Decree, and ACLU-TN is charged with enforcing it.  The City should therefore allow the Monitoring Team and ACLU-TN to participate in the investigation.[12]  We ask the City to arrange a meeting among the team conducting the investigation, ACLU-TN, and the Monitoring Team to discuss the investigation's scope and our access to evidence.[13]  We hope the parties can agree on a cooperative process for

---

[12] We recognize that the investigation may consider other "policy violations," as the City describes them, that relate to personnel matters and are unrelated to compliance with the Decree.  To be clear, ACLU-TN only seeks to take part in the investigation of Decree violations.

[13] ACLU-TN appreciates the City's offer to inspect footage and other documentation related to the No Kings event.  City Ltr. at 2.  Access to that evidence is better addressed in the broader evidence-sharing

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
April 23, 2026

the investigation; however, ACLU-TN reserves the right to conduct its own inquiry if necessary, including by seeking an order compelling discovery.

- **The investigation's scope, results, and key evidence should be public.**  The Decree is intended to protect Memphians' right to engage in First Amendment-protected activity—including peaceful political protest—without fear of reprisal.  It arose after the MPD egregiously violated the public's trust in the 1960s and 1970s and again in the 2010s.  The City must conduct a transparent investigation to reassure the public that this bulwark of their freedoms remains strong and to mitigate the chilling effect that the MPD's actions at the No Kings event caused.  ACLU-TN therefore again asks the City to commit to releasing the investigation's key evidence and findings.  The City's only alleged reason not to—"the ongoing criminal prosecution" of the three people who were arrested, City Ltr. at 2—is no longer an excuse.  Based on news reports from the ***same day*** as the City's letter, the State has dropped these charges.[14]

- **The investigation must comply with the Decree.**  Finally, ACLU-TN is concerned that the City's letter does not say whether the ***current*** investigation has been properly authorized under the Decree.  Section G.4 requires authorization for any "investigation of criminal conduct" that "is reasonably likely to result in the collection of information about the exercise of First Amendment rights."  This is such an investigation.  While reviewing whether the officers' responses were justified, the investigators will likely assess whether criminal conduct occurred (either by members of the public or by the officers themselves).  Likewise, while reviewing "112 different body worn camera videos" and interviews of "possibly up to thirty officer-witnesses," including "the four officers directly involved," City Ltr. at 2, the investigators will collect information about the protesters' exercise of their First Amendment rights.  ACLU-TN therefore asks the City to confirm that the MPD obtained authorization before starting this investigation, as the Decree requires.  Clarifying this point will help ensure that the City does not taint the investigation or its findings with procedural violations.

---

meeting that we have proposed, but at minimum, ACLU-TN accepts the City's offer to conduct that review (without waiving the right to seek broader release of these materials).

[14] *See* Jeremiah Hall, *Charges Dropped Against 3 Arrested at 'No Kings' Rally*, Local Memphis ABC 24, https://tinyurl.com/mjuf8daf (Apr. 15, 2026, 8:55 PM CDT).

**WILMERHALE**

Edward L. Stanton III
Bruce A. McMullen
April 23, 2026

## II.    The City Must Ensure That the MPD Complies with the Decree in the Future.

We hope the investigation described above will help the parties and the public understand what happened at the No Kings event.  But understanding alone is not enough.  The City and the MPD must ensure that Memphians' First Amendment rights are protected going forward.  Depending on what the investigation finds, the City and MPD may need to implement further monitoring, training, or other remedies, including in their protest-response policies.

The City's letter largely ignores remedies, aside from noting the possibility of "administratively charg[ing]" individual officers with violations of MPD policy.  City Ltr. at 2.  If the MPD violated the Decree, that will not be sufficient.  We hope the City will work cooperatively with ACLU-TN and the Monitoring Team to identify and implement remedial measures once the investigation is complete.  But, if that fails, ACLU-TN reserves all rights to seek remedies from the Court.

## III.    The City Misunderstands the Section G Process for Political Protests.

Notwithstanding the ongoing investigation, we address one Decree violation now.  The City's letter concedes that the MPD did not seek authorization under Section G for its actions at the No Kings event—either before the event, before using force to disperse marchers, or before arresting and charging some safety marshals.  That violated the Decree.

Section G.4 of the Decree states:

> Any police officer conducting or supervising a lawful investigation of criminal conduct, which investigation is reasonably likely to result in the collection of information about the exercise of First Amendment rights or interfere in any way with the exercise of such First Amendment rights, must immediately bring such investigation to the attention of the Memphis Director of Police or a designee of the Director of Police for review and authorization.

Put differently, the MPD must obtain authorization if (1) a police officer is conducting or supervising a lawful investigation of criminal conduct and (2) that investigation is reasonably likely to result in the collection of information about someone's exercise of First Amendment rights or to interfere in any way with someone's exercise of First Amendment rights.

– 6 –

Edward L. Stanton III
Bruce A. McMullen
April 23, 2026

It is beyond debate that police officers dispersing a peaceful political march and pepper-spraying, forcibly detaining, and arresting protest participants and safety marshals is "reasonably likely to … interfere … with the exercise of … First Amendment rights."  The MPD's response obviously interfered with the protest itself.  And by using excessive force against readily identifiable protest officials, the MPD's actions had a chilling effect on future political protests (and protest organizers) in Memphis.

Nor is it debatable that the MPD's operation at the No Kings event fell within the type of law enforcement activity that Section G covers.  The MPD must seek authorization for any operation "reasonably likely to … interfere in any way with the exercise of … First Amendment rights."  The MPD deployed many officers, mounted units, and other resources to watch a political protest and be ready to intervene based on what they saw.  Regardless of whether MPD chooses to label that an "investigation," it was planned observation at a political protest, which is precisely a scenario that Section G.4 was designed to protect.  Even if officers made individual use-of-force decisions in the moment, the Decree required MPD to obtain advance authorization for the overall deployment to ensure that any interference with First Amendment rights was "unavoidably necessary" and employed "the least intrusive technique."[15]

If the City interprets Section G differently, ACLU-TN looks forward to working with the City to understand what its interpretation is.  This includes understanding what types "investigations" the City believes trigger Section G and whether there are other similar circumstances in which the City has not sought Section G authorization.  But to be clear, ACLU-TN believes that the Decree is clear on this point and reserves the right to seek elaboration of Section G's requirements from the Court if the MPD persists in an unduly narrow application of the Decree's terms.



We understand that the Monitoring Team is arranging a joint discussion with the parties.  ACLU-TN looks forward to that meeting and to working cooperatively with the City to

---

[15] Decree § G.6.

WilmerHale

Edward L. Stanton III
Bruce A. McMullen
April 23, 2026

investigate the MPD's No Kings response and to design remedial measures that protect the
Decree's integrity.

Respectfully,

Timothy A. Cook

cc:    Independent Monitoring Team (Keenan Carter, Will Perry)
       Subject Matter Experts (Rachel Levinson-Waldman, James F. Pastor, Daniel J. Brown)
       Counsel for the City of Memphis (Jennie Vee Silk, Kelsey W. McKinney)
       Counsel for ACLU-TN (Lucas Cameron-Vaughn, Timothy J. Perla, Charles T. Cox Jr.,
       Noah Kaitin, Elizabeth Bedrick, Amanda Clarke)