# Exhibit 5

WILMERHALE

May 6, 2026

Timothy A. Cook

+1 617 526 6005 (t)
+1 617 526 5000 (f)
tim.cook@wilmerhale.com

**By Electronic Mail**

Edward L. Stanton III
BUTLER SNOW LLP
6075 Poplar Avenue, Suite 500
Memphis, TN 38119
edward.stanton@butlersnow.com

Bruce A McMullen
BAKER, DONELSON, BEARMAN,
  CALDWELL & BERKOWITZ, P.C.
2000 First Horizon Building
165 Madison Avenue
Memphis, TN 38103
bmcmullen@bakerdonelson.com

Re:  **The Memphis Police Department's April 16, 2026 Section G Authorization Relating to
the March 28 "No Kings" Event**

Dear Monitor Stanton and Mr. McMullen:

The American Civil Liberties Union of Tennessee ("ACLU-TN") recently received a
copy of the Memphis Police Department's April 16, 2026 Section G Authorization Form relating
to an ongoing investigation following the March 28 "No Kings" Event (Exhibit A).  ACLU-TN
has serious concerns with this authorization, including that it is inconsistent with the City's prior
position, facially overbroad, factually unsupported, and inconsistent with the *Kendrick* Consent
Decree's requirements.  These concerns are related to the issues about the City's interpretation of
Section G that we explained in our April 23, 2026 letter, and we expect to discuss them in our
upcoming calls.  We hope this summary will help the City prepare for those discussions.

To begin, we are disappointed that the City did not share this authorization with ACLU-
TN directly.  ACLU-TN's April 1, 2026 letter focused on this very issue (the City's failure to
obtain a Section G authorization for the event), and sharing the authorization form would have
been a productive way to start addressing ACLU-TN's concerns.  Moreover, the Court-adopted
sustainment proposal requires the MPD's Compliance Officers to "engage, as required, with the
SMEs and ACLU-TN to review and assess the City and MPD's compliance with the Consent

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
May 6, 2026

Decree" and "facilitate communications between SMEs and ACLU-TN, as needed."[1] We are concerned that the City's and the MPD's failure to share the April 16, 2026 authorization form reflects insufficient commitment to the transparency that both the Decree and the transition framework require.

Similarly, ACLU-TN is concerned about this authorization's timing. On April 15—just one day before the MPD made the request—the City represented to ACLU-TN that Section G was categorically inapplicable to MPD's conduct at the No Kings event and that no authorization was required.[2] Yet the next day, MPD sought Section G authorization premised on a narrative of widespread noncompliance, resistance, and public disorder (which the request fails to support with any evidence). If the request was intended to seek a retroactive authorization for the March 28 event,[3] the City must explain its reversal. And if the request was intended to authorize a new, prospective investigation into the public's response to the MPD's actions at the No Kings event,[4] it calls into question both the City's interpretation of the Decree and the factual accuracy of the request itself.

Aside from these general concerns, the authorization form fails to comply with Section G in at least four ways:

- ***First***, the authorization is facially overbroad. It purports to allow social media surveillance untethered to any identified subject or account—indeed, the requesting officer did not even complete the "Subjects of Investigation" section of the request

---

[1] Dkt. No. 526-1 at 4-5.

[2] *See* Letter from B. McMullen to L. Cameron-Vaughn et al. (Apr. 15, 2026) at 2-3.

[3] *See, e.g.*, Ex. A at 1 ("In addition, we are also reviewing MPD video of the protest…."). To be clear, Section G does not permit after-the-fact rationalization of interference with First Amendment activity: It is a prophylactic safeguard intended to ensure that review occurs ***before*** law enforcement conduct risks chilling protected speech— not a mechanism for validating conduct once controversy has arisen. Our April 23, 2026 letter addresses this concern in more detail. Similarly, this portion of the request addresses the concern expressed in our April 23, 2026 letter about whether the City has obtained Section G authorization for its ongoing investigation of the MPD's response on March 28. *See id.* (referring to "an administrative investigation"). But the City must explain why it did not obtain authorization until April 16 for an investigation that it described as "ongoing" a day earlier. *See* Letter from B. McMullen to L. Cameron-Vaughn et al. (Apr. 15, 2026) at 1. Again, Section G authorizations must precede investigations—they cannot be afterthoughts.

[4] *See, e.g.*, Ex. A at 1 (requesting "authorization to monitor publicly available social media platforms to identify emerging threats" and "assess the potential for unrest," which appear to be forward-looking actions).

– 2 –

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
May 6, 2026

form. Likewise, the authorization does not identify a specific investigation—it authorizes MPD to search all "publicly available social media platforms to identify emerging threats" and "assess the potential for unrest" to identify "activities that may impact public safety within Memphis and surrounding jurisdictions" for 90 days. The authorization does not connect these vague "threats" and "potential for unrest" with the events at the No Kings event, which are the purported bases for the surveillance. Nor does it explain why monitoring all publicly available social media platforms is "unavoidably necessary." This omission is unsurprising, since there would be no way to make the required necessity determination based on such an overbroad description of the investigation. Section G was designed to prevent that sort of open-ended authorization, particularly where the investigation would predictably sweep in protected political expression unrelated to any lawful criminal investigation. Several requirements in Section G make clear that MPD must seek authorizations for *specific* investigations based on specific facts and upon specific written findings—not blanket authorization for forward-looking surveillance. *See, e.g.*, Decree § G.4 (requiring authorization for specific "lawful investigation[s]," not blanket surveillance activities); *id.* § G.6 (requiring review of "the factual basis for the investigation and the investigative techniques to be employed"); *id.* (requiring "written findings" by the authorizing individual).

- **Second**, the request contains no supporting evidence. That alone is a problem, but it is particularly concerning here, where the factual predicates described in the request contradict the extensive video evidence of the event. The request asserts that officers gave commands for approximately forty minutes for demonstrators to clear the roadway and that participants "refus[ed] to comply" and "resisted officers," necessitating detentions and the use of pepper spray. But no video evidence that we have seen shows that demonstrators refused to comply with officer commands. Quite the opposite, video footage shows MPD officers allowing the march to progress for nearly 40 minutes and appearing to understand that the march was nearing completion just before they intervened.[5] The videos do not show resistance either. They show march participants and designated safety marshals facing the officers and calmly backing away from them and toward Robert Church Park—just feet away—where the

---

[5] *See, e.g.*, MEMPHIS SOCIAL MEDIA LAB, *What Happened at the No Kings Protest in Memphis on March 28, 2026*, https://www.youtube.com/watch?v=f-5-Hqg3OGE, at 09:15, 10:34 (YouTube, Mar. 31, 2026).

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
May 6, 2026

march was to conclude.[6]  And no footage that we have seen shows individuals resisting arrest—indeed, where there were disturbances, video evidence suggests that MPD officers caused them.[7]  On this record, the request's one-sided narrative—with no supporting evidence and no mention of the ample evidence contradicting the narrative—cannot form a reasonable basis for any Section G authorization.

- ***Third***, the authorization form contains no written findings.  The Decree requires "written findings" by the authorizing individual.  Decree § G.6.  There are no written findings whatsoever in this authorization—just a signature following a recitation of the four categories of written findings that the Decree requires the authorizing official to make.  Even if the form were an appropriate means of ***requesting*** a Section G authorization (which we do not concede, particularly because the request here included no evidence to corroborate its assertions), the Director of Police would still be bound by the Decree's express requirement to make "written findings" before ***granting*** the authorization.  And there is good reason for this requirement—written findings allow ACLU-TN, the monitoring and sustainment teams, and the Court to review how MPD is administering the Decree.  A simple signature—like what is on this authorization—does not enable the oversight that the Decree contemplates.

- ***Fourth***, and relatedly, the authorization form does not demonstrate that the MPD employed—or even considered—less intrusive means.  There is no indication that MPD evaluated whether existing evidence (including the 112 body-worn camera videos it is already reviewing) was sufficient, or whether targeted investigative steps could address any legitimate public safety concern without resorting to monitoring protected speech.

ACLU-TN remains willing to engage cooperatively with the City and the Monitoring Team to ensure compliance with the Decree and to prevent further erosion of First Amendment protections in Memphis.  However, we reserve all rights to seek appropriate relief to address what appears to be a fundamental misunderstanding of the City's obligations under the Decree.

---

[6] *See, e.g.*, KEVIN MCKENZIE, *With sirens blaring, Memphis police confront No Kings protesters in Memphis.*, https://www.youtube.com/watch?v=e9aGDnClEK0, at 0:00 (YouTube, Mar. 29, 2026).

[7] *See, e.g.*, MEMPHIS SOCIAL MEDIA LAB, *What Happened at the No Kings Protest in Memphis on March 28, 2026*, https://www.youtube.com/watch?v=f-5-Hqg3OGE, at 13:54, 16:35, 17:30 (YouTube, Mar. 31, 2026).

WILMERHALE

Edward L. Stanton III
Bruce A. McMullen
May 6, 2026

Respectfully,

Timothy A. Cook

cc:   Independent Monitoring Team (Keenan Carter, Will Perry)
      Subject Matter Experts (Rachel Levinson-Waldman, James F. Pastor, Daniel J. Brown)
      Counsel for the City of Memphis (Jennie Vee Silk, Kelsey W. McKinney)
      Counsel for ACLU-TN (Lucas Cameron-Vaughn, Timothy J. Perla, Charles T. Cox Jr.,
      Noah Kaitin, Elizabeth Bedrick, Amanda Clarke)

# Exhibit A

No Kings Protest

## Authorization for Investigations That May Interfere with the Exercise of First Amendment Rights

Any police officer conducting or supervising a lawful investigation of criminal conduct, which investigation is reasonably likely to result in the collection of information about the exercise of First Amendment rights or interfere in any way with the exercise of such First Amendment rights, must immediately bring such investigation to the attention of the Chief of Police or a designee of the Chief of Police for review and authorization.

If approved, the investigation will not exceed more than ninety (90) calendar days. An extension may be granted by the Director/Director's Designee for an additional ninety (90) days if necessary.

**Purpose of Investigation (include all pertinent facts)**

On Saturday March 28, 2026, at approximately 1715 hours, the Memphis Police Department responded to a disturbance near 2nd Street and Beale Street regarding individuals associated with a permitted rally at Robert R. Church Park. The permit was valid for use of the park but did not include any authorization for any type of march. During this event, several participants moved into the roadway and began to obstruct traffic. Officers gave commands for these individuals to clear the roadway for approximately 40 minutes, and they refused to comply which resulted in MPD officers beginning to detain people for refusal to comply with clearing the roadway. During this encounter, some of the participants resisted officers resulting in pepper spray being utilized. Considering these factors, the Memphis Police Department (MPD) requests authorization to monitor publicly available social media platforms to identify emerging threats, assess the potential for unrest, and ensure public safety through timely and informed resource deployment. In addition, we are also reviewing current MPD video of the protest and conducting an administrative investigation. This request is solely for the purpose of public safety and operational preparedness, including identifying credible threats of violence or other activities that may impact public safety within Memphis and surrounding jurisdictions.

**Subjects of Investigation (include all Aliases and known Handles)**

**Method of Investigation:** ☒ All Social Media Platforms ☐ Undercover Capacity ☐ Surveillance ☐ Other
(explain): _____

Requesting Investigator's Signature _____ Date: 4-16-26

**Investigation Approval Status**

Based on the foregoing, and all information known to me, I have determined that:

1. This investigation does not violate the provisions of the *Kendrick* Modified Consent Decree; and
2. the expected collection of information about, or interference with, First Amendment rights is unavoidably necessary for the proper conduct of the investigation; and
3. every reasonable precaution has been employed to minimize the collection of information about, or interference with, First Amendment rights; and
4. The investigation employs the least intrusive technique necessary to obtain information.

This investigation meets the requirements of Section G of the *Kendrick* Modified Consent Decree, and I hereby approve the investigation

This authorization will expire 90 days from the date of my signature.

_____
**Chief of Police or Designee**

* Until there is approval by the Court of the final Authorization Form, this Interim Authorization Form will be used.

Page **1** of 2

No Kings Protest

Date: ___4-16-26___

| Extension |
|---|

Reason for Extension:

_____

_____

_____

☐ Approved
Extension Expires:

_____    _____
Chief of Police or Designee        Date

\* Until there is approval by the Court of the final Authorization Form, this Interim Authorization Form will be used.