**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| ELAINE BLANCHARD, KEEDRAN FRANKLIN, PAUL GARNER, and BRADLEY WATKINS, <br><br>      *Plaintiffs (dismissed)*, <br><br>   and <br><br> ACLU OF TENNESSEE, INC. <br><br>      *Intervening Plaintiff*, <br><br>   v. <br><br> THE CITY OF MEMPHIS, <br><br>      *Defendant*. | No. 2:17-cv-02120-MSN-jay |

**MOTION FOR LIMITED DISCOVERY REGARDING THE CITY OF MEMPHIS'S
COMPLIANCE WITH THE MODIFIED *KENDRICK* CONSENT DECREE**

## I.    Introduction

The *Kendrick* Consent Decree, as modified, is a landmark agreement between the City of Memphis ("City") and the ACLU of Tennessee, Inc. ("ACLU-TN") that protects Memphians' First Amendment rights.  *See* ECF No. 379 ("Decree").  To remedy years of First Amendment abuses and start the long process of institutional reform, the City "imposed a higher standard on itself" in the Decree.  ECF No. 151 at 38.  Among other things, the City agreed not to harass or intimidate members of the public for First Amendment expression, Decree § F, and to seek senior-level authorization for police activity that is reasonably likely to interfere with the public's exercise of First Amendment rights, *id.* § G.

The City does not appear to be honoring those commitments.  Throughout the spring, ACLU-TN has discovered several violations of the Decree.  These violations are the subject of the Motion for an Order to Show Cause that ACLU-TN filed today ("OSC Motion").  The evidence currently available to ACLU-TN shows that the City violated at least Sections F.1 and F.2 of the Decree through the Memphis Police Department ("MPD") response at the March 28, 2026 Memphis No Kings event, Section G.4 by MPD's failure to seek an authorization before the No Kings response, and Sections G.4 and G.6 by MPD's issuance of an overbroad authorization on April 16, 2026.  The City's response to the violations—which is a flat denial that they occurred, based on flawed readings of the Decree—and its failure to provide copies of other authorizations to ACLU-TN also raise serious questions about the City's current interpretation and administration of Section G.

The City has not cooperated with ACLU-TN's attempts to seek informal discovery related to these violations and practices.  Despite more than two months of negotiations—during which the City's position repeatedly shifted—the City has produced no bodycam footage or other evidence from its March 28, 2026 No Kings response to ACLU-TN.  Likewise, despite the City's

– 1 –

assurances that it would make information from its internal investigation of the response available to ACLU-TN, the City produced only seven pages of summary documents, none of which address the Decree violations. And despite ACLU-TN's repeated requests that the City explain how it is interpreting Section G in the context of political protests, the City has broken its promises to respond to ACLU-TN's inquiries.

The evidence before the Court in ACLU-TN's OSC Motion is sufficient to support issuance of an order to show cause, but limited discovery is warranted for two reasons. First, as to the specific Decree violations that ACLU-TN has identified, discovery is necessary to develop the record on "the nature and extent of the contumacious conduct," which "determines the nature and extent of the remedy." *NLRB v. Bannum, Inc.*, 93 F.4th 973, 982 (6th Cir. 2024) (quoting *NLRB v. Neises Constr. Corp.*, 62 F.4th 1040, 1054–55 (7th Cir. 2023)). Second, discovery is warranted to determine whether the City's current interpretation and application of Section G has caused or is likely to cause additional violations—which, based on the Decree interpretations that the City has asserted in the parties' discussions, is likely. The City controls the key evidence relevant to both issues and has refused informal production, which makes compliance discovery necessary and proportionate.

ACLU-TN therefore respectfully requests that the Court enter a scheduling order for limited compliance discovery. ACLU-TN proposes a 90-day discovery period during which the parties may serve ten Rule 34 requests for production, five Rule 33 interrogatories, and take up to five four-hour depositions under Rule 30.

## II.    Background

ACLU-TN's OSC Motion describes the Decree and the City's recent violations. The same facts provide the basis for this motion, and ACLU-TN incorporates the background section from that motion and the evidence that it cites here. *See* OSC Mot. § II.

Notwithstanding the evidence cited in the OSC Motion, the City claims that it has not violated the Decree. *See* Cook Decl. ¶ 8. ACLU-TN has sought evidence and information to test that assertion, but the City has failed to provide it.

Shortly after the No Kings event, ACLU-TN wrote to the City and the Monitoring Team to request an investigation of MPD's response. Ex. 1.[1] ACLU-TN sought "all body-worn camera footage, dash camera footage, surveillance footage, aerial footage, radio communications, command logs, operational plans, and any written or electronic directives related to MPD's response to the march," and the "written findings" supporting any "written authorization required by Section G before any enforcement action was taken against march participants." *Id.* at 7. In response to the first request, the City agreed to make "the footage and other documentation" available for "inspection." Ex. 2 at 2. In response to the second, the City conceded that "no Section G authorization [was] obtained prior to this event." *Id.* The City also claimed that it had "opened an Internal Services Bureau investigation immediately into the actions of the officers involved in the No Kings Memphis march," which would involve review of "112 different body worn camera videos" and "witness interviews" with "at least twelve officer-witnesses . . . , and possibly up to thirty officer-witnesses." *Id.* at 1–2. The City said that it expected the investigation "to be complete by June 15, 2026." *Id.* at 2.

Upon learning of this investigation, ACLU-TN made additional requests. ACLU-TN first "ask[ed] the City to arrange a meeting among the team conducting the investigation, ACLU-TN, and the Monitoring Team to discuss the investigation's scope and our access to evidence." Ex. 4 at 4. ACLU-TN also asked the City to release "the investigation's key evidence and findings." *Id.* at 5. And in response to the City's admission that it had not obtained a Section G

---

[1] "Ex." refers to exhibits to the Declaration of Timothy A. Cook, attached to the OSC Motion.

authorization before the event, ACLU-TN sought "to understand what [the City's] interpretation [of Section G] is," including "what types [of] 'investigations' the City believes trigger Section G and whether there are other similar circumstances in which the City has not sought Section G authorization." *Id.* at 7.

The City did not respond to this letter. But during a videoconference among counsel for the parties and the Monitoring Team on May 12, 2026, the City refused to allow ACLU-TN to have any involvement with the investigation or meet with the investigators. Cook Decl. ¶ 5. During this call and another on May 19, 2026, the City committed to respond in writing to ACLU-TN's request for an explanation of its interpretation of Section G, but the City still has not done so.[2] *Id.* ¶ 6.

The City also took dizzying positions on whether and under what conditions it would produce bodycam footage from the No Kings event to ACLU-TN. The City first offered to make "the footage and other documentation" available for inspection. Ex. 2 at 2. During the parties' May 12 call, the City said it could likely produce the footage electronically subject to a protective order, the terms of which it would propose (but did not). Then, during the parties' May 19 call, the City reversed course and said it would not produce the footage at all. When the Monitor wrote to the City with concerns about "the City's new position," Ex. 6 at 15, the City responded with a vague offer to allow ACLU-TN to view the videos (but apparently not the documentation that ACLU-TN requested and that the City originally agreed to make available) only "in a secure environment." *Id.* at 14. When ACLU-TN responded seeking clarification of

---

[2] As discussed in the OSC Motion, the City also has not shared recent Section G authorizations with ACLU-TN. *See* OSC Mot. at 19; *see also* Monitor's Q1 2026 Report Card at 23 (explaining that "there is no routine communication with the ACLU" and describing how "the MPD did not share [the April 16, 2026 authorization] with the ACLU"); ECF No. 574 at 25:1–9.

these terms, *id.* at 11–12, the City changed course again and offered to produce the videos electronically under the existing Protective Order (ECF No. 52), *id.* at 10–11. ACLU-TN agreed. *Id.* at 9. The Monitor and ACLU-TN told the Court that the parties had reached an agreement at the status conference the next morning, ECF No. 574 at 11:1–6, 66:19–24, and the City did not dispute this account. But after the Court adjourned, the City imposed additional conditions before the parties were even out of the courtroom. The City sought some sort of indemnification from ACLU-TN based on vague (and baseless) allegations that ACLU-TN's counsel planned to "leak" the bodycam footage. Ex. 6 at 7–8 (recounting courthouse conversation). The City then offered to make the videos available "at City Hall," *id.* at 6, and when asked to clarify the terms of that offer, *id.* at 5, reverted to offering electronic production under the Protective Order—but only if ACLU-TN would agree to waive its rights under the Protective Order to challenge improper confidentiality designations, *id.* at 4. ACLU-TN offered to accept these terms if the City would confirm its previous commitment to publicly release redacted copies of the videos in the future. *Id.* at 3. The City responded with one word: "No." *Id.* at 2–3 (red text added by City counsel). These constantly shifting positions support only one reasonable inference: The City is not going to make these videos (or the documents that ACLU-TN requested[3]) available voluntarily.

The City's investigation report likewise did not clarify the record. Despite its serious concerns about the City's apparent violations of the Decree, ACLU-TN agreed to wait for the

---

[3] The City's responses always focused on bodycam videos, but the Monitor and ACLU-TN asked the City to address the "other documentation" that the City agreed to produce in its April 15 letter (Ex. 2 at 2) as well. *See* Ex. 6 at 10, 12, 15. The City responded on this point only after the third request, when it wrote "Be specific?" *Id.* at 3. To be clear, the "other documentation" phrase that the City suggested it did not understand was directly from the City's own April 15 letter. *See* Ex. 2 at 2.

– 5 –

City's investigation report on June 15, 2026, before assessing whether motion practice would be necessary. ACLU-TN's decision was driven by the City's suggestion that the investigation and report would thoroughly address the likely Decree violations that ACLU-TN had raised. But the City produced only seven pages on that date: short-form summaries that addressed only four officers' unauthorized uniform patches and one's failure to file a report.[4] Ex. 7. The investigation results that the City produced did not include any supporting evidence and did not even mention the Decree. The message from this production is clear—the City is not going to adequately investigate either MPD's compliance with the Decree or its own.

## III. Argument

Courts have "inherent power" to grant "limited discovery to aid the court in determining whether" a defendant has "complied with a judgment." *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (collecting cases); *see also Palmer v. Rice*, 231 F.R.D. 21, 25–27 (D.D.C. 2005) (granting discovery where, "without further discovery, plaintiffs will not be able to determine whether the government has complied with the court's injunctions"); *Blackberry Ltd. v. Typo Prods. LLC*, 2014 WL 4136586, at *5 (N.D. Cal. Aug. 21, 2014) (granting discovery regarding preliminary injunction compliance); *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *57–58 (S.D.N.Y. July 17, 2012) (collecting additional cases), *report and recommendation adopted*, 896 F. Supp. 2d 320, 329 (S.D.N.Y. 2012).

The evidence needed to justify discovery for the limited purpose of assessing compliance is "considerably less than that needed to show actual noncompliance." *Leavitt*, 523 F.3d at 1034. So long as "significant questions regarding noncompliance have been raised, appropriate discovery should be granted." *Id.*; *Damus v. Nielsen*, 328 F.R.D. 1, 3 (D.D.C. 2018) (collecting

---

[4] The report also refers to one officer's "violation of DR-104 Personal Conduct" without stating the basis for that finding.

– 6 –

authority and following *Leavitt*); *see also Cardell Fin. Corp.*, 2012 WL 12932049, at \*58 (discovery should be granted upon "prima facie showing that a violation has occurred").

The evidence described in the OSC Motion easily meets this standard.

*First*, videos from a member of the public and bodycam footage released by the Shelby County District Attorney show that MPD's response at the No Kings event was without warning and involved excessive force. *See* OSC Mot. at 6–7 (collecting evidence). Indeed, the footage shows no justification for MPD's intervention at all. That is enough to show a violation of Section F.1 and F.2. Further compliance discovery related to the No Kings response is appropriate to assess the nature and extent of the violations and to build a record to craft an appropriate sanction. *See, e.g.*, *Bannum, Inc.*, 93 F.4th at 982.

*Second*, the City concedes that it did not obtain a Section G authorization before the No Kings response. Ex. 2 at 2; *see also* OSC Mot. at 16. That is sufficient to show a violation of Section G.4. Compliance discovery related to that decision is appropriate to assess whether the failure was based on a good-faith misunderstanding of Section G.4 or intentional avoidance. That, again, is necessary to determine the appropriate sanction.

*Third*, the City's overbroad April 16, 2026 authorization, which lacks any specific written findings, violates Section G.4 and G.6. *See* OSC Mot. at 17–18; Ex. 3. Compliance discovery related to that authorization—including the decision to seek it, the process used to review and grant it, and whether any forward-looking investigations since April 16 have relied on it—is necessary to assess the nature and extent of these violations and craft a remedy.

*Finally*, the City's multiple violations of Section G—coupled with the narrow interpretations of Section G it has advanced in correspondence, Ex. 6 at 2–3, and at the last status conference, ECF No. 574 at 31—leave serious doubt about whether the City's current Section G

– 7 –

interpretations have affected other protest-related investigations or authorizations. Taken together, the specific violations and the City's statements raise "significant questions regarding noncompliance." *Leavitt*, 523 F.3d at 1034. Compliance discovery is warranted to assess the City's current interpretation and administration of Section G, including which investigations received (and did not receive) Section G authorizations, particularly in the political protest context; whether and how authorizing officials make the "written findings" required by Section G.6; and what level of scrutiny, in practice, Section G authorization requests receive. This discovery is necessary to assess whether the City has violated Section G in other investigations and to craft a remedy if discovery confirms that the City's flawed Section G interpretations have produced other protest-related violations.

ACLU-TN therefore requests a discovery schedule with the following terms:

- Compliance discovery shall open upon the Court's order granting this motion and end 90 days later.

- During compliance discovery:

    - The parties may serve up to ten requests for production under Federal Rule of Civil Procedure 34 and five interrogatories under Federal Rule of Civil Procedure 33. The time to respond in Rules 34(b)(2)(A) and 33(b)(2) would be shortened to 21 days from service.

    - The parties may take up to five depositions under Federal Rule of Civil Procedure 30 of up to four hours each.

    - The parties may seek third-party discovery under Federal Rule of Civil Procedure 45, with any requests for production or depositions counting against the limits above.[5]

These limits are appropriate and narrow considering the likely violations of the Decree that ACLU-TN has identified. ACLU-TN would seek production of the evidence and information

---

[5] ACLU-TN does not anticipate third-party discovery but includes this term to clarify the relation of any third-party discovery to the proposed discovery limits.

described in this Motion, including the evidence and information that ACLU-TN sought in its correspondence to the City and that the City refused or failed to provide.  ACLU-TN would also expect to depose at least one officer involved in the No Kings response,[6] the supervising officer for the No Kings response, the officials involved in the April 16 authorization, and an MPD designee under Rule 30(b)(6).  Given the limited scope of this compliance discovery and the narrow limits on its volume, an expedited, 90-day discovery period and shortened response times for written requests are warranted.

ACLU-TN's requested relief also aligns with its requested relief in the OSC Motion, which seeks an order requiring a response from the City within 90 days—i.e., at the end of the discovery period that ACLU-TN proposes here.  But in all events, no matter when the Court resolves the OSC motion, the present record warrants targeted compliance discovery.  *See Leavitt*, 523 F.3d at 1034 (explaining that the standard for compliance discovery is "considerably less than that needed to show actual noncompliance").  That is particularly so considering the City's refusal to cooperate with any meaningful informal discovery.  Limited discovery is the measured next step to protect the Decree's integrity and ensure that the City follows it.

## IV.    Conclusion

For these reasons, the Court should set a schedule for the limited compliance discovery described above.

---

[6] The City has suggested that there were four officers primarily involved in the response.  *See* Ex. 2 at 2 (stating that four officers were suspended).

Dated: June 23, 2026

Respectfully submitted,

/s/ Timothy A. Cook

Lucas Cameron-Vaughn
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
(615) 320-7142
lucas@aclu-tn.org

Timothy A. Cook (Mass. BBO No. 682115)
Timothy J. Perla
Noah Kaitin
Elizabeth Bedrick
Amanda Clarke
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
tim.cook@wilmerhale.com
timothy.perla@wilmerhale.com
noah.kaitin@wilmerhale.com
liz.bedrick@wilmerhale.com
amanda.clarke@wilmerhale.com

Charles T. Cox Jr.
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
(202) 663-6000
charlie.cox@wilmerhale.com

*Counsel for Intervening
Plaintiff ACLU-TN*

## CERTIFICATE OF SERVICE

I hereby certify that on June 23, 2026, the foregoing was served via the Court's ECF system to the following counsel of record:

Bruce A. McMullen
Jennie Vee Silk
Mary Wu Tullis
Kelsey W. McKinney
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
2000 First Horizon Building
165 Madison Avenue
Memphis, TN 38103

*/s/ Timothy A. Cook*
Timothy A. Cook

## CERTIFICATE OF CONSULTATION

Counsel for ACLU-TN, including Timothy A. Cook, Timothy J. Perla, Charles T. Cox Jr., Noah Kaitin, Elizabeth Bedrick, Amanda Clarke, and Lucas Cameron-Vaughn consulted with counsel for the City, including Bruce A. McMullen, Jennie Vee Silk, and Kelsey W. McKinney, throughout May and June 2026 about issues addressed in this motion, including videoconferences with the Monitoring Team on May 12, 2026, and May 19, 2026; in-person communications after the status conference on May 29, 2026; and many email exchanges through June 4, 2026, *see, e.g.*, Ex. 6. On June 22, 2026, counsel for ACLU-TN emailed counsel for the City, including Mr. McMullen and Ms. Silk, stating the exact relief that ACLU-TN seeks in this motion and offering to confer further by phone or video any time between 9:30 A.M. and 11:00 A.M. CDT or between 12:30 P.M. and 2:00 P.M. CDT. *See* Ex. 8. As of 2:00 P.M. CDT, the City's counsel have not responded.

*/s/ Timothy A. Cook*
Timothy A. Cook